**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

SRAM, LLC,

                Plaintiff,

v.

PRINCETON CARBON WORKS INC.,

                Defendant.

Case No. 9:21-cv-80581 RKA

**JURY TRIAL DEMANDED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................................1

II.    RELEVANT BACKGROUND ...............................................................................1

III.   LEGAL STANDARD.............................................................................................2

     A.    Summary Judgment .................................................................................2

     B.    Literal Infringement ................................................................................3

     C.    Doctrine of Equivalents ..........................................................................3

          1.    Critical Limitations on the Application of the Doctrine of Equivalents...................................................................................4

IV.   ARGUMENT .........................................................................................................6

     A.    The Accused Products Do Not Infringe the '800 Patent Under the Doctrine of Equivalents ..........................................................................7

          1.    "radial distance that continuously varies" (Independent Claims 1 and 17) ...................................................................................7

          2.    "convex exterior profile" (Independent Claim 1) ..........................12

     B.    The Accused Products Do Not Infringe the '188 Patent Under the Doctrine of Equivalents ........................................................................14

          1.    "convex profiles in convex regions" (Independent Claim 1).........15

     C.    The Accused Products Do Not Literally Infringe the "Convex Exterior Profile" or "Convex Profile" Limitations of the '800 Patent or '188 Patent...................................................................................................18

          1.    The Claims Require the Rim to Have "Convex Exterior Profiles" and "Convex Profiles" .................................................................19

          2.    None of the Accused Products Have "Convex" Profiles Under Either Parties' Construction.........................................................19

V.    CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Steel Recovery v. X-Body Equip., Inc.*,
   808 F.3d 1313 (Fed. Cir. 2015)........................................................................3, 4

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
   811 F.3d 1334 (Fed. Cir. 2016)..................................................................... *passim*

*Allen v. Tyson Foods, Inc.*,
   121 F.3d 642 (11th Cir. 1997) ..........................................................................2

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).........................................................................................2

*AquaTex Indus. v. Techniche Sols.*,
   479 F.3d 1320 (Fed. Cir. 2007).........................................................................4

*Bailey v. Allgas, Inc.*,
   284 F.3d 1237 (11th Cir. 2002) ........................................................................2

*Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*,
   616 F.3d 1249 (Fed. Cir. 2010).........................................................................18

*Bicon Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006).....................................................................10, 14

*Eagle Pharms. Inc. v. Slayback Pharma LLC*,
   958 F.3d 1171 (Fed. Cir. 2020)....................................................................5, 6, 11

*Eastcott v. Hasselblad USA, Inc.*,
   564 Fed. Appx. 590 (Fed. Cir. 2014)...........................................................8, 12, 15

*Jang v. Boston Sci. Corp.*,
   872 F.3d 1275 (Fed. Cir. 2017)..................................................................5, 6, 11, 14

*Lear Siegler, Inc. v. Sealy Mattress Co.*,
   873 F.2d 1422 (Fed. Cir. 1989)..................................................................7, 12, 15

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995).............................................................................18

*Pharma Tech Sols., Inc. v. LifeScan, Inc.*,
   942 F.3d 1372 (Fed. Cir. 2019)...................................................................... *passim*

*SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech., Ltd.*,
   983 F.3d 1367 (Fed. Cir. 2021)....................................................................................................3

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997)........................................................................................................................4

Defendant Princeton Carbon Works Inc. ("PCW") respectfully submits this memorandum of law in support of its motion for summary judgment of noninfringement. Counsel for PCW has conferred with counsel for SRAM, LLC ("SRAM"), and SRAM will oppose the motion.

## I.    INTRODUCTION

As detailed below, the owner of the Asserted Patents unequivocally disclaimed, by amendment and argument, certain claim scope during the prosecution of each Asserted Patent. Now, SRAM, the exclusive licensee of these patents, is attempting in litigation to recapture the disclaimed scope as the basis of its doctrine of equivalents infringement theory. Doing so is legally impermissible for numerous reasons. Compounding the issue for SRAM, its infringement expert failed to provide *any* evidence supporting his doctrine of equivalents opinions. Accordingly, there is no triable issue of fact that the Accused Products do not infringe under the doctrine of equivalents.

Separately, independent claim 1 of each Asserted Patent requires a rim to have "peaks" with a "convex" profile. Because the alleged "peaks" of PCW's Accused Products all have *concave* profiles, they cannot literally infringe this limitation. Thus, the Court should summarily determine the Accused Products do not literally infringe claim 1 of either Asserted Patent.

## II.    RELEVANT BACKGROUND

The Asserted Patents disclose an invention that "relates to improvements in bicycle wheels, and in particular to a bicycle wheel having an improved rim configuration." Joint Statement of Undisputed Facts ("JSUF"), ¶1 ('800 Patent at "Technical Field"). Figure 1 of the Asserted Patents "is a side view of a first embodiment of a wheel according to the invention." JSUF, ¶2 ('800 Patent at Figure 1).

Claims 1 and 17 of the '800 patent require a rim having a radial distance that "continuously varies" between each adjacent peak and trough. JSUF, ¶¶3, 6. SRAM and its expert, Dr. Howle, argue that "continuously varies" means "changes without interruption." JSUF, ¶¶10-11.

Claim 1 of the '800 patent requires the rim's "peak" to have a "convex exterior profile." JSUF, ¶3. SRAM and its expert, Dr. Howle, argue that "convex exterior profile" means "outer side view having a rounded or curved form bulging toward the wheel's center." JSUF, ¶¶12-13.

Claim 1 of the '188 patent requires the rim to have a "convex profile" in its "convex region," which also includes the "peaks." JSUF, ¶7. SRAM and its expert, Dr. Howle, argue that "convex profile" means "side view having a rounded or curved form bulging toward the wheel's center." JSUF, ¶¶14-15.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate when "there is no ***genuine*** dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact*." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact," and all factual inferences are drawn in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a *genuine issue for trial*." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis in original).

Courts regularly grant motions for summary judgment of non-infringement, for both literal infringement and infringement under the doctrine of equivalents. *See, e.g.*, *SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech., Ltd.*, 983 F.3d 1367, 1380-81 (Fed. Cir. 2021) (reversing district court and granting summary judgment of no literal infringement); *Advanced Steel Recovery v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319-20 (Fed. Cir. 2015) ("While infringement under the doctrine of equivalents is a question of fact, '[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment.'"); *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1384 (Fed. Cir. 2019) (affirming district court's grant of summary judgment of no infringement under the doctrine of equivalents); *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342-43 (Fed. Cir. 2016) (same).

## B.    Literal Infringement

"To prove literal infringement, the patentee must show that the accused device contains *each and every limitation* of the asserted claims." *SIMO Holdings*, 983 F.3d at 1380 (internal quotation marks omitted) (emphasis in original). As the Plaintiff, SRAM has the burden of persuasion. *Id.* Further, a party cannot defeat a motion for summary judgment "simply by offering an opinion of an expert that states, in effect, that the critical claim limitation is found in the accused device." *Id.* Instead, "a patentee's expert must set forth the *factual foundation* for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement." *Id.* (emphasis added).

## C.    Doctrine of Equivalents

To prove infringement under the doctrine of equivalents, "[a] patentee must establish 'equivalency on a limitation-by-limitation basis' by 'particularized testimony and linking argument' as to the insubstantiality of the differences between the claimed invention and the

3

accused device or process." *Akzo Nobel Coatings*, 811 F.3d at 1342 (quoting *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996)). The substantiality of differences is often shown using the "function-way-result" test. *Id.*; *Advanced Steel Recovery*, 808 F.3d at 1320 ("To survive summary judgment of noninfringement under the doctrine of equivalents, [the plaintiff] had to present evidence of equivalence under each prong of the function-way-result test."). Using this test, an accused product only infringes if the product "performs substantially the same function in substantially the same way to obtain the same result." *AquaTex Indus. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).

In view of the requirements of this test, and other limitations on the application of the doctrine, the doctrine of equivalents is very narrowly applied. *Advanced Steel Recovery*, 808 F.3d at 1320 ("Our case law also establishes that there are limitations to the doctrine of equivalents. 'Whether the result of the All Limitations Rule, prosecution history estoppel, or the inherent narrowness of the claim language, many limitations warrant little, if any, range of equivalents.'") (citation omitted); *Akzo Nobel Coatings*, 811 F.3d at 1342 ("Ultimately, 'many limitations warrant little, if any, range of equivalents.'") (citation omitted).

### 1.    Critical Limitations on the Application of the Doctrine of Equivalents

There are a number of important limitations on the application of the doctrine of equivalents, including prosecution history estoppel, claim vitiation, ensnarement, and the disclosure-dedication doctrine. These are all questions of law that are amenable to determination on summary judgment. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 38 n.8 (1997) ("[T]he various legal limitations on the application of the doctrine of equivalents are to be determined by the court . . . under the particular facts of a case, if prosecution history estoppel would apply or if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue

for the jury to resolve."); *Jang v. Boston Sci. Corp.*, 872 F.3d 1275, 1285 (Fed. Cir. 2017) (ensnarement is a legal question); *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1177 (Fed. Cir. 2020) (disclosure-dedication doctrine is a question of law).

### a.      Prosecution History Estoppel

"'Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution.' Prosecution history estoppel can occur in two ways: 'either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel').'" *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1380 (Fed. Cir. 2019) (citations omitted).

### b.      Claim Vitiation

"As the Supreme Court has stated, 'if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court . . . .'" *Akzo Nobel Coatings*, 811 F.3d at 1342. "Under the doctrine of equivalents, an infringement theory thus fails if it renders a claim limitation inconsequential or ineffective. And as we have explained, 'saying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests.'" *Id.*

### c.      Ensnarement of Prior Art

"A doctrine of equivalents theory cannot be asserted if it will encompass or 'ensnare' the prior art." *Jang*, 872 F.3d at 1285. This is true even if the evidence shows equivalence as to each claim element. *Id.* To determine whether a doctrine of equivalents theory ensnares the prior art, the Federal Circuit uses a "hypothetical claim analysis":

Hypothetical claim analysis is a two-step process. The first step is "to construct a hypothetical claim that literally covers the accused device." Next, prior art introduced by the accused infringer is assessed to "determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." In short, [the court] ask[s] if a hypothetical claim can be crafted, which contains both the literal claim scope and the accused device, without ensnaring the prior art.

*Id.* (quoting *Intendis GmbH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355, 1363-64 (Fed. Cir. 2016)). Once the accused infringer comes forward with prior art, the *patentee* bears the burden of proving patentability of the hypothetical claim. *Id.*

### d.    Disclosure-Dedication Doctrine

"[The disclosure-dedication doctrine] states that 'when a patent drafter discloses but declines to claim subject matter, . . . this action dedicates the unclaimed subject matter to the public.'" *Eagle Pharms*, 958 F.3d at 1175. The doctrine applies if the specification "discloses unclaimed subject matter with 'such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed.'" *Id.* However, "[t]he disclosure-dedication doctrine does not require the specification to disclose the allegedly dedicated subject matter in an embodiment that exactly matches the claimed embodiment . . . . Instead, we have held that the disclosure-dedication doctrine requires only that the specification disclose the unclaimed matter 'as an alternative to the relevant claim limitation.'" *Id.* at 1176.

## IV.    ARGUMENT

The owner of the Asserted Patents disclaimed, by amendment and argument, claim scope during the prosecution of each Asserted Patent. SRAM is now attempting to recapture the disclaimed scope as the basis of its doctrine of equivalents infringement theory. Doing so is legally impermissible for numerous reasons, and, regardless, SRAM's expert failed to provide *any* evidence supporting his doctrine of equivalents opinions. Accordingly, this Court should summarily determine that no Accused Product infringes under the doctrine of equivalents.

Separately, independent claim 1 of each Asserted Patent requires a rim to have peaks with a "convex" profile. Because the alleged "peaks" of PCW's Accused Products all have *concave* profiles, they cannot literally infringe this limitation. Thus, the Court should summarily determine the Accused Products do not literally infringe claim 1 of either Asserted Patent.

**A.      The Accused Products Do Not Infringe the '800 Patent Under the Doctrine of Equivalents**

**1.      "radial distance that continuously varies" (Independent Claims 1 and 17)**

Claims 1 and 17 of the '800 patent require a rim having an undulating configuration and a "radial distance that ***continuously*** varies between adjacent peaks and troughs of the undulating configuration." JSUF, ¶3, 6. According to SRAM and its expert, "continuously varies" means "changes without interruption." JSUF, ¶¶10-11. However, SRAM and its expert now argue that a radial distance that does not continuously vary, but, instead, only substantially varies is permitted under its doctrine of equivalents analysis. *See* Defendant PCW's Statement of Material Facts ("DSMF"), ¶4. For the reasons below, SRAM is wrong, and there is no genuine issue of material fact that PCW's Accused Products do not infringe the Asserted Patents by equivalence.

**a.      As a Matter of Law, SRAM Cannot Show Infringement Under the Doctrine of Equivalents**

**i.      *SRAM Failed to Present Any Evidence of Equivalence Under Each Prong of the Function-Way-Result Test***

To prove infringement under the doctrine of equivalents, SRAM failed to meet its obligation to provide evidence, particularized testimony, and linking arguments with respect to all three prongs of the "function-way-result" test. *Akzo Nobel Coatings*, 811 F.3d at 1342; *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422**,** 1425 (Fed. Cir. 1989) ("The party asserting infringement must present '*evidence* and *argument* concerning the doctrine and *each* of its *elements*.' The evidence and argument on the doctrine of equivalents cannot merely be subsumed

in plaintiff's case of literal infringement.") (emphasis in original) (citations omitted). Neither SRAM nor its expert provided *any* evidence or particularized argument as to how the Accused Products allegedly infringe under the doctrine of equivalents. *See* DSMF, ¶¶1-3, 16. Notably, SRAM's expert did not identify any particular Accused Product, or cite a single document describing any technical aspect of the Accused Products (or any document), in his doctrine of equivalents opinion. DSMF, ¶3. This analysis is facially insufficient. *Eastcott v. Hasselblad USA, Inc.*, 564 Fed. Appx. 590, 595-96 (Fed. Cir. 2014) (conclusory statements of equivalents is insufficient). For this reason alone, there can be no triable issue of fact that the Accused Products do not infringe under the doctrine of equivalents and summary judgment is therefore warranted.

        ii.      *SRAM's Doctrine of Equivalents Arguments Are Legally Barred by Prosecution History Estoppel*

Even if SRAM had offered any evidence and argument to substantiate the doctrine of equivalents contention (and it did not), the contention is legally precluded by prosecution history estoppel. SRAM's expert argues that a rim that "does not have **substantial interruptions** in its undulating profile" infringes under the doctrine of equivalents. DSMF, ¶4 (emphasis added). However, the patentee explicitly disclaimed such scope during prosecution of the '800 patent: in response to an examiner rejection in view of the *Mercat* prior art reference, the patentee amended both independent claims of the '800 patent such that the radial distance must "**continuously**" vary between adjacent peaks and troughs. *See* JSUF, ¶¶16-17[1]. This was a narrowing amendment to

---

[1] SRAM's expert acknowledges that the patentee disclaimed wheels having a "trough" area with unchanging radial distance. *See, e.g.*, DSMF, ¶5 (Validity report of SRAM's expert, Dr. Howle, states "Notably, this limitation of a radial distance that continuously varies between adjacent peaks and troughs was added during the prosecution of the '800 patent to distinguish over the Mercat reference, which, among other differences, had a radial inner edge with a trough area having an unchanging radial distance. *See* SRAM-P 00087.")).

obtain allowance of the patent, which creates a presumption of "a general disclaimer of the territory between the original claim and the amended claim." *Pharma Tech Sols.*, 942 F.3d at 1380.

As if this were not enough, the patentee went on to explain in argument to the examiner that this narrowing amendment distinguished the claims from *Mercat*, which has a region of unchanging radial distance. JSUF, ¶28; DSMF, ¶¶6, 7, 9. Like the amendment, the patentee's argument makes clear to a person of ordinary skill in the art (POSITA) that the patentee claimed a "continuously" varying radial distance that did not include any portions (of any size) of constant radial distance. By operation of law, this intentional relinquishment of claim scope in the face of an examiner's rejection triggers prosecution estoppel. *See Pharma Tech Sols.*, 942 F.3d at 1380 ("'[c]lear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance of the claim, may also create an estoppel . . . because [t]he relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter.'") (citation omitted).

Importantly, the patentee did not amend its claims—or distinguish them from *Mercat*—in a way that attempted to claim a rim that has a "substantially" varying radial distance. JSUF, ¶¶16-18, 28; DSMF, ¶¶6, 7, 9. Instead, the patentee simply added "continuously" and argued that this amendment overcame Mercat because "[t]he radial distance" in Mercat "is ***unchanging*** between the broken lines shown in FIG. 2, below." JSUF, ¶28 (emphasis added). Neither the examiner nor the applicant discussed the size of Mercat's constant radial distance regions. *Id.*

The result here is that the claim scope under the doctrine of equivalents does not—and cannot—include any region of unchanging radial distance, regardless of size. SRAM cannot argue that a radial distance that "substantially" varies—but does not "continuously" vary—infringes under the doctrine of equivalents due to prosecution history estoppel. The law precludes SRAM

9

from "regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent." *Wang Laboratories, Inc.*, 103 F.3d at 1577-1578; *see also Festo Corp.*, 535 U.S. at 734; *Pharma Tech Sols.*, 942 F.3d at 1380.

> iii.     SRAM's Doctrine of Equivalents Theory Vitiates the Meaning of "Continuously Varies"

According to SRAM and its expert, "continuously varies" means "changes without interruption." JSUF, ¶¶10-11. Put another way, SRAM argues that a radial distance that "continuously varies" does not have *any* interruptions. However, SRAM and its expert now argue that a bicycle rim infringes this limitation under the doctrine of equivalents if the rim "does not have *substantial* interruptions in its undulating profile such as the long troughs with a constant radial distance between adjacent peaks." DSMF, ¶4 (emphasis added). This new interpretation necessarily means that the radial distance *has* interruptions and does *not* continuously vary.

SRAM's interpretation under its doctrine of equivalents analysis vitiates the meaning of the claim term *and* SRAM's own proposed construction for the claim term. A "continuously" varying radial distance (as claimed) that does *not* vary continuously, renders the phrase "continuously" meaningless. Similarly, a radial distance that changes *without* interruptions (as proposed by SRAM), but also *includes* interruptions, renders SRAM's proposed construction meaningless. This is also impermissible as a matter of law. *Akzo Nobel Coatings*, 811 F.3d at 1342 ("Under the doctrine of equivalents, an infringement theory thus fails if it renders a claim limitation inconsequential or ineffective."); *see also Bicon Inc. v. Straumann Co.*, 441 F.3d 945, 955-56 (Fed. Cir. 2006) (principle of specific exclusion does not allow claim scope to cover subject matter that is the antithesis of the claim language).

> iv.     SRAM's Doctrine of Equivalents Arguments Ensnare the Prior Art

To succeed under the doctrine of equivalents, SRAM must have proposed a hypothetical claim that literally covers the accused products but does not cover the prior art. *See Jang*, 872 F.3d at 1285. SRAM and its expert failed to propose and apply any such hypothetical claim and, accordingly, fail to satisfy an essential element of showing infringement under the doctrine of equivalents. *See id.*; *see also* DSMF, ¶¶20-22. Further, to the extent the hypothetical claim encompasses a wheel that "does not have substantial interruptions in its undulating profile such as the long troughs with a constant radial distance between adjacent peaks," U.S. Patent Application Pub. No. 2005/0242658 to Carlson would anticipate or render obvious this limitation. *See* DSMF, ¶¶18, 23-25.

<blockquote>
v.      *SRAM's Doctrine of Equivalents Argument Violates the Disclosure-Dedication Doctrine*
</blockquote>

SRAM's doctrine of equivalents argument also violates the disclosure-dedication doctrine because the patentee disclosed, but did not claim, radial distances that vary, but do not "continuously" vary. *See Eagle Pharms*, 958 F.3d at 1175 (disclosing but not claiming subject matter dedicates the unclaimed subject matter to the public and precludes doctrine of equivalents arguments that attempt to recapture the relinquished claim scope). Here, the '800 Patent discloses that the radially inner edge of its wheels can have a radial distance that varies between the peaks and troughs. *See* JSUF, ¶21. However, the claims as issued require radial distances that "continuously" vary. Section IV.A.1.a.ii, *supra*. Thus, the patentee disclosed, but did not claim, radial distances that vary but do not "continuously" vary. Claim scope of the kind SRAM attempts to advance now, namely radial distances that substantially vary, were forfeited to the public. *See Eagle Pharms*, 958 F.3d at 1175.

*      *      *

For all the reasons in Section IV.A.1, SRAM's doctrine of equivalents theory for "continuously varies" is insufficient and legally precluded. Accordingly, there can be no triable issue of fact as to doctrine of equivalents. This Court should therefore enter judgment that no Accused Product infringes the "continuously varies" limitation under the doctrine of equivalents.

### 2.     "convex exterior profile" (Independent Claim 1)

Claim 1 of the '800 patent requires a "***convex*** exterior profile." JSUF, ¶3 ('800 Patent, Claim 1 (emphasis added)). According to SRAM and its expert, "convex exterior profile" means "outer side view having a rounded or curved form bulging toward the wheel's center." JSUF, ¶¶12-13. Yet SRAM and its expert now argue that a convex profile with a "small region of concavity" infringes under the doctrine of equivalents. DSMF, ¶15. For the reasons below, there is no triable issue of fact that PCW's Accused Wheels do not infringe the "convex exterior profile" element.

### a.     SRAM Cannot Show Infringement Under the Doctrine of Equivalents

#### i.     *SRAM Failed to Present Any Evidence of Equivalence Under Each Prong of the Function-Way-Result Test*

Just like its failure to provide the required evidence, particularized testimony, and linking arguments for each prong of the "function-way-result" test for the "continuously varies" limitation, *see* Section IV.A.1.a.i, *supra*, SRAM has likewise failed in the same way as to the "convex exterior profile" limitation. In fact, SRAM's expert did not identify any particular Accused Product or cite a single document describing any technical aspect of the Accused Products (or any document) in his doctrine of equivalents opinion for this limitation, too. DSMF, ¶1-3, 16. Accordingly, SRAM cannot show infringement under the doctrine of equivalents. *See Akzo Nobel Coatings*, 811 F.3d at 1342; *Lear Siegler*, 873 F.2d at 1425; *Eastcott*, 564 Fed. Appx. at 595-96 (conclusory statements of equivalents is insufficient as a matter of law).

ii.       *SRAM's Doctrine of Equivalents Argument Is Legally Barred by Prosecution History Estoppel*

SRAM, though its expert, acknowledges that the accused products have a profile that includes a region of concavity, but nonetheless argues that "[s]uch a small region of concavity is not significant from an equivalents standpoint." DSMF, ¶15. As before, this doctrine of equivalents argument is also legally barred by prosecution history estoppel.

SRAM and its expert acknowledge, as they must, that the patentee made certain statements in the prosecution of the '800 patent in order to distinguish the claimed "convex exterior profile" from Mercat. DSMF, ¶11. Specifically, the patentee explained why Mercat's "peaks" are not convex, explaining that "the zones of spoke attachment taught by Mercat, which forms 'peaks' of the 'undulating configuration,' are conventional sections of a wheel rim, which follow an annular path and ***are concave in profile***." JSUF, ¶29 (emphasis added). Notwithstanding Mercat's disclosures of "peaks," the patentee clearly explained that, if the "peak" includes a concave profile—as Mercat's "zones of spoke attachment" do—such a configuration is not within the scope of the claimed "convex exterior profile." PCW's expert, Dr. Hanson, depicted this. DSMF, ¶13. The patentee concluded by stating that "Mercat provides no teaching or motivation to alter the zones of spoke attachment, and thus a person skilled in the art is taught by Mercat to provide *'peaks' having a concave profile,* ***which is the opposite to the convex profile defined by the amended independent claim 1.***" JSUF, ¶30 (emphasis added).

Accordingly, the patentee relinquished any claim to "peaks" having a concave profile, and is legally precluded from recapturing that claim scope now to suit its litigation objectives. *Wang Laboratories, Inc.*, 103 F.3d at 1577-1578. In view of these clear and unmistakable prosecution disclaimers, SRAM cannot now argue that an alleged "peak" having ***concave*** profiles infringes the

"convex exterior profile" limitation under the doctrine of equivalents. The patentee explicitly disclaimed *concave* profiles from the scope of "convex exterior profiles." *See id.*

### iii.      SRAM's Doctrine of Equivalents Theory Vitiates the Meanings of the Claims

SRAM's attempt to expand the meaning of "convex exterior profile" under the doctrine of equivalents to include concave profiles would vitiate the claim limitation, as a concave profile is the exact opposite of the claimed convex profile. *See Bicon*, 441 F.3d at 955-56 (element that is concave is "clearly contrary to, and thus excluded by" a convex shape). SRAM's theory that a "convex exterior profile" can include concave profiles renders it meaningless as a matter of law.

### iv.      SRAM's Doctrine of Equivalents Arguments Ensnare the Prior Art

Neither SRAM nor its expert offered a hypothetical claim required to avoid the principle of ensnarement. This failure to satisfy an essential element of the doctrine of equivalents precludes the theory as a matter of law. *See Jang*, 872 F.3d at 1285; *see also* DSMF, ¶¶20-22. Further, to the extent the hypothetical claim encompasses a wheel having convex exterior profiles that can include concave portions, German patent publication DE 2020 2273 to Alex would anticipate or render obvious this limitation. Alex discloses a rim configuration that explicitly discloses convex exterior profiles (23) and (242) under SRAM's interpretation. DSMF, ¶¶19, 26.

*         *         *

For all the reasons in Section IV.A.2, there is no triable issue of fact that SRAM's doctrine of equivalents theory for "convex exterior profile" is fatally insufficient and legally precluded. Accordingly, this Court should enter judgment as a matter of law that no Accused Product infringes the "convex exterior profile" limitation under the doctrine of equivalents.

### B.      The Accused Products Do Not Infringe the '188 Patent Under the Doctrine of Equivalents

### 1.       "convex profiles in convex regions" (Independent Claim 1)

The claim language here requires a "***convex*** profile." JSUF, ¶7 ('188 Patent, Claim 1) (emphasis added). According to SRAM and its expert, "convex profile" means "side view having a rounded or curved form bulging toward the wheel's center." JSUF, ¶¶14-15. However, SRAM and its expert now argue that a convex profile with a "small region of concavity" is permitted under its doctrine of equivalents analysis. DSMF, ¶15. For the reasons below, SRAM is wrong.

### a.       SRAM Cannot Show Infringement Under the Doctrine of Equivalents

#### i.       *SRAM Failed to Present Evidence of Equivalence Under Each Prong of the Function-Way-Result Test*

SRAM's doctrine of equivalents arguments for the '188 patent's "convex profile" mirror SRAM's arguments for the '800 patent's "convex exterior profile." DSMF, ¶14. It also suffers from the same fatal infirmities discussed above. SRAM's expert again failed to identify any particular Accused Product or cite a single document describing any technical aspect of the Accused Products (or any document, for that matter) in his doctrine of equivalents opinion for the "convex profile" limitation. DSMF, ¶1-3, 16. Accordingly, SRAM cannot as a matter of law show infringement of this claim element under the doctrine of equivalents. *See Akzo Nobel Coatings*, 811 F.3d at 1342; *Lear Siegler*, 873 F.2d at 1425; *Eastcott*, 564 Fed. Appx. at 595-96 (conclusory statements of equivalents is insufficient).

#### ii.       *SRAM's Doctrine of Equivalents Arguments Are Legally Barred by Prosecution History Estoppel*

SRAM and its expert acknowledge, as they must, that the patentee made certain statements in the prosecution of the '188 patent in order to distinguish the claimed "convex profile" from Mercat. DSMF, ¶12. The prosecution history of the '188 patent confirms that the patentee similarly disclaimed any portions of concavity for "convex profiles." During prosecution, the patentee

explained that "*a convex peak would have **an apex** that is radially further from the radially outer edge than **other points of the peak**.*" JSUF, ¶23 (emphasis added). The patentee concluded by stating that Mercat "only discloses a peak with a constant radial distance" so "Mercat does not disclose a peak having a convex exterior profile." *Id.*

Through this argument, the patentee made clear that a "convex" profile must have a single point that is further from the radially outer edge of the rim than any other points on the alleged peak. The patentee also made clear that the "convex" profile cannot include any portion of constant radial distance (i.e., concavity) that bulges away from the center of the wheel like Mercat. Accordingly, the patentee made a "clear and unmistakeable" surrender from the scope of the claims profiles that have portions of concavity or do not have an apex that is radially further from the radially outer edge than other points of the peak. *See Wang Laboratories, Inc.*, 103 F.3d at 1577-1578; *Pharma Tech Sols.*, 942 F.3d at 1380-81.

The applicant also amended the claims and argued why certain prior art references—*Mercat* and *Herting*—do not disclose the claimed "convex profiles." To start, the applicant amended Claim 1 of the '188 to include the limitation "wherein the radially inner edge has convex profiles in convex regions of the rim, respectively, the convex regions including the peaks, respectively." JSUF, ¶24. In support of this amendment the patentee emphasized that, despite having "peaks," *Mercat* does not disclose "convex profiles" because its peaks include portions of "constant thickness" which "define concave profiles." JSUF, ¶31; DSMF, ¶12.

In the same argument, the patentee explained that *Herting* does not disclose convex profiles. Despite disclosing a rim configuration with apexes that are radially further from the outer edge than other points of the peaks (which the patentee previously said characterized a convex peak), the patentee explained that *Herting's* apexes are not convex profiles because they are

formed at the intersection of two concave profiles. JSUF, ¶32 (*Id.* at SRAM-P00915). Thus, though necessary for a convex profile, an apex that is radially further from the outer edge than any other point, alone, is not enough to define a convex profile.

Expanding on this point in a subsequent amendment and interview, the patentee explained that the apex must also be on a rounded or curved configuration that bulges towards the center of the wheel as opposed to being formed at the intersection of two concave profiles (e.g. angular points). JSUF, ¶25-26. Therefore, to overcome *Herting*, the patentee added the term "curved" to the phrase "undulating configuration" to "more clearly define that the surface of the rim has rounded concave and convex surfaces." *Id.* The patentee's final claim amendment captures this modification. JSUF, ¶26.

In view of this amendment, and the supporting arguments, the patentee clearly and unambiguously (1) excluded "peaks" having portions of concavity or constant thickness, and (2) confirmed that a "convex profile" must be entirely rounded or curved, bulge towards the center of the wheel, and include an apex that is radially further from the outer edge than other points. As a result, SRAM is legally precluded from arguing that alleged "peaks" having ***concave*** profiles, infringe the "convex profile" limitation under the doctrine of equivalents. The patentee explicitly disclaimed ***concave*** profiles from the scope of "convex profiles," and cannot recapture that claim scope to serve its litigation strategy. *Wang Laboratories, Inc.*, 103 F.3d at 1577-1578; *Pharma Tech Sols.*, 942 F.3d at 1380.

iii.    *SRAM's Doctrine of Equivalents Theory Vitiates the Meanings of the Claims*

Expanding the claimed meaning of the claimed "convex profile" under the doctrine of equivalents to include concave profiles would also vitiate this claim limitation. As explained above with respect to the term "convex exterior profile," a doctrine of equivalents analysis that attempts

to include concave profiles within the scope of convex profiles would vitiate the meaning of convex profiles. *See* Section IV.A.2.a.iii, *supra*. For the same reasons, SRAM's doctrine of equivalents theory vitiates the meaning of "convex profiles" here.

*iv.*      *SRAM's Doctrine of Equivalents Argument Ensnares the Prior Art*

As explained above with respect to the term "convex exterior profile," a doctrine of equivalents analysis that attempts to include concave profiles within the scope of convex profiles would ensnare the prior art, Alex. *See* Section IV.A.2.a.iv, *supra*. For the same reasons, SRAM's doctrine of equivalents theory regarding "convex profiles in convex regions" ensnares the prior art, Alex. Accordingly, no Accused Product can infringe under SRAM's doctrine of equivalence argument because it would ensnare prior art.

*     *     *

For all the reasons in Section IV.B.1, there is no triable issue of fact that SRAM's doctrine of equivalents theory for "convex profile" is fatally insufficient and legally precluded. Accordingly, this Court should enter judgment as a matter of law that no Accused Product infringes the "convex exterior profile" limitation under the doctrine of equivalents.

### C. The Accused Products Do Not Literally Infringe the "Convex Exterior Profile" or "Convex Profile" Limitations of the '800 Patent or '188 Patent

Patent infringement requires a two-step analysis. First, the claims must be properly construed, which is a question of law. Second, the claims as construed must be compared to the accused article. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Only if the accused article satisfies every element of the properly construed claims will literal infringement be found. "Thus, if any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (internal quotations omitted). As a matter of law, SRAM

18

cannot meet this standard for the "convex exterior profile" limitation of Claim 1 of the '800 patent or the "convex profile" limitation of Claim 1 of the '188 patent. That is because there is no triable issue of fact that PCW's Accused Products do not literally infringe these claim elements.

### 1.    The Claims Require the Rim to Have "Convex Exterior Profiles" and "Convex Profiles"

Claim 1 of the '800 patent requires each claimed peak to have "a convex exterior profile in a plane of the wheel." JSUF, ¶3. Similarly, Claim 1 of the '188 patent requires claimed convex regions—which include the claimed peaks—to have "convex profiles." JSUF, ¶7 According to SRAM and its expert, "convex exterior profile" means "outer side view having a rounded or curved form bulging toward the wheel's center." JSUF, ¶¶12-13. Similarly, according to SRAM and its expert, "convex profile" means "side view having a rounded or curved form bulging toward the wheel's center." JSUF, ¶¶14-15. As explained above, based on the prosecution history of each patent, the "convex" profile does not—and cannot as a matter of law—include "concave" regions. Sections IV.A.2 and IV.B.1, *supra*.

### 2.    None of the Accused Products Have "Convex" Profiles Under Either Parties' Construction

A picture is worth a thousand words. As shown in the below photographs of the rim profile of each of PCW's products that SRAM accuses of infringing the "convex" profile limitations, each Accused Product has a ***concave*** profile at its alleged "peak." *See* DSMF, ¶17.







Accordingly, there is no triable issue of fact that no Accused Product can literally infringe the "convex exterior profile" limitation of Claim 1 of the '800 patent or the "convex profile" limitation of claim 1 of the '188 patent. Summary judgment of noninfringement should therefore enter.

## V.   CONCLUSION

**WHEREFORE,** Defendant Princeton Carbon Works Inc. respectfully requests that the Court enter an order (1) granting its motion for summary judgment of noninfringement for all Accused Products under the doctrine of equivalents and (2) granting its motion for summary judgment of no literal infringement for all Accused Products for the "convex exterior profile" limitation of Claim 1 of the '800 patent or the "convex profile" limitation of claim 1 of the '188 patent.

Dated: February 2, 2022

Respectfully submitted,

*/s/ David S. Brafman*
David S. Brafman (Florida Bar No. 68289)
Email: david.brafman@akerman.com
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Tel: (561) 653-5000

*Of Counsel*

James M. Wodarski (admitted *pro hac vice*)
Andre H. DeVoogd (admitted *pro hac vice*)
Matthew S. Galica (admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, PC
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Facsimile: (617) 542-2241
JWodarski@mintz.com
AHDeVoogd@mintz.com
MSGalica@mintz.com

*Counsel for Defendant Princeton Carbon Works Inc.*

21

## <u>CERTIFICATE OF SERVICE</u>

On February 2, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Florida, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

Dated: February 2, 2022

Respectfully submitted,

*/s/ David S. Brafman*
David S. Brafman (Florida Bar No. 68289)
Email: david.brafman@akerman.com
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Tel: (561) 653-5000

*Of Counsel*

James M. Wodarski (admitted *pro hac vice*)
Andrew H. DeVoogd (admitted *pro hac vice*)
Matthew S. Galica (admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Facsimile: (617) 542-2241
JWodarski@mintz.com
AHDeVoogd@mintz.com
MSGalica@mintz.com

*Counsel for Defendant Princeton Carbon Works Inc.*