**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| SRAM, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 9:21-cv-80581 RKA |
| | ) |
| PRINCETON CARBON WORKS INC., | ) |
| | ) |
| Defendant. | ) |

## <u>JOINT PROPOSED JURY INSTRUCTIONS AND VERDICT FORM</u>

Plaintiff SRAM, LLC ("Plaintiff" or "SRAM") and Defendant Princeton Carbon Works

Inc. ("Defendant" or "PCW") (collectively, the "Parties"), pursuant to Local Rule 16.1(k) and the

Court's and this Court's Amended Scheduling Orders (ECF Nos. 91, 147, 154, 164), hereby submit

their Joint Proposed Jury Instructions and Verdict Form.  Pursuant to the Court's Amended

Scheduling Orders, the instructions on which the Parties do not agree are in bold font, with the

instructions proposed only by Plaintiff SRAM underlined and instructions proposed only by

Defendant PCW italicized.  To assist the Court, the parties have also included brief statements of

their respective positions with respect to instructions on which the Parties do not currently agree

and may present further citations and argument at the charge conference or as the Court otherwise

directs.  Where possible, the Parties have used the Eleventh Circuit Pattern Instructions for Civil

Cases.  However, because those instructions do not include instructions for patent cases, the Parties

also relied on the Federal Circuit Bar Association Model Patent Jury Instructions, the American

Intellectual Property Law Association Model Patent Jury Instructions, and the Seventh Circuit

Pattern Jury Instructions of the Seventh Circuit (Patents), modified or revised, as appropriate,

based on applicable law.

These proposed instructions are necessarily tentative and hypothetical to the extent the Parties cannot predict what issues will ultimately be submitted to the jury, what evidence will ultimately be adduced at trial, or how the Court may rule on pending motions.  The Parties thus reserve their respective rights to request and submit additional, modified, or different instructions before the case is submitted to the jury, and in keeping with the Court's rules and orders.

Dated: November 21, 2022

Respectfully submitted,

/s/ *Eric C. Christu*
Eric C. Christu (Florida Bar No. 434647
SHUTTS & BOWEN LLP
525 Okeechobee Boulevard, Suite 1100
West Palm Beach, FL 33401
Tel: (561) 650-8556
Facsimile: (561) 671-5900
Email: echristu@shutts.com

Richard B. Walsh, Jr. (admitted *pro hac vice*)
Michael J. Hickey (admitted *pro hac vice*)
Edward T. Pivin (admitted *pro hac vice*)
LEWIS RICE LLC
600 Washington Ave., Suite 2500
St. Louis, Missouri 63101
Tel: (314) 444-7600
Facsimile: (314) 241-6056
Email: rwalsh@lewisrice.com
Email: mhickey@lewisrice.com
Email: epivin@lewisrice.com

*Counsel for Plaintiff SRAM, LLC*

/s/ *David S. Brafman*
David S. Brafman (Florida Bar No. 68289)
Email: david.brafman@akerman.com
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Tel: (561) 653-5000

*Of Counsel*

James M. Wodarski (admitted *pro hac vice*)
Andrew H. DeVoogd (admitted *pro hac vice*)
Matthew S. Galica (admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, PC
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Facsimile: (617) 542-2241
JWodarski@mintz.com
AHDeVoogd@mintz.com
MSGalica@mintz.com

*Counsel for Defendant Princeton Carbon Works Inc.*

## TABLE OF CONTENTS

I.      PRELIMINARY INSTRUCTIONS ................................................................... 1

        Proposed Instruction No. 1 – General Preliminary Instruction............................. 2

        Proposed Instruction No. 2 – What a Patent Is and How One Is Obtained ..................... 7

        Proposed Instruction No. 3 – Summary of Contentions .................................... 10

        Proposed Instruction No. 4 – Patents at Issue................................................. 12

        Proposed Instruction No. 5 – Overview of Applicable Law............................... 17

        Proposed Instruction No. 6 – Outline of Trial ................................................. 19

II.     TRIAL INSTRUCTIONS............................................................................ 21

        Proposed Instruction No. 7 – Stipulations ..................................................... 22

        Proposed Instruction No. 8 – Use of Depositions............................................ 25

        Proposed Instruction No. 9 – Use of Interrogatories ...................................... 26

III.    INSTRUCTIONS AT THE CLOSE OF THE EVIDENCE .......................................... 27

        Proposed Instruction No. 10 – Introduction.................................................... 28

        Proposed Instruction No. 11 – The Duty to Follow Instructions – Corporate Party
                Involved ............................................................................ 29

        Proposed Instruction No. 12 – Consideration of Direct and Circumstantial
                Evidence;  Argument of Counsel; Comments by the Court .............................. 30

        Proposed Instruction No. 13 – Credibility of Witnesses ................................... 31

        Proposed Instruction No. 14 – Impeachment of Witnesses Because of Inconsistent
                Statements ......................................................................... 32

        Proposed Instruction No. 15 – Expert Witness................................................. 33

        Proposed Instruction No. 16 – Summary of Contentions ................................... 34

        Proposed Instruction No. 17 – Claim Construction – Patent Claims............................. 35

        Proposed Instruction No. 18 – Claim Construction – Independent and Dependent
                Claims ............................................................................. 37

        Proposed Instruction No. 19 – Infringement Generally...................................... 38

i

Proposed Instruction No. 20 – Direct Infringement – Knowledge of the Patent and Intent to Infringe Are Immaterial ........................................................................ 39

Proposed Instruction No. 21 – Direct Infringement – Literal Infringement .................... 40

Proposed Instruction No. 22 – Infringement of Dependent Claims.................................. 41

Proposed Instruction No. 23 – Direct Infringement – Infringement Under the Doctrine of Equivalents ........................................................................................ 42

Proposed Instruction No. 24 – Limitations on the Doctrine of Equivalents.................... 44

Proposed Instruction No. 25 – Indirect Infringement – Active Inducement.................... 45

Proposed Instruction No. 26 – Indirect Infringement – Contributory Infringement......... 47

Proposed Instruction No. 27 – Willful Infringement ........................................................ 48

Proposed Instruction No. 28 – Invalidity – Burden of Proof ........................................... 50

Proposed Instruction No. 29 – Prior Art .......................................................................... 51

Proposed Instruction No. 30 – Prior Art Considered or Not Considered by the USPTO .................................................................................................................. 54

Proposed Instruction No. 31 – Invalidity of Independent and Dependent Claims ........... 55

Proposed Instruction No. 32 – Person of Ordinary Skill in the Art.................................. 56

Proposed Instruction No. 33 – Anticipation .................................................................... 57

Proposed Instruction No. 34 – Obviousness – Generally ................................................. 59

Proposed Instruction No. 35 – The First Factor:  Scope and Content of the Prior Art ............................................................................................................... 61

Proposed Instruction No. 36 – The Second Factor:  Differences Between the Claimed Invention and the Prior Art........................................................................ 62

Proposed Instruction No. 37 – The Third Factor:  Level of Ordinary Skill..................... 64

Proposed Instruction No. 38 – The Fourth Factor:  Other Considerations ...................... 65

Proposed Instruction No. 39 – Damages – Introduction.................................................. 67

Proposed Instruction No. 40 – Lost Profits...................................................................... 69

Proposed Instruction No. 41 – Reasonable Royalty ........................................................ 76

Proposed Instruction No. 42 – Reasonable Royalty – Timing...........................................84

Proposed Instruction No. 43 – Date of Commencement of Damages .............................85

Proposed Instruction No. 44 – Doubts Resolved Against Infringer ................................86

Proposed Instruction No. 45 – Duty to Deliberate When Only the Plaintiff Claims
Damages....................................................................................................87

Proposed Instruction No. 46 – Election of Foreperson Explanation of Verdict Form
................................................................................................................88

VERDICT FORM ..................................................................................................89

Glossary ..................................................................................................98

## I.     PRELIMINARY INSTRUCTIONS

**Proposed Instruction No. 1 –**
**General Preliminary Instruction**

<u>Members of the Jury</u>:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

<u>The jury's duty</u>:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

<u>What is evidence</u>:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence</u>:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses</u>:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

· the witness's opportunity and ability to see, hear, or know the things the witness

 is testifying about;

· the witness's memory;

· the witness's manner while testifying;

· any interest the witness has in the outcome of the case;

· any bias or prejudice the witness may have;

· any other evidence that contradicts the witness's testimony;

· the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

<u>Conduct of the jury</u>:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

<u>Taking notes</u>:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case.

Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Authorities:  Instruction No. 1.1, General Preliminary Instruction, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision), modified to remove Description of the Case, Burden of Proof, and Course of Trial, which are addressed in subsequent Proposed Instruction Nos. 3, 5, and 6.

**Proposed Instruction No. 2 –**
**What a Patent Is and How One Is Obtained**

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application

7

was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without

input from those who are later alleged to infringe the patent. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not PCW has proven that the patent is invalid.

Authorities:   Instruction No. A.1, Preliminary Instruction – What a Patent is and How One is Obtained, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

**Proposed Instruction No. 3 –**
**Summary of Contentions**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are SRAM, LLC ("SRAM") and Princeton Carbon Works Inc. ("PCW").  The case involves United States Patent Nos. 9,610,800 B2 and 10,611,188 B2. For your convenience, the parties and I will often refer to U.S. Patent No. 9,610,800 B2 by the last three numbers of the patent number, namely, as the '800 patent, and U.S. Patent No. 10,611,188 B2 by the last three numbers of the patent number, namely, as the '188 patent.

SRAM filed suit in this court alleging that PCW is infringing the '800 and '188 patents by making, using, selling, or offering for sale in the United States, or by importing into the United States, products that SRAM argues are covered by claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent. SRAM also argues that PCW has actively induced infringement of these claims of the '800 and '188 patents and contributed to the infringement of these claims of the '800 and '188 patents by others.  The products that are alleged to infringe are PCW's WAKE 6560, GRIT 4540, and PEAK 4550 bicycle wheels.

PCW denies that it has infringed claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent. PCW also argues that claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent are invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

Your job will be to decide whether or not claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent have been infringed and whether or not those

claims are invalid. If you decide that any claim of the '800 or '188 patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to SRAM to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

Authorities:  Instruction No. A.2, Preliminary Instructions – Summary of Contentions, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

## Proposed Instruction No. 4 –
## Patents at Issue

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

I have already determined the meaning of the claims of the '800 and '188 patents. You have been given a document reflecting those meanings, which I repeat now, as well as a glossary of general patent terms that may be used during the course of this trial:

1) "Continuously varies" means "continuously changes."

2) "Convex exterior profile" and "convex profile" mean "profile view having a rounded or curved form bulging towards the wheel center."

3) "Convex region" means "areas having a rounded or curved form bulging towards the wheel's center."

4) "Peaks" as used in the asserted claims of the '800 and '188 patents means "peaks". "Peak" sometimes refers to the **[highest level or point**[1]/ *single highest point*[2]] on

---

[1] **SRAM's position:** SRAM has used the plain English language alternatives stated by the Court. *See* ECF No. 113 at 12 ("First, the words 'peaks' and 'troughs' are sometimes used to describe the **highest level** and the **lowest level** of the wave. That is, the **highest point** of the convex wave and the **lowest point** of the concave wave.") (emphasis added); *id.* ("On the other hand, the term 'peaks' and 'troughs' are sometimes used to describe – not just the **highest or lowest point** – but the **entire** convex or concave **shape**, that is, the **elevating portions** or the **recessing portions**."); *id.* at 13 ("'Peaks' and 'troughs' will be defined as 'peaks' and 'valleys.' And before trial, I will have a charge conference with the parties to agree on language for instruction to the jury that 'peaks' and 'valleys' sometimes refers to the single **highest or lowest point** on an ascending or descending curve, and will point out for them the portions of the patents and claims where that occurs; and sometimes those same words refer to the **entire ascent or descent**, and will point for them -- identify for them those parts of the patents and claims where that occurs.") (emphasis added).

[2] **PCW's position:** The term "peaks" was construed as "peaks," where it sometimes means "single highest point" and other times means "entire ascent." See ECF No. 113 at 13. The term "troughs" was construed as "valleys," where it sometimes means "single lowest point" and other times means "entire descent." Id. SRAM's attempt to inject "single highest **level**" into the meaning of "peaks" and "single lowest **level**" into the meaning of "troughs" is improper. *Id.* ("'Peaks' and 'troughs' will be defined as 'peaks' and 'valleys.' And before trial, I will have a charge conference with the parties to agree on language for instruction to the jury that **'peaks' and 'valleys' sometimes refers to the**

12

an ascending curve, and other times refers to the entire ascent **[or elevating portion]**[3]. "Troughs" as used in the asserted claims of the '800 and '188 patents means "valleys". "Trough" sometimes refers to the **[lowest level or point /** *single lowest point***]** on a descending curve, and other times refers to the entire descent **[or recessing portion]**[4]. I will now identify where these meanings occur for the claims of the '800 and '188 patents.

- Claim 1 of the '800 patent recites, in relevant part: "wherein the rim has a radially inner edge, and wherein at least part of the radially inner edge has an undulating configuration and a radial distance that continuously varies between adjacent *peaks* and *troughs* of the undulating configuration, each *peak* of the undulating configuration having a convex exterior profile in a plane of the wheel." The first instance of "peaks" refers to the **[highest level or point/** *single highest point***]** on an ascending curve. The second instance of "peak" refers to the entire ascent **[or elevating portion]**. "Troughs" refers to the **[lowest level or point /** *single lowest point***]** on a descending curve.

- Claim 9 of the '800 patent recites: "A wheel as claimed in claim 1, wherein at least twenty-four pairs of *peaks* and *troughs* are provided along the radially inner edge of the rim." Here, "peaks" means the entire ascent **[or**

---

**single highest or lowest point** on an ascending or descending curve, and will point out for them the portions of the patents and claims where that occurs; and **sometimes those same words refer to the entire ascent or descent**, and will point for them -- identify for them those parts of the patents and claims where that occurs.") (emphasis added).

[3] **PCW's position:** The term "peaks" was construed as "peaks," where it sometimes means "single highest point" and other times means "entire ascent." See ECF No. 113 at 13. SRAM's attempt to inject "or elevating portion" into the meaning of "peaks" is an improper attempt to revisit claim construction. *Id.* ("'Peaks' and 'troughs' will be defined as 'peaks' and 'valleys.' And before trial, I will have a charge conference with the parties to agree on language for instruction to the jury that **'peaks' and 'valleys' sometimes refers to the single highest or lowest point** on an ascending or descending curve, and will point out for them the portions of the patents and claims where that occurs; and **sometimes those same words refer to the entire ascent or descent**, and will point for them -- identify for them those parts of the patents and claims where that occurs.") (emphasis added).

[4] **PCW's position:** The term "troughs" was construed as "valleys," where it sometimes means "single lowest point" and other times means "entire descent." See ECF No. 113 at 13. SRAM's attempt to inject "or recessing portion" into the meaning of "troughs" is an improper attempt to revisit claim construction. *Id.* ("'Peaks' and 'troughs' will be defined as 'peaks' and 'valleys.' And before trial, I will have a charge conference with the parties to agree on language for instruction to the jury that **'peaks' and 'valleys' sometimes refers to the single highest or lowest point** on an ascending or descending curve, and will point out for them the portions of the patents and claims where that occurs; and **sometimes those same words refer to the entire ascent or descent**, and will point for them -- identify for them those parts of the patents and claims where that occurs.") (emphasis added).

13

**elevating portion]**, and "troughs" means the entire descent **[or recessing portion]**.

- Claim 17 of the '800 patent recites, in relevant part: "wherein at least part of the radially inner edge has an undulating configuration and a radial distance that continuously varies between adjacent *peaks* and *troughs* of the undulating configuration..." Here, "peaks" refers to the **[highest level or point/** *single highest point***]** on an ascending curve, and "troughs" refers to the **[lowest level or point /** *single lowest point***]** on a descending curve.

- Claim 18 of the '800 patent recites: "A wheel as claimed in claim 17, wherein a radial distance that varies between *peaks* and *troughs* of the undulating configuration and the difference in radial height between the *peaks* and *troughs* of the undulations is at least 5 mm." Both instances of "peaks" refer to the **[highest level or point/** *single highest point***]** on an ascending curve, and both instances of "troughs" refer to the **[lowest level or point /** *single lowest point***]** on a descending curve.

- Claim 22 of the '800 patent recites: "A wheel as claimed in claim 17, wherein at least twenty-four pairs of *peaks* and *troughs* are provided along the radially inner edge of the rim." Here, "peaks" means the entire ascent **[or elevating portion]** and "troughs" means the entire descent **[or recessing portion]**.

- Claim 1 of the '188 patent recites, in relevant part: "wherein at least part of a radially inner edge of the rim has an undulating curve configuration, the undulating curve configuration having *peaks* and *troughs*, and wherein the radially inner edge has convex profiles in convex regions of the rim, the convex regions including the *peaks*." Here, the first instance of "peaks" refers to the entire ascent **[or elevating portion]**. The second instance of "peaks" refers to the **[highest level or point/** *single highest point***]** on an ascending curve. "Troughs" refers to the entire descent **[or recessing portion]**.

- Claim 3 of the '188 patent recites: "The wheel as claimed in claim 1, wherein the *peaks* and the *troughs* of the undulating curve configuration are arranged at regular intervals." Here, "peaks" refers to the entire ascent **[or elevating portion]**, while "troughs" refers to the entire descent **[or recessing portion]**.

- Claim 5 of the '188 patent recites: "The wheel as claimed in claim 1, wherein the undulating curve configuration has the convex profiles in a plan of the wheel, such that the *peaks* do not comprise an angular apex." Here, "peaks" refers to the entire ascent **[or elevating portion]**.

- Claim 8 of the '188 patent recites: "The wheel as claimed in claim 1, wherein a difference in radial height between the *peaks* and the *troughs* is

at least 5 mm, at least 10 mm, or at least 20 mm." Here, "peaks" refers to the **highest level or point**/ *single highest point*] on an ascending curve, and "troughs" refers to the [**lowest level or point** / *single lowest point*] on a descending curve.

- Claim 10 of the '188 patent recites: "The wheel as claimed in claim 1, wherein the undulating curve configuration has a radius that varies between the *peaks* and the *troughs* of the undulating curve configuration, and wherein at least a subset of the *peaks* of the undulating curve configuration are points of minimum radius of the undulating curve configuration." Here, both instances of "peaks" refer to the **highest level or point**/ *single highest point*] on an ascending curve, and "troughs" refers to the [**lowest level or point** / *single lowest point*] on a descending curve.

- Claim 11 of the '188 patent recites, in relevant part: "The wheel as claimed in claim 1, wherein the undulating curve configuration has a radius that varies between the *peaks* and the *troughs* of the undulating curve configuration, and wherein the *troughs* of the undulating curve configuration are points of maximum radius of the undulating curve configuration." Here, "peaks" refers to the **highest level or point**/ *single highest point*] on an ascending curve, and both instances of "troughs" refer to the [**lowest level or point** / *single lowest point*] on a descending curve.

5)    "A radius" means "a straight line drawn between a circle's center and any point on its circumference."

6)    "Radial distance" means "distance from a point on the radially inner edge of the rim to the center of the wheel."

7)    "Undulating configuration" means "wavelike configuration."

8)    "Undulating curve configuration" means "rounded wavelike configuration."

For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent. You are to apply my definitions of the terms I have construed throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

Authorities:  Instruction No. A.3, Preliminary Instructions – Patent at Issue, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020), modified to include "as well as a glossary of general patent terms that may be used during the course of this trial" in view of the inclusion of a Glossary; Joint Stipulation Regarding Claim Const. Terms No Longer In Dispute (ECF No. 85), at 1; Joint Stipulation Regarding Claim Construction (ECF No. 93), at 1; Transcript of Markman Hearing, dated April 20, 2022 (ECF No. 90), at 35-38, 43-44; Transcript of Status Conference Hearing, dated May 12, 2022 (ECF No. 113), at 12-14, 19.

**Proposed Instruction No. 5 –**
**Overview of Applicable Law**

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether PCW has infringed the claims of the '800 and '188 patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. In general, however, to prove infringement, SRAM must prove by a preponderance of the evidence that PCW made, used, sold, or offered for sale in the United States, or imported into the United States, a product meeting all of the requirements of a claim of the '800 or '188 patents. I will provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the '800 and '188 patents are invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious. For a claim to be invalid because it is not new, PCW must show, by clear and convincing evidence, that all of the elements of a claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. We call these "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in

17

deciding whether the inventions claimed in the '800 and '188 patents are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

If you decide that any claim of the '800 or '188 patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to SRAM to compensate it for the infringement. A damages award should put SRAM in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what SRAM would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate SRAM and not to punish PCW. You may not include in your award any additional amount as a fine or penalty in order to punish PCW. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

Authorities:  Instruction No. A.4, Preliminary Instructions – Overview of Applicable, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

**Proposed Instruction No. 6 –**
**Outline of Trial**

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, SRAM will present its evidence in support of its contention that some of the claims of the '800 and '188 patents have been and continue to be infringed by PCW and that the infringement has been and continues to be willful. To prove infringement of any claim, SRAM must persuade you that it is more likely than not that PCW has infringed that claim.

To persuade you that any infringement was willful, SRAM must also prove that it is more likely than not that the infringement was willful.

PCW will then present its evidence that the claims of the '800 and '188 patents are invalid. To prove invalidity of any claim, PCW must persuade you by clear and convincing evidence that the claim is invalid. In addition to presenting its evidence of invalidity, PCW will put on evidence responding to SRAM's evidence of infringement and willfulness.

SRAM may then put on additional evidence responding to PCW's evidence that the claims of the '800 and '188 patents are invalid, and to offer any additional evidence of infringement and willfulness. This is referred to as "rebuttal" evidence. SRAM's "rebuttal" evidence may respond to any evidence offered by PCW.

Finally, PCW may have the option to put on its "rebuttal" evidence to support its contentions as to the validity and/or enforceability of some of the claims of the '800 and the '188 patents by responding to any evidence offered by SRAM on that issue.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

Authorities:  Instruction No. A.5, Preliminary Instructions – Outline of Trial, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

## II.    TRIAL INSTRUCTIONS

**Proposed Instruction No. 7 –
Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.  The stipulated facts are:

The '800 Patent issued on April 4, 2017.  The '188 Patent issued on April 7, 2020.  The Patents-in-Suit are part of a family of patents that claim priority to a British patent application filed January 27, 2011.  The inventor of the Patents-in-Suit is Dimitrios Katsanis.  Dimitrios Katsanis' company, Metron IP Limited, is the owner of the Patents-in-Suit.  SRAM is the exclusive licensee of the Patents-in-Suit.  SRAM's exclusive license to the Patents-in-Suit states that SRAM has the exclusive right, but not the obligation, to commence, prosecute and resolve lawsuits against third parties arising from alleged infringement of the Patents-in-Suit.

Each of the accused products (the WAKE 6560, GRIT 4540 and PEAK 4550 bicycle wheels) have been and continue to be sold by PCW in the United States.  The rim depth and width dimensions of the GRIT 4540 bicycle wheels have not changed since their first sale in the United States in 2019.  The rim depth and width dimensions of the PEAK 4550 bicycle wheels have not changed since their first sale in the United States in 2021.

From May 29, 2018, to November 2, 2022, Princeton Carbon Works has sold in the United States a total of **[TO BE AGREED UPON BY THE PARTIES]** WAKE 6560 bicycle wheels, a total of **[TO BE AGREED UPON BY THE PARTIES]** GRIT 4540 bicycle wheels, and a total of **[TO BE AGREED UPON BY THE PARTIES]** PEAK 4550 bicycle wheels.

The following references were patented or described in a printed publication in the United States or a foreign country more than one year prior to January 27, 2011 and constitute "prior art":

- U.S. Patent No. 6,196,638: Filing date of Dec. 29, 1998; Assignee is Shimano Inc.; Inventors are Toshio Mizuno, *et al*. (referred to as "Mizuno")

- U.S. Patent No. 6,402,256: Filing date of Sept. 5, 2000; Assignee is Mavic S.A.; Inventor is Jean-Pierre Mercat (referred to as "Mercat")

- U.S. Patent No. 6,425,641: Filing date of Feb. 13, 2001; Assignee is Jas. D. Easton, Inc.; Inventor is Eric Herting (referred to as "Herting")

- U.S. Patent No. 7,083,239: Filing date of July 25, 2003; Assignee is Shimano Inc.; Inventor is Shinpei Okajima (referred to as "Okajima")

- U.S. Patent Pub. No. 2005/0242658: Filing date of Apr. 30, 2004; Inventors are Lawrence E. Carlson, *et al.* (referred to as "Carlson")

- U.S. Patent Pub. No. 2008/0054712: Filing date of Aug. 29, 2007; Assignee is Campagnolo S.R.L.; Inventor is Davide Urbani (referred to as "Urbani")

- U.S. Patent Pub. No. 2009/0236902: Filing date of Mar. 9, 2009; Inventor is Mordecai Zibkoff (referred to as "Zibkoff")

- EU Patent No. 1,262,334:  Filing date of Feb. 7, 2022; Applicant is Alex Machine Industrial Co., Ltd; Inventor is Chao-Ying Chen (referred to as "Chen")

- German Patent Pub. No. 20202273:  Filing date of Feb. 15, 2022; Owner is Alex Machine Industrial Co., Ltd. (referred to as "Alex Machine")

The Mercat, Herting, Zibkoff, Chen, and Alex Machine references were cited during the prosecution of the '800 and '188 patents.  Certain Mavic "Ksyrium" and Shimano bicycle wheels have been publicly available in the United States as of 2008.  Certain Fulcrum bicycle wheels have been publicly available in the United States as of 2010.

SRAM gave PCW actual notice of the '800 Patent on May 29, 2018, when SRAM sent a letter from its litigation counsel.  SRAM gave PCW actual notice of the '188 Patent on March 23, 2021, when SRAM served its complaint in this lawsuit.

Authorities:  Instruction No. 2.1, Stipulations, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision), modified to add "The stipulated facts are:".

**Proposed Instruction No. 8 –**
**Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Authorities:  Instruction No. 2.2, Use of Depositions, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision).

**Proposed Instruction No. 9 –
Use of Interrogatories**

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers as though [name of party] gave the answers on the witness stand.


Authorities:  Instruction No. 2.6, Use of Interrogatories, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision).

### III.    INSTRUCTIONS AT THE CLOSE OF THE EVIDENCE

**Proposed Instruction No. 10 –**
**Introduction**

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.


Authorities:   Instruction No. 3.1, Introduction, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision).

**Proposed Instruction No. 11 –**
**The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

Authorities:   Instruction No. 3.2.2, Duty to Follow Instructions – Corporate Party Involved, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision).

29

**Proposed Instruction No. 12 –
Consideration of Direct and Circumstantial Evidence;
Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

Authorities:  Instruction No. 3.3, Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision).

**Proposed Instruction No. 13 –
Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1)      Did the witness impress you as one who was telling the truth?

2)      Did the witness have any particular reason not to tell the truth?

3)      Did the witness have a personal interest in the outcome of the case?

4)      Did the witness seem to have a good memory?

5)      Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6)      Did the witness appear to understand the questions clearly and answer them directly?

7)      Did the witness's testimony differ from other testimony or other evidence?


Authorities:   Instruction No. 3.4, Credibility of Witnesses, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision).

**Proposed Instruction No. 14 –**
**Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Authorities:  Instruction No. 3.5.1, Impeachment of Witnesses Because of Inconsistent Statements, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision).

**Proposed Instruction No. 15 –**
**Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

Authorities:   Instruction No. 3.6.1, Expert Witness, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision).

**Proposed Instruction No. 16 –
Summary of Contentions**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, SRAM seeks money damages from PCW for allegedly infringing the '800 patent and '188 patent by making, using, selling, or offering for sale in the United States, or importing into the United States, products that SRAM argues are covered by claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent. These are the asserted claims of the '800 patent and the '188 patents.

PCW denies that it has infringed the asserted claims of the '800 patent or the '188 patent and argues that, in addition, that the asserted claims are invalid.

Your job is to decide whether PCW has infringed the asserted claims of the '800 patent or the '188 patent, and whether any of the asserted claims of the '800 patent or '188 patent are invalid. If you decide that any claim of the '800 patent or '188 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to SRAM to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

Authorities:  Instruction No. B.1, Summary of Contentions, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

**Proposed Instruction No. 17 –**
**Claim Construction – Patent Claims**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

35

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

Authorities:  Instruction No. B.2.1, Claim Construction – Patent Claims, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

**Proposed Instruction No. 18 –**
**Claim Construction – Independent and Dependent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claims 1 and 17 of the '800 patent and claim 1 of the '188 patent are independent claims.

The remainder of the claims in the '800 patent and '188 patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

Authorities:  Instruction No. B.2.1a, Claim Construction – Independent and Dependent Claims, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

**Proposed Instruction No. 19 –**
**Infringement Generally**

I will now instruct you how to decide whether or not SRAM has proven that PCW has infringed the '800 patent and the '188 patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are three possible ways that a claim may be infringed. The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory infringement. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. In this case, SRAM has alleged that PCW directly infringes the '800 and '188 patents. In addition, SRAM has alleged that companies and individuals selling or using the PCW bicycle wheels (including when sold or used as part of a bicycle) directly infringe the '800 and '188 patents and PCW is liable for actively inducing or contributing to that direct infringement by such companies and individuals.

In order to prove infringement, SRAM must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

Authorities: Instruction No. B.3.1, Infringement – Infringement Generally, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

**Proposed Instruction No. 20 –**
**Direct Infringement – Knowledge of the Patent and Intent to Infringe Are Immaterial**

In this case, SRAM asserts that PCW has directly infringed the '800 and '188 patents.

PCW is liable for directly infringing the '800 and '188 patents if you find that SRAM has proven

that it is more likely than not that PCW made, used, imported, offered to sell, or sold the invention

defined in at least one claim of the '800 or '188 patents.

A party can directly infringe a patent without knowing of the patent or without knowing

that what the party is doing is patent infringement.

Authorities:  Instruction No. 3.1, Direct Infringement—Knowledge of the Patent and Intent to

Infringe Are Immaterial, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 21 –**
**Direct Infringement – Literal Infringement**

To determine literal infringement, you must compare PCW's products with each patent claim SRAM asserts is infringed, using my instructions as to the meaning of the terms the patent claims use.

A patent claim is literally infringed only if PCW's product includes each and every element recited in that patent claim. If PCW's product does not contain one or more elements recited in a claim, PCW does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually.

The accused product should be compared to the invention described in each patent claim it is alleged to infringe. The same element of the accused product may satisfy more than one element of a patent claim.

Authorities: Instruction No. 3.2, Direct Infringement—Literal Infringement, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 22 –**
**Infringement of Dependent Claims**

There are two different types of claims in the patent.  One type is called an independent claim.  The other is called a dependent claim.

An independent claim does not refer to any other claim of the patent.  For example, claim 1 of the '800 patent is an independent claim.  An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent.  For example, claim 2 of the '800 patent is a dependent claim that refers to claim 1 of the '800 patent.  A dependent claim includes all elements recited in the dependent claim, as well as all elements of the independent claim to which it refers.

To establish literal infringement of a dependent claim, SRAM must show that it is more likely than not that PCW's product includes each and every element of the independent claim and the dependent claim.

If you find that the independent claim from which the dependent claim depends is not literally infringed, then you must find that the dependent claim is also not literally infringed.

Authorities:  Instruction No. 3.5, Infringement of Dependent Claims, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 23 –**
**Direct Infringement – Infringement Under the Doctrine of Equivalents**

If you decide that PCW's product does not literally infringe an asserted patent claim, you must then decide whether it is more probable than not that PCW's product infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes components that are equivalent to those elements of the claim that are not literally present in the product. If the product is missing an equivalent component to even one component of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether the product has an equivalent component to each individual claim element that is not literally present in the product.

One way of showing that a component is an equivalent of a claimed element is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused product.  Another way of showing that a component is an equivalent of a claimed element is to show that it is insubstantially different from the claimed element.

In deciding whether a claim element and the component are equivalents, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the component with the claimed element. However, known interchangeability between the claim element and the component of the product is not necessary to find infringement under the doctrine of equivalents.

Further, the same component of the accused product may satisfy more than one element of a claim.

42

Authorities:  Instruction No. 3.7, Infringement of Dependent Claims, AIPLA Model Patent Jury

Instructions (2019).

**Proposed Instruction No. 24 –**
**Limitations on the Doctrine of Equivalents**

**SRAM maintains that no instruction is necessary in view of its opposition to ECF No. 106.**

*In this case, I have determined, as a matter of law, that the doctrine of equivalents cannot be applied to certain elements of the asserted claims; specifically, I am instructing you that the doctrine of equivalents cannot be applied to the following elements of the asserted claims:*

*"continuously varies"*

*"convex profile"*

*"convex exterior profile"*

*Consequently, each of the elements above must be <u>literally</u> present within PCW's product for there to be infringement of the claim. Unless you find that each of the elements of the claims is literally present in PCW's product, you must find that there is no infringement.*

*As for the remaining elements of the asserted claims not listed above, you are permitted to find these elements with the doctrine of equivalents analysis that I instructed you on earlier.[5]*

---

[5] **PCW's position:** PCW maintains that this instruction is appropriate in view of ECF No. 106 and Instruction No. 3.7.1, Limitation of the Doctrine of Equivalents—Prosecution History Estoppel, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 25 –**
**Indirect Infringement – Active Inducement**

SRAM alleges that PCW is liable for infringement by actively inducing other companies and individuals to directly infringe the '800 and '188 patents literally or under the doctrine of equivalents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

PCW is liable for active inducement of a claim only if SRAM proves by a preponderance of the evidence:

(1) that the acts are actually carried out by companies and individuals selling or using the the PCW wheels directly infringe that claim;

(2) that PCW took action during the time the '800 or '188 patents were in force that was intended to cause and led to the infringing acts by companies and individuals selling or using the PCW wheels; and

(3) that PCW was aware of the '800 or '188 patents and knew that the acts, if taken, would constitute infringement of those patents, or that PCW believed there was a high probability that the acts by companies and individuals selling or using the PCW wheels infringed the '800 or '188 patents and took deliberate steps to avoid learning of that infringement.

If you find that PCW was aware of the patent, but believed that the acts it encouraged did not infringe that patent, PCW cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient companies and individuals selling or using the PCW wheels themselves directly infringe the claim. Nor is it sufficient that PCW was aware of the act(s) by companies and individuals selling or using the accused wheels that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that PCW specifically intended companies and

individuals selling or using the PCW wheels to infringe the '800 or '188 patents or that PCW believed there was a high probability that companies and individuals selling or using the PCW wheels would infringe the '800 or '188 patents, but deliberately avoided learning the infringing nature of the acts of companies and individuals selling or using the PCW wheels. The mere fact, if true, that PCW knew or should have known that there was a substantial risk that the acts of companies and individuals selling or using the PCW wheels would infringe the '800 or '188 patents would not be sufficient to support a finding of active inducement of infringement.

Authorities:   Instruction No. B.3.2, Indirect Infringement – Active Inducement, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

**Proposed Instruction No. 26 –**
**Indirect Infringement – Contributory Infringement**

SRAM argues that PCW is liable for contributory infringement by contributing to the direct infringement of the '800 and '188 patents by companies and individuals selling or using the PCW wheels. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

PCW is liable for contributory infringement of a claim if SRAM proves by a preponderance of the evidence:

(1) PCW sells, offers to sell, or imports within the United States a component of a product, material, or apparatus for use in a process, during the time the '800 or '188 patents are in force;

(2) the component, material, or apparatus is not a staple article or commodity of commerce suitable for substantial noninfringing use;

(3) the component, material, or apparatus constitutes a material part of the invention;

(4) PCW is aware of the '800 or '188 patents and knows that the component, material, or apparatus is especially made or adapted for use as an infringement of the claim; and

(5) companies and individuals selling or using the PCW wheels use the component, material, or apparatus to directly infringe a claim.

Authorities:   Instruction No. B.3.3, Indirect Infringement – Active Inducement, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

**Proposed Instruction No. 27 –**
**Willful Infringement**

In this case, SRAM argues that PCW willfully infringed the '800 and '188 patents. If you

have decided that PCW has infringed, you must go on and address the additional issue of whether

or not this infringement was willful.  Willfulness requires you to determine whether SRAM proved

that it is more likely than not PCW knew of the '800 patent or the '188 patent ***before SRAM filed***

***its Complaint in the present lawsuit***[6] and that the infringement by PCW was intentional. You

may not determine that the infringement was willful just because PCW was aware of the '800

---

[6] **PCW's position:**  PCW proposes to add this language in view of, *e.g.*, *Wi-LAN USA, Inc. v. Research in Motion Ltd.*, 2013 U.S. Dist. LEXIS 97203, at *13 (S.D. Fla. June 6, 2013) ("Plaintiff must therefore allege that Defendants had pre-suit knowledge of the '168 Patent to sustain its claims for induced, contributory or willful infringement."); *Brandywine Communs. Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1274 (M.D. Fla. 2012) ("pleading willful conduct without an allegation of pre-suit notice is insufficient."); *CTP Innovations, LLC v. Solo Printing, Inc.*, No. 1:14-cv-21499-UU, 2014 U.S. Dist. LEXIS 190232* at 8-9 (S.D. Fla. July 15, 2014) ("District courts within the Eleventh Circuit have held . . . that *a patentee cannot state a claim for willful infringement where the facts as alleged indicate that the accused infringer only had knowledge of the patents-in-suit as of the filing of the initial complaint*," and "[t]he Court agrees with the district courts in the Eleventh Circuit that *Plaintiff cannot sustain a claim for willful infringement because its sole allegation is that Defendant knew of the patents-in-suit of the date this Complaint was served*.") (emphasis added); *Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, No. 1:16-cv-2669-MHC, 2017 U.S. Dist. LEXIS 56140* at 2, 8 (N.D. Ga. Apr. 6, 2017) (Defendants filed a motion to dismiss Plaintiff's willful infringement claim, contending, inter alia, that such a claim may not be based on knowledge of an asserted patent gained from a complaint, and the Court granted the motion to dismiss, holding that Plaintiff's willful infringement claim, which was based *solely* on Defendants' post-filing conduct, failed as a matter of law.).

**SRAM's position:**  SRAM disagrees such language should be added to the instruction in view of, *e.g.*, *Halo Elecs., Inc. v. Pulse Elec., Inc.*, 579 U.S. 93 (2016); *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018) (infringer's intent "must be inferred *from all the circumstances*") (emphasis in original); *Spacetime3D, Inc. v. Apple Inc.*, Case No. 6-22-CV-00149-ADA, 2022 WL 6858515, at *2 (W.D. Tex. Nov. 10, 2022) (post-suit willful infringement claim sufficiently pled where complaint "adequately alleges that the defendant is continuing its purportedly infringing conduct") (quoting *BillJCo, LLC v. Apple Inc.*, 583 F.Supp.3d 769, 778 (W.D. Tex. 2022); *Atlas Global Techs., LLC v. Sercomm Corp.*, Case No. 6-21-CV-00818-ADA, 2022 WL 16557650, at *6 (W.D. Tex. Oct. 31, 2022) (same); *Board of Regents v. Boston Sci. Corp.*, Case No. 18-392-GBW, 2022 WL 5241931, at *9 (D. Del. Oct. 6, 2022) (plaintiff "advanced evidence sufficient for a rational juror to conclude that both before and after this suit was filed", defendant "knew about and intentionally infringed the technology" in the patent in suit); *Illumina, Inc. v. BGI Genomics Co., Ltd.*, Case Nos. 19-cv-03770-WHO and 20-cv-1465-WHO, 2022 WL 899421, at *15 (N.D. Cal. Mar. 27, 2022) (post-suit conduct can support willful infringement finding); *Merrill Mfg. Co. v. Simmons Mfg. Co.*, 553 F.Supp.3d 1297, 1305-06 (N.D.Ga. 2021) (same); *Payrange, Inc. v. Kiosoft Techs., LLC*, Case No. 20-cv-20970, 2021 WL 8566761, (S.D. Fla. Sept. 8, 2021) (denying Rule 11 motion regarding willfulness claim and noting plaintiff's case citation that post-suit conduct can support willful infringement finding); *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 19-CV-12533-WGY, 2020 WL 2079422, at *5 (D. Mass. Apr. 30, 2020) (pre-suit knowledge may be inferred).  In contrast, Defendant relies almost exclusively on pre-*Halo* cases.

parent or the '188 patent and infringed one or both of them. Instead, you must also find that PCW deliberately infringed the '800 or the '188 patent.

To determine whether PCW acted willfully, consider all facts and assess PCW's knowledge at the time of the challenged conduct.  Facts that may be considered include, but are not limited, to:

(1)     Whether or not PCW acted consistently with the standards of behavior for its industry;

(2)     Whether or not PCW intentionally copied a product that is covered by the '800 or the '188 patent;

(3)     Whether or not PCW reasonably believed it did not infringe or that the patent was invalid;

(4)     Whether or not PCW made a good-faith effort to avoid infringing the '800 patent or the '188 patent, for example, whether PCW attempted to design around the '800 patent or the '188 patent;

(5)     Whether or not PCW tried to cover up its infringement; and

(6)     Whether PCW's behavior was malicious, wanton, deliberate, or consciously wrongful, flagrant, or in bad faith.

Authorities:  Instruction No. B.3.10, Infringement – Willful Infringement, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020), modified to include fact (6), based on Instruction No. 11.0 Willful Infringement – Generally, AIPLA Model Patent Jury Instructions (2019) ("For example, you may consider whether [the Defendant]'s behavior was malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith.").

**Proposed Instruction No. 28 –
Invalidity – Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether or not PCW has proven that claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent are invalid.

**Each of the claims of the '800 and '188 patents is presumed to be valid.  For that reason,[7]** to prove that any claim of a patent is invalid, PCW must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

Authorities:   Instruction No. B.4.1, Invalidity – Burden of Proof, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

---

[7] **SRAM's position:**   SRAM proposes to include this language in view of 35 U.S.C. § 282(a) ("**A patent shall be presumed valid**.  **Each claim of a patent** (whether in independent, dependent, or multiple dependent form) **shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim**.  The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.") (emphasis added); Instruction No. 11.3.1 Validity—General [Pre-AIA and Post-AIA], Pattern Jury Instructions of the Seventh Circuit (Patents) (2020).

**PCW's position:**   PCW disagrees and maintains the model instruction is appropriate. SRAM's attempt to include a jury instruction from a set of model instructions from a different Circuit that does not discuss the burden of proof PCW has in demonstrating invalidity will be confusing to the jury. The burden PCW has in demonstrating invalidity by clear and convincing evidence accounts for SRAM's proposed language. Including SRAM's proposed language is unnecessary, confusing to the jury, and prejudicial to PCW.

**Proposed Instruction No. 29 –**
**Prior Art**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent are anticipated or obvious.

Prior art includes any of the following items received into evidence during trial:

1.      any product that was publicly known or used by others in the United States before the claimed invention was invented;

2.      any product that was in public use or on sale in the United States before January 27, 2011;

3.      any patents that issued before January 27, 2011;

4.      any publications having dates of public accessibility before January 27, 2011; and

5.      any product that was made by anyone in the United States before the date of invention where the claimed invention was not later abandoned, suppressed, or concealed.

PCW contends that the following is prior art to the '800 and '188 patents:

- U.S. Patent No. 6,196,638 (referred to as "Mizuno");

- U.S. Patent No. 6,402,256 (referred to as "Mercat");

- U.S. Patent No. 6,425,641 (referred to as "Herting");

- U.S. Patent No. 7,083,239 (referred to as "Okajima");

- U.S. Patent Pub. No. 2005/0242658 (referred to as "Carlson");

- U.S. Patent Pub. No. 2008/0054712 (referred to as "Urbani");

51

- U.S. Patent Pub. No. 2009/0236902 (referred to as "Zibkoff");

- EU Patent No. 1,262,334 (referred to as "Chen");

- German Patent Pub. No. 20202273 (referred to as "Alex Machine").

- Mavic Ksyrium wheels (referred to as "Mavic Ksyrium");

- Shimano RS wheels (referred to as "Shimano RS"); and

- Fulcrum wheels (referred to as "Fulcrum").

The parties agree that the Mizuno, Mercat, Herting, Okajima, Carlson, Urbani, Zibkoff, Chen, and Alex Machine references qualify as prior art based on their issuance and/or publication dates. You must determine whether Mavic Ksyrium, Shimano RS, and Fulcrum are prior art that can be considered in determining whether claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent are anticipated or obvious. I will instruct you on the relevant types of prior art that you need to consider.

PCW contends that each of the Mavic Ksyrium, Shimano RS, and Fulcrum wheels is prior art because it was known to or used by others in the United States or patented or described in a printed publication anywhere in the world before January 27, 2011.

PCW also contends that each of the Mavic Ksyrium, Shimano RS, and Fulcrum wheels is prior art because it was publicly used, sold, or offered for sale in the United States more than one year before January 27, 2011, which is the effective filing date of the applications for the '800 and '188 patents. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could

have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

PCW must prove by clear and convincing evidence that each of the Mavic Ksyrium, Shimano RS, and Fulcrum wheels is prior art.

Authorities:  Instruction No. B.4.3a-1, Validity – The Claims – Prior Art (If Not in Dispute), and Instruction No. B.4.3a-2, Validity – The Claims – Prior Art (For Patents Having an Effective Filing Date Before March 16, 2013), The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020), modified by Instruction No. 5.01, Prior Art Defined (pre-AIA), AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 30 –**
**Prior Art Considered or Not Considered by the USPTO**

Regardless of whether particular prior art references were considered by the Patent Examiner during the prosecution of the applications that matured into the '800 and '188 patents, PCW must prove by clear and convincing evidence that the challenged claims are invalid.  This burden of proof on PCW never changes regardless of whether the Patent Examiner considered the reference.


Authorities:  Instruction No. 5.1, Prior Art Considered or Not Considered by the USPTO, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 31 –**
**Invalidity of Independent and Dependent Claims**

As I told you previously, there are two different types of claims in the patent. One type is called an "independent claim." The other is called a "dependent claim."

An independent claim does not refer to any other claim of the patent. For example, claim 1 of the '800 patent is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. For example, claim 2 of the '800 patent is a dependent claim that refers to claim 1 of the '800 patent. A dependent claim includes all of the elements recited in the dependent claim, as well as all of the elements of the claim to which it refers.

You must evaluate the invalidity of each asserted claim separately. Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. You must decide this issue of validity on a claim-by-claim basis. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid.

Authorities:  Instruction No. 5.2, Invalidity of Independent and Dependent Claims, AIPLA Model Patent Jury Instructions (2019), modified to add "As I told you previously".

**Proposed Instruction No. 32 –**
**Person of Ordinary Skill in the Art**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the claimed invention as of the effective filing date. Thus, prior art must be evaluated from the perspective of one of ordinary skill in the field of the invention as of the effective filing date.

Authorities:  Instruction No. 5.3, Person of Ordinary Skill in the Art, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 33 –
Anticipation**

In this case, PCW contends that claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent are invalid.

PCW must convince you of this by clear and convincing evidence that the claims are invalid.  Specifically, PCW contends that the following pieces of prior art anticipate claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent:

- U.S. Patent No. 6,196,638 (referred to as "Mizuno");

- U.S. Patent No. 6,402,256 (referred to as "Mercat");

- U.S. Patent No. 6,425,641 (referred to as "Herting");

- U.S. Patent No. 7,083,239 (referred to as "Okajima");

- U.S. Patent Pub. No. 2005/0242658 (referred to as "Carlson");

- U.S. Patent Pub. No. 2008/0054712 (referred to as "Urbani");

- U.S. Patent Pub. No. 2009/0236902 (referred to as "Zibkoff");

- EU Patent No. 1,262,334 (referred to as "Chen");

- German Patent Pub. No. 20202273 (referred to as "Alex Machine").

- Mavic Ksyrium wheels (referred to as "Mavic Ksyrium");

- Shimano RS wheels (referred to as "Shimano RS"); and

- Fulcrum wheels (referred to as "Fulcrum").

To anticipate a claim, each element in the claim must be present in a single item of prior art and arranged or combined in the same way as recited in the claim.  You may not combine two or more items of prior art to find anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior art, you should consider what a person of ordinary skill in the art would have understood from his or her review of the particular prior art.

57

Authorities: Instruction No. 6, Anticipation, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 34 –**
**Obviousness – Generally**

PCW contends that claims 1-6, 9, 12, 14-19, and 21-22 of the '800 patent and claims 1-8 and 10-13 of the '188 patent are invalid because the claimed inventions are "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention as of January 27, 2011. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art.

In deciding obviousness, you must avoid using hindsight (or looking back in time); that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art as of January 27, 2011.

The following factors must be evaluated to determine whether PCW has established that the claimed invention is obvious:

    1.    the scope and content of the prior art relied upon by PCW;

    2.    the differences, if any, between each claimed invention of the '800 and '188 patents that PCW contends is obvious and the prior art;

    3.    the level of ordinary skill in the art as of January 27, 2011; and

    4.    additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

PCW must prove by clear and convincing evidence that the invention would have been obvious. Again, you must undertake this analysis separately for each claim that PCW contends is obvious.

I will now explain each of the four factors in more detail.

Authorities:  Instruction No. 7.0, Obviousness—Generally, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 35 –**
**The First Factor:  Scope and Content of the Prior Art**

In deciding obviousness, the prior art includes the following items received into evidence during the trial:

- U.S. Patent No. 6,196,638 (referred to as "Mizuno");

- U.S. Patent No. 6,402,256 (referred to as "Mercat");

- U.S. Patent No. 6,425,641 (referred to as "Herting");

- U.S. Patent No. 7,083,239 (referred to as "Okajima");

- U.S. Patent Pub. No. 2005/0242658 (referred to as "Carlson");

- U.S. Patent Pub. No. 2008/0054712 (referred to as "Urbani");

- U.S. Patent Pub. No. 2009/0236902 (referred to as "Zibkoff");

- EU Patent No. 1,262,334 (referred to as "Chen"); and

- German Patent Pub. No. 20202273 (referred to as "Alex Machine").

PCW also contends that each of the Mavic Ksyrium, Shimano RS, and Fulcrum wheels is prior art.

A prior art reference may be considered if it discloses information designed to solve any problem or need addressed by the patent. A prior art reference may also be considered if it discloses information that has obvious uses beyond its main purpose and if a person of ordinary skill in the art would reasonably examine that reference when trying to solve any problem or need addressed by the patent.

Authorities:  Instruction No. 7.1, The First Factor: Scope and Content of the Prior Art, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 36 –**
**The Second Factor:  Differences Between the Claimed Invention and the Prior Art**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art as of January 27, 2011. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the claimed invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may consider the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proven obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long-known, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the teachings in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense. If you find that a reason existed at the

62

time of the invention to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so, this evidence would make it more likely that the claimed invention was obvious. Similarly, you may consider the possibility that a reference teaches away from the claimed invention. A reference teaches away from the invention when it would have discouraged a person of ordinary skill in the art as of January 27, 2011, from practicing the claimed invention, or when such a person would be led in a different direction than practicing the claimed invention.

You must undertake this analysis separately for each claim that PCW contends is obvious.


Authorities:  Instruction No. 7.2, The Second Factor: Differences Between the Claimed Invention and the Prior Art, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 37 –**
**The Third Factor:  Level of Ordinary Skill**

To determine the obviousness of the invention, you must determine the level of ordinary skill in the field of the invention at the time of January 27, 2011. Regardless of whether you are asked to articulate in your verdict what you believe was the level of ordinary skill in the field of the invention, you must consider and assess this factor before reaching your conclusion in this case.

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems. The Parties agree that the level of ordinary skill in the art is such that a person of ordinary skill in the art in January 2011 would have at least (1) a bachelor's degree in mechanical engineering or an equivalent degree in the aerodynamics or fluid dynamics fields plus one or more years of experience in the design work related to aerodynamics or fluid dynamics or bicycle component design relating to aerodynamics; (2) a Master's or Ph.D. degree in mechanical engineering or in the fields of aerodynamics or fluid dynamics plus a strong understanding of mechanical design principles; or (3) the equivalent work experience in the fields of aerodynamics or fluid dynamics or bicycle component design relating to aerodynamics.

Authorities:  Instruction No. 7.3, The Third Factor: Level of Ordinary Skill, AIPLA Model Patent Jury Instructions (2019), modified to include agreed definition of ordinary skill in the art for this matter.

**Proposed Instruction No. 38 –**
**The Fourth Factor:  Other Considerations**

Before deciding the issue of obviousness for each claimed invention, you must also consider certain factors, which may help to determine whether the invention would have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole. Certain of these factors include:

1.    Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.    Was there long-felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3.    Did others try, but fail, to solve the problem solved by the claimed invention?

4.    Did others copy the claimed invention?

5.    Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.    Did others in the field, or PCW praise the claimed invention or express surprise at the making of the claimed invention?

7.    Did others accept licenses under '800 and '188 patents because of the merits of the claimed invention?

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim. Even if you conclude that some of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether PCW has proven that the claimed invention would have been obvious.

65

Authorities:  Instruction No. 7.4, The Fourth Factor: Other Considerations, AIPLA Model Patent

Jury Instructions (2019).

### Proposed Instruction No. 39 –
### Damages – Introduction

If you find that PCW infringed any valid claim of the '800 patent or the '188 patent, you must then consider what amount of damages to award to SRAM. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that PCW has not infringed any valid claim of the patent, then SRAM is not entitled to any damages.

The damages you award must be adequate to compensate SRAM for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put SRAM in approximately the same financial position that it would have been in had the infringement not occurred.

SRAM has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that SRAM establishes that it more likely than not has suffered. While SRAM is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that SRAM may be entitled to recover. In this case, SRAM seeks lost profits or a reasonable royalty. Lost profits consist of any actual reduction in business profits SRAM suffered as a result of PCW's infringement. A reasonable royalty is defined as the money amount SRAM and PCW would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

67

I will give more detailed instructions regarding damages shortly. Note, however, that SRAM is entitled to recover no less than a reasonable royalty for each infringing sale.

Authorities:  Instruction No. B.5.1, Patent Damages – Damages – Introduction, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020).

**Proposed Instruction No. 40 –
Lost Profits**

SRAM is seeking lost profits damages in this case. To prove lost profits, SRAM must show

that, but for PCW's infringement, SRAM would have made additional profits through the sale of

**all or a portion of the sales of**[8] the bicycle wheels made by PCW. SRAM must prove this by a

---

[8] **PCW's position:**  PCW proposes deleting "a portion" from the model instruction.  This language is irrelevant to this case and will confuse the jury.  SRAM has not alleged, much less proffered, any evidence of market share in this case and cannot supply the jury with sufficient data to calculate a reduced portion of sales. Instead, SRAM took the all-or-nothing approach of arguing that it would have made every single sale made by PCW's accused wheels, with no alternative below 100% of PCW's sales. *See BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993) ("[A] patent owner may satisfy the second *Panduit* element by substituting proof of its market share for proof of the absence of acceptable substitutes. This market share approach allows a patentee to recover lost profits, despite the presence of acceptable, noninfringing substitutes, because it nevertheless can prove with reasonable probability sales it would have made "but for" the infringement.") Without any evidence of market share, any calculation of a percentage of lost profits by the jury would impermissibly be based purely on "speculation or guesswork." *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996); *see also Mayor, Aldermen & Commonalty of City of New York v. Ransom*, 64 U.S. 487, 488 (1859) ("Where a plaintiff is allowed to recover only 'actual damages,' he is bound to furnish evidence by which the jury may assess them.... He cannot call on a jury to guess out his case without evidence. Actual damages must be calculated, not imagined, and an arithmetical calculation cannot be made without *certain* data on which to make it.").

**SRAM's position:** SRAM submits that this language, which is present in the AIPLA model instruction, should be retained. *See* Instruction No. 10.2.1.1 Lost Profits—"But For" Test, AIPLA Model Patent Jury Instructions (2019).  As an initial matter, SRAM has provided evidence (from both parties' witnesses) that the "market" in question is a two-player market, between SRAM and Princeton.  Nevertheless, an award of lost profits on less than all of Princeton's infringing wheels sales would not be based on  "speculation or guesswork," as Princeton improperly contends, nor does it require SRAM to present evidence of market share. Although SRAM seeks to recover lost profits on all of the sales of Princeton's infringing carbon undulating wheels, the factfinder may award SRAM lost profits on less than all of Princeton's sales, even if SRAM does not pursue a market-share theory. The jury can use evidence of the number of infringing wheels sold by Princeton each month within the relevant time period and SRAM's adjusted gross profit per wheel—all of which will be supported by evidence at trial —to calculate the total amount of SRAM's lost profits based on the number of sales the jury finds SRAM lost due to Princeton's infringement, including if the jury finds that SRAM is entitled to lost profits on less than all of Princeton's sales. *See, e.g., Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1288 (Fed. Cir. 2017). ("jury was properly instructed that if there were any other acceptable, non-infringing emulation system or if there were prototypes that may have been acceptable or if there was any acceptable non-infringing alternative that could have been made available (even if they did not already exist), then Mentor could not receive lost profits *on those particular sales*.") (emphasis added); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001) ("A patentee receives a reasonable royalty for any of the infringer's sales not included in the lost profit calculation. [] Thus, patentee may obtain lost profit damages for *that portion* of the infringer's sales for which the patentee can demonstrate 'but for' causation and reasonable royalties for any remaining infringing.") (emphasis added); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003) ("Once the patentee establishes the reasonableness of this inference, the burden shifts to the infringer to show that the inference is unreasonable for *some or all* of the lost profits.  The *Panduit* and two-supplier market tests are recognized methods of showing "but for" causation.") (emphasis added); *King Instruments Corp. v. Perego*, 65 F.3d 941, 953 (Fed. Cir. 1995) (affirming award of lost profits where the district court, in calculating damages, reduced plaintiff's lost sales below the number plaintiff claimed to have lost based on argument that defendant's customers would not have bought plaintiff's product); *Yarway Corp v. Eur-Control USA, Inc.*, 775 F.2d 268, 277 (Fed. Cir. 1985) (affirming award of lost profits in which the district court, in calculating

preponderance of the evidence, more likely than not, ***and any award of lost profits must be based on more than speculation.***[9] Part of your job is to determine what the parties who purchased the allegedly infringing product from PCW would have done if the alleged infringement had not occurred. **<u>However, SRAM is not required to disprove every possibility that a purchaser might not have bought SRAM's products instead of the infringing ones, or might have foregone the purchase altogether.</u>**[10] It is important to remember that the profits I have been

---

damages, reduced plaintiff's lost sales by 15 percent to reflect sales by defendant to customers either unknown or inaccessible to plaintiff).

[9] **PCW's position:** This sentence is from the AIPLA model jury instructions, but was modified in view of the following authority, which states that a lost profits damages award cannot be based on speculative information. *See Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) ("The patent owner's burden of proof is not an absolute one, although liability does not extend to speculative profits.").

**SRAM's position:** This language is unnecessary, unhelpful to the jury, and duplicative of language included later in this instruction—*i.e.,* "The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty." It would be improper, and place undue emphasis on the issue, to instruct the jury on this point twice.

[10] **SRAM's position:** SRAM proposes adding this sentence to the model instruction. It is supported by Federal Circuit authority and will help the jury better understand SRAM's burden as to lost profits, including with respect to any purchasers of Princeton's infringing wheels that Princeton may argue would not have purchased SRAM's carbon undulating wheels absent Princeton's infringement. *See Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 826 (Fed. Cir. 1989) ("It is clear that the district court, in arriving at its ultimate finding on element three of the Panduit test, applied too rigorous a standard of proof. 'The patentee is not obligated to negate every possibility that a purchaser might not have bought the patentee's product instead of the infringing one, or might have foregone the purchase altogether.'"); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987) ("The patentee is not obliged to negate every possibility that a purchaser might not have bought the patentee's product instead of the infringing one, or might have foregone the purchase altogether."); *Bos. Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 274 (D. Del. 2012), *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013) ("BSC was not 'obliged to negate every possibility that a purchaser might not have bought [the 2.mm Cypher] instead of the [Taxus Atom], or might have foregone the purchase altogether.'").

**PCW's position:** Addition of this language is unnecessary, and would be confusing to the jury because SRAM claims, without any evidence, that it could and would have made 100% of PCW's sales. Further, the authorities that SRAM cites do not support inclusion of this sentence. For example, in *Datascope*, "the district court based its finding that Datascope had not met its burden of proving manufacturing and marketing capability on subsidiary findings that (1) many of SMEC's customers would not have entered the percutaneous IAB market but for their confidence in SMEC president Schiff; and (2) Datascope would not have made SMEC's sales to foreign customers." *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 825 (Fed. Cir. 1989). None of these factors is present in this case. Separately, the decision in *Del Mar Avionics* is silent on the *Panduit* factors, and it thus has no bearing on how SRAM's proposed, additional language might relate to those factors—much less support for including this language that would confuse the jury. *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320 (Fed. Cir. 1987). Finally, in *Bos. Sci.,* the Court determined that "BSC was not 'obliged to negate every possibility that a purchaser might not have bought [the 2.mm Cypher] instead of the [Taxus Atom], or might have foregone the purchase altogether'" based on the decision in *Paper Converting Machine*. *See Bos. Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 274 (D. Del. 2012) (citing *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 21 (Fed. Cir. 1984) ("The 'but for' rule only requires the patentee to provide proof to a reasonable probability that the sale would have been made

referring to are the profits allegedly lost by SRAM, not the profits, if any, made by PCW on the allegedly infringing sales.

SRAM has proven its lost profits if, ***and only if***,[11] you find that SRAM has proven each of the following factors by the more likely than not standard:

1.     a demand for the patented product in the relevant market;

2.     the absence of acceptable non-infringing substitutes;

3.     that SRAM had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by PCW; and

4.     the amount of profit that SRAM would have made if it were not for PCW's infringement.

I will now explain each of these factors.

The first factor asks whether there was demand for the patented product in the relevant market. SRAM can prove demand for the patented product by showing significant sales of SRAM's own patented product ***that are covered by one or more of the asserted claims of the patent-in-suit provided that demand for the significant sales are tied to the intrinsic value of the patented feature.***[12] SRAM also can prove demand for the patented product by showing significant

---

but for the infringement.")). *Paper Converting Machine* simply states that the patentee must provide proof to a reasonable probability, which is already stated in the third sentence of the proposed instruction for "lost profits." In other words, SRAM's additional language is unnecessary, duplicative, and confusing.

[11] **PCW's position:**  This language should be added to the model instruction. SRAM has only alleged that it is entitled to lost profits as a result of satisfying the *Panduit* factors. SRAM has not alleged that it is entitled to lost profits under any other theory. Accordingly, SRAM can only demonstrate its entitlement to lost profits by satisfying the *Panduit* factors.

**SRAM's position:**  Addition of this language is unnecessary and would be confusing to the jury. The instructions submit the *Panduit* factors as the standard for awarding lost profits.

[12] **PCW's position:** This sentence from the AIPLA model jury instructions was modified to include the phrase "that are covered by one or more of the asserted claims of the patents-in-suit," because SRAM has alleged that its products are covered by numerous patents beyond those asserted in this case. This sentence was further modified to include the phrase "provided that demand for the significant sales are tied to the intrinsic value of the patented feature" in view of the following authorities, which recognizes that, in the context of the first *Panduit* factor, gross

sales are insufficient to prove demand, because demand must be tied to the intrinsic value of a patented feature. *Calico Brand, Inc. v. AmeriTek Imports, Inc.*, 2008-1324, 14-15 (Fed. Cir. 2013) ("We disagree that evidence of gross sales data is sufficient under the *Rite-Hite* framework to establish consumer demand based on the patented safety mechanism," because "lost profits must be tied to the intrinsic value of the patented feature." ); *id.* at 13 (explaining the *Rite-Hite* framework relied on the *Panduit* factors); *see also Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003) (quoting *BIC Leisure, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993)) ("[W]ell-established precedent require[es] 'a causal relation between the infringement and its lost profits.'"); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-1550 (Fed. Cir. 1995) (explaining "that lost profits must be tied to the intrinsic value of the patented feature."); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337-38 (Fed. Cir. 2009) (holding "that demand for the entire apparatus is, in most circumstances, not interchangeable with demand for a patented component of the larger apparatus."); *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("The entire market value rule is a narrow exception to this general rule. If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product. In other words, the entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand.").

**SRAM's position:** The proposed addition of PCW's language "that are covered by one or more the asserted claims of the patent-in-suit" is unnecessary, redundant, and improper, because the model language "SRAM's own *patented product*" (emphasis added) already requires the jury to find that the product is patented. In addition, the proposed language "provided that demand for the significant sales are tied to the intrinsic value of the patented feature" is improper. The Federal Circuit holds that it is not necessary or proper to require the jury to further limit or apportion lost profits to the patented feature in question, as Princeton attempts to do here, where the *Panduit* factors are satisfied, and, here, the jury will be instructed to apply those factors in awarding lost profits. Accordingly, the language "provided that demand for the significant sales are tied to the intrinsic value of the patented feature" is unnecessary, improper, and will be confusing to the jury. *See, e.g., Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1287-90 (Fed. Cir. 2017) (rejecting defendant's arguments that, after application of the *Panduit* factors, "patentee must further apportion its lost profits to cover the patentee's inventive contribution," and holding that "the district court did not err in refusing to further apportion its lost profits after the jury returned its verdict applying the *Panduit* factors" because "when the *Panduit* factors are met, they incorporate into their very analysis the value properly attributed to the patented feature," specifically "*Panduit's* requirement that patentees prove demand for the product as a whole and the absence of non-infringing alternatives ties lost profit damages to specific claim limitations and ensures that damages are commensurate with the value of the patented features."); *Allfasteners USA, LLC v. Acme Operations Pty., Ltd.*, No. LACV1806929JAKRAOX, 2021 WL 4027738, at *6 (C.D. Cal. May 25, 2021) (citing *Mentor Graphics*, 851 F.3d at 1285-90) ("the Federal Circuit has concluded that apportionment may be 'subsumed within the *Panduit* analysis' for lost profits."); *Malibu Boats, LLC v. Skier's Choice, Inc.*, No. 3:18-CV-00015, 2021 WL 1572477, at *4 (E.D. Tenn. Apr. 21, 2021) (citing *Mentor Graphics*, 851 F.3d at 1288) (expert's "market reconstruction analyzes lost profits using the Panduit factors, which the Federal Circuit has held may satisfy the principles of apportionment."); *CardioNet, LLC v. ScottCare Corp.*, No. CV 12-2516, 2017 WL 4742476, at *5 (E.D. Pa. Oct. 19, 2017) ("in light of the Federal Circuit's holding that the apportionment requirement may be satisfied using the *Panduit* factors, the Court cannot conclude that [expert's] methodology is flawed do to her failure to apportion damages because [expert] has relied on the *Panduit* factors to demonstrate [plaintiff's] entitlement to lost profits."). Moreover,   the law is clear that demand need only be proven for the infringing product as a whole, not for the "patented feature," as Princeton's proposal would require, especially where, as here, the asserted patents cover the infringing product as a whole. *See, e.g., DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) ("[a]ll that the first factor states, and thus requires, is 'demand for the patented product.' This factor does not require any allocation of consumer demand among the various limitations recited in a patent claim.'"); *Xodus Med., Inc. v. Prime Med., LLC*, No. 3:18-CV-413-JPM, 2021 WL 5985001, at *2 (E.D. Tenn. Dec. 16, 2021) ("'The proper inquiry [for the first Panduit factor] asks whether demand existed in the marketplace for the patented product, i.e., a product 'covered by the patent in suit or that directly competes with the infringing device.' Defendants' cited standard requiring specific demand for the patented feature alone is the standard for the entire market value rule for apportionment of a reasonable royalty and as a result, does not apply to the first Panduit factor."); *DUSA Pharms., Inc. v. Biofrontera Inc.*, No. 1810568-RGS, 2020 WL 5993035, at *2 ("where the asserted claims cover the alleged illuminator as a whole, there is no need to apportion demand among features of the illuminator."); *Mars, Inc. v. TruRx*

sales of PCW's products that are covered by one or more of the asserted claims of the patent-in-suit *provided that demand for the significant sales are tied to the intrinsic value of the patented feature*.[13] To use sales of SRAM's or PCW's products as proof of this demand, however, SRAM's and PCW's product must be sufficiently similar to compete against each other in the same market or market segment.

The second factor asks whether non-infringing, acceptable substitutes for SRAM's product competed with PCW's infringing product in the marketplace and the impact of such substitutes on the marketplace absent the sale of PCW's product. If the realities of the marketplace are that

---

*LLC*, 2016 WL 4034790, at *2 (E.D. Tex. Apr. 18, 2016) ("[Plaintiff] needs not apportion demand in this case" because "the asserted patents cover the allegedly infringing products as a whole"). Further, as the Federal Circuit explains, "[t]he second [*Panduit*] factor—the absence of non-infringing alternatives—considers demand for particular limitations or features of the claimed invention" (*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017)), so instructing the jury on this same point twice (once in the first factor, and again in the second, as Princeton proposes) would be unnecessary, improper, and confusing to the jury.

[13] **PCW's position:** This sentence from the AIPLA model jury instructions was modified in view of the following authorities, which recognizes that, in the context of the first *Panduit* factor, gross sales are insufficient to prove demand, because demand must be tied to the intrinsic value of a patented feature. *Calico Brand, Inc. v. AmeriTek Imports, Inc.*, 2008-1324, 14-15 (Fed. Cir. 2013) ("We disagree that evidence of gross sales data is sufficient under the *Rite-Hite* framework to establish consumer demand based on the patented safety mechanism," because "lost profits must be tied to the intrinsic value of the patented feature." ); *id.* at 13 (explaining the *Rite-Hite* framework relied on the *Panduit* factors); *see also* *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003) (quoting *BIC Leisure, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993)) ("[W]ell-established precedent require[es] 'a causal relation between the infringement and its lost profits.'"); *see also Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1548-1550 (Fed. Cir. 1995) (explaining "that lost profits must be tied to the intrinsic value of the patented feature."); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337-38 (Fed. Cir. 2009) (holding "that demand for the entire apparatus is, in most circumstances, not interchangeable with demand for a patented component of the larger apparatus."); *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("The entire market value rule is a narrow exception to this general rule. If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product. In other words, the entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand.").

**SRAM's position:** Addition of this language is improper because the Federal Circuit holds that it is not necessary or proper to require the jury to further limit or apportion lost profits to the patented feature in question where, as here, the *Panduit* factors are satisfied, and demand need only be proven for the product as a whole, not for the "patented feature," as Princeton's proposal would require, especially where, as here, the asserted patents cover the infringing product as a whole. See note 12, *supra*.

competitors other than SRAM/[, *who sell acceptable non-infringing substitute products,*][14] would likely have captured some or all of the sales made by PCW, even despite a difference in the products, then SRAM is not entitled to lost profits on those sales.

To be an acceptable substitute, the product must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. The acceptable substitute also must not infringe the patent, either because they were licensed under the patent or they did not include all the features required by the patents. The acceptable substitute may be a product that involved a modification of the infringing product to avoid infringement or the removal of at least one feature of the invention from the product. The acceptable substitute, in addition to being either licensed or non-infringing, must have been available during the damages period. The acceptable substitute need not have actually been sold at that time. But, if the acceptable substitute was not sold during the damages period, then PCW must show by a preponderance of the evidence that, during the damages period, a competitor or PCW had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute. If you determine that some of PCW's customers would just as likely have purchased an acceptable non-infringing substitute, then SRAM has not shown it lost those sales but for PCW's infringing sales.

---

[14] **PCW's position:** PCW proposes substituting "acceptable non-infringing substitute products" for "competitors other than SRAM." This modification is appropriate, because the instruction being discussed relates to the second *Panduit* factor, which describes "acceptable non-infringing substitutes."

**SRAM's position:** The language of the model instruction—*i.e.,* "competitors other than SRAM"—should remain unchanged. Princeton's proposed substitution of "acceptable non-infringing substitute products" is improper, unnecessary, and will be confusing to the jury.

Even if you find that SRAM's and PCW's products were the only ones with the advantages of the patented invention, SRAM is nonetheless required to prove to you that SRAM, in fact, would have made PCW's infringing sales.

The third factor asks whether SRAM had the manufacturing and marketing ability to actually make the sales it allegedly lost due to PCW's infringement. SRAM must prove that it could have supplied the additional products needed to make the sales SRAM said it lost, or that someone working with SRAM could have supplied the additional products. SRAM also must prove that it more likely than not had the ability to market and sell these additional products.

SRAM may calculate the amount of its lost profits by calculating its lost sales and subtracting from that amount any additional costs or expenses that SRAM would have had to pay to make the lost sales. The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty.

<u>Authorities (each with proposed modifications as noted in footnotes)</u>: Instruction No. 10.2.1.1 Lost Profits—"But For" Test, AIPLA Model Patent Jury Instructions (2019); Instruction No. 10.2.1.2 Lost Profits—Panduit Factors, AIPLA Model Patent Jury Instructions (2019); Instruction No. 10.2.1.3 Lost Profits—Panduit Factors—Demand, AIPLA Model Patent Jury Instructions (2019); Instruction No. 10.2.1.4 Lost Profits—Panduit Factors—Acceptable Non-Infringing Substitutes, AIPLA Model Patent Jury Instructions (2019); Instruction No. 10.2.1.6 Lost Profits—Panduit Factors—Capacity, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 41 – Reasonable Royalty**

If you find that SRAM has not proven its claim for lost profits, then you must consider the issue of a reasonable royalty, **or if you find that SRAM has proven its claim for lost profits for only a portion of the infringing sales, then you must consider the issue of a reasonable royalty.[15]** The amount of damages that PCW pays SRAM for infringing SRAM's patent must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of SRAM's invention.

**You must award SRAM a reasonable royalty in the amount that SRAM has proven it could have earned on any infringing sales for which you have not already awarded lost-profit**

---

[15] **PCW's position:** PCW proposes deleting this language from the model instruction.  This language is irrelevant to this case and will confuse the jury.  SRAM has not alleged, much less proffered, any evidence of market share in this case and cannot supply the jury with sufficient data to calculate a reduced portion of sales.  Instead, SRAM took the all-or-nothing approach of arguing that it would have made every single sale made by PCW's accused wheels, with no alternative below 100% of PCW's sales. Without any evidence of market share, asking the jury to calculate a percentage of lost profits that SRAM might be entitled to—despite SRAM not arguing for such relief or submitting any evidence in support of such relief—would be confusing to the jury and impermissibly based purely on "speculation or guesswork." *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996); *see also Mayor, Aldermen & Commonalty of City of New York v. Ransom*, 64 U.S. 487, 488 (1859) ("Where a plaintiff is allowed to recover only 'actual damages,' he is bound to furnish evidence by which the jury may assess them.... He cannot call on a jury to guess out his case without evidence. Actual damages must be calculated, not imagined, and an arithmetical calculation cannot be made without *certain* data on which to make it.").

**SRAM's position:** Princeton proposed deleting this language from the model AIPLA instruction. The language should, however, be retained as it is necessary to instruct the jury that it must consider awarding reasonably royalty for any portion of Princeton's infringing sales for which the jury finds SRAM did not prove its claim for lost profits. An award of lost profits on less than all of Princeton's wheels sales would not be based on "speculation or guesswork," as Princeton improperly contends, nor does it require SRAM to present evidence of market share. Although SRAM seeks to recover lost profits on all of the sales of Princeton's infringing carbon undulating wheels, the factfinder may award SRAM lost profits on less than all of Princeton's infringing sales, even if SRAM does not pursue a market-share theory. The jury can use evidence of the number of wheels sold by Princeton each month within the relevant time period and SRAM's adjusted gross profit per wheel—all of which will be supported by the evidence—to calculate the total amount of SRAM's lost profits based on the number of sales the jury finds SRAM lost due to Princeton's infringement, including if the jury finds that SRAM is entitled to lost profits on less than all of Princeton's sales. *See* note 8, *supra*; Instruction No. 10.2.5.1 Reasonable Royalty—Generally, AIPLA Model Patent Jury Instructions (2019).

**damages.** [16] A royalty is a payment made to a patent owner by someone else in exchange for the rights to make, use, sell, or import a patented product.

*The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.* [17]

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between SRAM and PCW. Of course, we know that they did not agree to a license and

---

[16] **PCW's position:** PCW proposes deleting this language from the model instruction. This language is irrelevant to this case and will confuse the jury. SRAM has not alleged, much less proffered, any evidence of market share in this case and cannot supply the jury with sufficient data to calculate a reduced portion of sales. Instead, SRAM took the all-or-nothing approach of arguing that it would have made every single sale made by PCW's accused wheels, with no alternative below 100% of PCW's sales. Without any evidence of market share, asking the jury to calculate a percentage of lost profits that SRAM might be entitled to—despite SRAM not arguing for such relief or submitting any evidence in support of such relief—would be confusing to the jury and impermissibly based purely on "speculation or guesswork." *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996); *see also Mayor, Aldermen & Commonalty of City of New York v. Ransom*, 64 U.S. 487, 488 (1859) ("Where a plaintiff is allowed to recover only 'actual damages,' he is bound to furnish evidence by which the jury may assess them.... He cannot call on a jury to guess out his case without evidence. Actual damages must be calculated, not imagined, and an arithmetical calculation cannot be made without *certain* data on which to make it.").

**SRAM's position:** Princeton proposed deleting this language from the model AIPLA instruction. The language should, however, be retained as it is necessary to instruct the jury that it must award reasonably royalty for any portion of Princeton's infringing sales for which the jury finds SRAM did not prove its claim for lost profits. *See* note 8, *supra*; Instruction No. 10.2.5.1 Reasonable Royalty—Generally, AIPLA Model Patent Jury Instructions (2019).

[17] **PCW's position:** This language is present in the AIPLA model instruction. *See* Instruction No. 10.2.5.1 Reasonable Royalty—Generally, AIPLA Model Patent Jury Instructions (2019). PCW contends that this language should remain, because SRAM admits that its products are covered by multiple patents. Accordingly, the jury must identify the incremental value attributable to the patents-in-suit

**SRAM's position:** SRAM objects to inclusion of this language on a number of grounds, including that it does not properly instruct on apportionment under the facts of this case, that it fails to address the entire-market-value exception to the rule on apportionment, and that it is confusing and unhelpful to the jury. SRAM provides alternative proposed language in this instruction (see below paragraph, beginning with "Unless SRAM proves by a preponderance of the evidence") that addresses apportionment and the entire-market-value exception, is based on Federal Circuit authority, is more appropriate for the facts of this case, and is easier for the jury to understand and apply.

royalty payment. But, to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. ***No actual negotiations are relevant.***[18] This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license just before the infringement began. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by PCW to license other patents comparable to the '800 and '188 patents.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the

---

[18] **PCW's position:** PCW proposes addition of this language to the model instruction. The following sentence in the model instruction explicitly states that the negotiation is "hypothetical," which underscores the fact that no actual negotiations are relevant.

**SRAM's position:** SRAM objects to its inclusion as improper and not supported by any cited authority, among other grounds. Princeton's suggestion that actual negotiations between the parties are somehow not relevant to determining what the parties would have agreed to had they negotiated is contrary to common sense and not supported by any authority.

invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.     The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.     The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.     The duration of the '800 and '188 patents and the term of the license.

8.     The established profitability of the product made under the '800 and '188 patents; its commercial success; and its popularity.

9.     The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11.    The extent to which PCW has made use of the invention; and any evidence that shows the value of that use.

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.    The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Unless SRAM proves by a preponderance of the evidence that the patented features of the '800 patent and the '188 patent create the basis for customer demand for products containing those features, or substantially creates the value of those products, you must base the reasonable royalty on only the value that the patented feature adds to the product, exclusive of the value added by other elements or features. Accounting for the value of the patented feature in comparison to other elements of features is sometimes called "apportionment." If you apportion, you must do so in one of the following ways: (a) select a royalty base that reflects the value added by the patented feature; (b) adjust the royalty rate, through application of the factors set forth above in this Instruction, to account for the value of the patented feature; or (c) a combination of both methods. Apportionment may involve some degree of approximation and uncertainty; absolute precision is not required.[19]**

---

[19] **SRAM's position:** SRAM proposes addition of this language to instruct the jury on apportionment and the entire-market-value exception. This instruction is tailored to the facts of this case and easier for the jury to understand

and apply then the AIPLA model instruction. *See, e.g.,* Instruction No. 10.2.5.5 Reasonable Royalty—Entire Market Value Rule, AIPLA Model Patent Jury Instructions (2019) ("The entire market value rule is a narrow exception to this general rule. In order to recover damages as a percentage of revenues or profits attributable to the entire product, [the Patentee] must establish that it is more likely than not that the patented feature is the sole driver of customer demand for an entire multi-component product such that it creates the basis for customer demand or substantially creates the value of the product."); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("when claims are drawn to an individual component of a multi-component product, it is the exception, not the rule, that damages may be based upon the value of the multi-component product. [] Indeed, we recently reaffirmed that '[a] patentee may assess damages based on the entire market value of the accused product *only where* the patented feature creates the basis for customer demand or substantially creates the value of the component parts." [] In the absence of such a showing, principles of apportionment apply.'") (internal citations omitted); *id.* at 1328 ("("However, we note that we have never required absolute precision in this task; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty."); *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348-49 (Fed. Cir. 2018) ("The essential requirement is that the ultimate reasonably royalty award must be based on the incremental value that the patented invention adds to the end product.'" (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)); *id.* at 1348-49 ("'[w]hen a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone.' [] We hold that such apportionment can be done in this case through a thorough and reliable analysis to apportion the royalty rate. We have recognized that one possible way to do this is through a proper analysis of the *Georgia-Pacific* factors. [] As we have explained, 'the standard *Georgia-Pacific* reasonable royalty analysis takes account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation.") (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015)); *id.* at 1348 ("We have held that apportionment can be addressed in a variety of ways , including 'by careful selection of the royalty base to reflect the value added by the patented feature [or] …. By adjust of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.'" (quoting *Ericsson*, 773 F.3d at 1226); *Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, 967 F.3d 1353, 1376 (Fed. Cir. 2020) ("there no blanket rule of *quantitative* apportionment in every comparable license case. In *Elbit Systems Land & C41 Ltd. v. Hughes Network Systems, LLC*, for example, we accepted 'built in apportionment' for a comparable license agreement. 927 F.3d at 1301 (internal quotations omitted)."); *see also Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020) ("this court has explained that when a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required. That is because a damages theory that is dependent on a comparable license (or a comparable negotiation) may in some cases have 'built-in apportionment.'").

**PCW's position:** PCW objects to inclusion of this language and provides alternative proposed language in this instruction addressing apportionment. To the extent SRAM wishes to incorporate an instruction relating to the entire market value—though it has not alleged, much less advanced evidence, that the entire market value is applicable in this case—the AIPLA model instruction for 'entire market value' should be included, which states: "A multi-component product may have both infringing and non-infringing components. In such products, royalties should be based not on the entire product, but instead on the "smallest salable unit" that practices the patent and has close relation to the claimed invention. If the smallest salable unit is a multi-component product containing one or more non-infringing features with no relation to the patented feature(s), damages must only be based on the portion of the value of that product attributable to the patented technology. This may involve estimating the value of a feature that may not have ever been individually sold. The entire market value rule is a narrow exception to this general rule. In order to recover damages as a percentage of revenues or profits attributable to the entire product, SRAM must establish that it is more likely than not that the patented feature is the sole driver of customer demand for an entire multi-component product such that it creates the basis for customer demand or substantially creates the value of the product." *See, e.g.,* Instruction No. 10.2.5.5 Reasonable Royalty—Entire Market Value, AIPLA Model Patent Jury Instructions (2019). *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326–29 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336–37 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549–51 (Fed. Cir. 1995) (en banc).

*The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or PCW's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.* [20]

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar

---

[20] **PCW's position:** This instruction is directly from the AIPLA model instructions, and is a necessary and fundamental component of determining a reasonable royalty. *See, e.g.,* Instruction No. 10.2.5.4 Reasonable Royalty— Attribution/Apportionment, AIPLA Model Patent Jury Instructions (2019). SRAM improperly attempts to eliminate an instruction on "apportionment." PCW objects to SRAM's attempt, because it does not properly instruct on apportionment, and incorrectly presupposes that the entire-market-value exception to the rule on apportionment is appropriate under the facts of this case, but it is not. Apportionment is a fundamental requirement of the patent damages analysis: "apportionment is required even for non-royalty forms of damages: a jury must ultimately 'apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features' using 'reliable and tangible' evidence." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (emphasis added) (quoting *Garretson*, 111 U.S. at 121 (1864)). "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Id.*

**SRAM's position:** SRAM does not attempt to eliminate the instruction on apportionment (as Princeton claims), nor does it presume the entire-market-value exception applies. Rather, SRAM objects to Princeton's proposed instruction and proposes its own instruction on apportionment set forth in the immediately preceding paragraph, with supporting authorities. SRAM's proposed instruction instructs the jury on *both* the entire-market value exception (*i.e.,* "Unless SRAM proves by a preponderance of the evidence that the patented features of the '800 patent and the '188 patent create the basis for customer demand . . ."), *and* apportionment if the jury finds that the exception does not apply (*i.e.,* "you must base the reasonable royalty on only the value that the patented feature adds to the product, exclusive of the value added by other, conventional elements"). SRAM's proposed instruction is supported by Federal Circuit case law, more direct, and easier for the jury to understand and apply.

technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between SRAM and PCW in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between SRAM and PCW, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

<u>Authorities (each with proposed modifications as noted in footnotes)</u>: Instruction No. 10.2.5.1 Reasonable Royalty—Generally, AIPLA Model Patent Jury Instructions (2019); Instruction No. 10.2.5.2 Reasonable Royalty Definition—Using the "Hypothetical Negotiation" Method, AIPLA Model Patent Jury Instructions (2019); Instruction No. 10.2.5.3 Reasonable Royalty—Relevant Factors If Using the Hypothetical Negotiation Method, AIPLA Model Patent Jury Instructions (2019); Instruction No. 10.2.5.9 Reasonable Royalty—Use of Comparable License Agreements, AIPLA Model Patent Jury Instructions (2019)

**Proposed Instruction No. 42 –**
**Reasonable Royalty – Timing**

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

Authorities:  Instruction No. 10.2.5.7, Reasonable Royalty—Timing, AIPLA Model Patent Jury Instructions (2019).

**Proposed Instruction No. 43 –**
**Date of Commencement of Damages**

In determining the amount of damages, you must determine when the damages began.

Damages commence on the date that PCW has both infringed and been notified of the alleged

infringement. For the '800 patent, SRAM and PCW agree that date was at least as early as May

29, 2018. For the '188 patent, SRAM and PCW agree that date was at least as early as March 23,

2021.

Authorities:  Instruction No. B.5.10, Date of Commencement of Damages—Products, The Federal

Circuit Bar Association, Model Patent Jury Instructions (May 2020).

**Proposed Instruction No. 44 –**
**Doubts Resolved Against Infringer**

Any doubts that you may have on the issue of damages due to PCW's failure to keep proper records should be decided in favor of SRAM. Any confusion or difficulties caused by PCW's records also should be held against PCW, not SRAM.

Authorities: Instruction No. 10.3, Doubts Resolved Against Infringer, AIPLA's Model Patent Jury Instructions (2019); *see also Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) ("Moreover, when the amount of the damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer . . .  In addition, any adverse consequences must rest on the infringer when the inability to ascertain lost profits is due to the infringer's own failure to keep accurate or complete records.").

**Proposed Instruction No. 45 –**
**Duty to Deliberate When Only the Plaintiff Claims Damages**

Of course, the fact that I have given you instructions concerning the issue of SRAM's damages should not be interpreted in any way as an indication that I believe that SRAM should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

Authorities:  Instruction No. 3.8.1, Duty to Deliberate When Only the Plaintiff Claims Damages, Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision).

**Proposed Instruction No. 46 –**
**Election of Foreperson Explanation of Verdict Form**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.  The form breaks down your verdict into a series of separate questions, first on Plaintiff's claims of infringement, then the issue of willfulness, following by the Defendant's claims of invalidity, and finally damages.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.


Authorities:  Instruction No. 3.9, Election of Foreperson Explanation of Verdict Form[s], Eleventh Circuit Pattern Jury Instructions, Civil Cases (10 March 2022 revision), modified to explain the verdict form.

## VERDICT FORM

We, the jury, unanimously agree to the answers to the following questions and return them

under the instructions of this Court as our verdict in this case.

**I.**      **INFRINGEMENT**

8)      Do you find from a preponderance of the evidence that Princeton Carbon Works

Inc. infringed any of the below-listed claims of the '800 patent? Write "Yes" or "No" for each

Asserted Claim.

| Asserted Claim | "Yes" or "No" |
|---|---|
| '800 patent, claim 1 | |
| '800 patent, claim 2 | |
| '800 patent, claim 3 | |
| '800 patent, claim 4 | |
| '800 patent, claim 5 | |
| '800 patent, claim 6 | |
| '800 patent, claim 9 | |
| '800 patent, claim 12 | |
| '800 patent, claim 14 | |
| '800 patent, claim 15 | |
| '800 patent, claim 16 | |
| '800 patent, claim 17 | |
| '800 patent, claim 18 | |
| '800 patent, claim 19 | |
| '800 patent, claim 21 | |
| '800 patent, claim 22 | |

Do you find from a preponderance of the evidence that Princeton Carbon Works Inc. infringed any of the below-listed claims of the '188 patent? Write "Yes" or "No" for each Asserted Claim.

| Asserted Claim | "Yes" or "No" |
|---|---|
| '188 patent, claim 1 | |
| '188 patent, claim 2 | |
| '188 patent, claim 3 | |
| '188 patent, claim 4 | |
| '188 patent, claim 5 | |
| '188 patent, claim 6 | |
| '188 patent, claim 7 | |
| '188 patent, claim 8 | |
| '188 patent, claim 10 | |
| '188 patent, claim 11 | |
| '188 patent, claim 12 | |
| '188 patent, claim 13 | |

*If your answer is "Yes" to any of the above questions, proceed to the next questions in Section II of this Verdict Form. If your answer is "No" to all of the above questions, this ends your deliberations, and your foreperson should sign and date the last page of this Verdict Form.*

## II.  <u>**WILLFULNESS**</u>

Do you find from a preponderance of the evidence that Princeton Carbon Works Inc.'s infringement of the '800 patent was willful?

Answer "Yes" or "No:"_____

Do you find from a preponderance of the evidence that Princeton Carbon Works Inc.'s infringement of the '188 patent was willful?

Answer "Yes" or "No:"_____

*Please continue to the next questions in Section III of this Verdict Form.*

III.     **INVALIDITY**

A.  **Anticipation**

Do you find from clear and convincing evidence that any of the below-listed claims of the '800 patent is invalid as being anticipated by prior art?  Write "Yes" or "No" for each Asserted Claim. Writing "Yes" indicates a finding for Princeton Carbon Works Inc.  Writing "No" indicates a finding for SRAM, LLC.

| Asserted Claim | "Yes" or "No" |
|---|---|
| '800 patent, claim 1 | |
| '800 patent, claim 2 | |
| '800 patent, claim 3 | |
| '800 patent, claim 4 | |
| '800 patent, claim 5 | |
| '800 patent, claim 6 | |
| '800 patent, claim 9 | |
| '800 patent, claim 12 | |
| '800 patent, claim 14 | |
| '800 patent, claim 15 | |
| '800 patent, claim 16 | |
| '800 patent, claim 17 | |
| '800 patent, claim 18 | |
| '800 patent, claim 19 | |
| '800 patent, claim 21 | |
| '800 patent, claim 22 | |

Do you find from clear and convincing evidence that any of the below-listed claims of the '188 patent is invalid as being anticipated by prior art?  Write "Yes" or "No" for each Asserted Claim. Writing "Yes" indicates a finding for Princeton Carbon Works Inc.  Writing "No" indicates a finding for SRAM, LLC.

| Asserted Claim | "Yes" or "No" |
|---|---|
| '188 patent, claim 1 | |
| '188 patent, claim 2 | |
| '188 patent, claim 3 | |
| '188 patent, claim 4 | |
| '188 patent, claim 5 | |
| '188 patent, claim 6 | |
| '188 patent, claim 7 | |
| '188 patent, claim 8 | |
| '188 patent, claim 10 | |
| '188 patent, claim 11 | |
| '188 patent, claim 12 | |
| '188 patent, claim 13 | |

**B.  Obviousness**

Do you find from clear and convincing evidence that any of the below-listed claims of the '800 patent is invalid as obvious in view of the prior art?  Write "Yes" or "No" for each Asserted Claim. Writing "Yes" indicates a finding for Princeton Carbon Works Inc.  Writing "No" indicates a finding for SRAM, LLC.

| Asserted Claim | "Yes" or "No" |
|---|---|
| '800 patent, claim 1 | |
| '800 patent, claim 2 | |
| '800 patent, claim 3 | |
| '800 patent, claim 4 | |
| '800 patent, claim 5 | |
| '800 patent, claim 6 | |
| '800 patent, claim 9 | |
| '800 patent, claim 12 | |
| '800 patent, claim 14 | |
| '800 patent, claim 15 | |
| '800 patent, claim 16 | |
| '800 patent, claim 17 | |
| '800 patent, claim 18 | |
| '800 patent, claim 19 | |
| '800 patent, claim 21 | |
| '800 patent, claim 22 | |

Do you find from clear and convincing evidence that any of the below-listed claims of the '188 patent is invalid as obvious in view of the prior art?  Write "Yes" or "No" for each Asserted Claim. Writing "Yes" indicates a finding for Princeton Carbon Works, Inc. Writing "No" indicates a finding for SRAM, LLC.

| Asserted Claim | "Yes" or "No" |
| --- | --- |
| '188 patent, claim 1 | |
| '188 patent, claim 2 | |
| '188 patent, claim 3 | |
| '188 patent, claim 4 | |
| '188 patent, claim 5 | |
| '188 patent, claim 6 | |
| '188 patent, claim 7 | |
| '188 patent, claim 8 | |
| '188 patent, claim 10 | |
| '188 patent, claim 11 | |
| '188 patent, claim 12 | |
| '188 patent, claim 13 | |

*If your answer is "No" to any of the above questions, proceed to Section IV of this Verdict Form. If your answer is "Yes" to all of the above questions, this ends your deliberations, and your foreperson should sign and date the last page of this Verdict Form.*

IV.   **DAMAGES**

*If you find that Princeton Carbon Works Inc. infringed any one or more of the claims of the '800 patent or the '188 patent by writing "Yes" for any of the Asserted Claims in response to the questions in Section I of this Verdict Form, and if you find that the claim or claims Princeton Carbon Works Inc. infringed are not invalid by writing "No" for that Asserted Claim, or those Asserted Claims, in response to the questions in Section III of this Verdict Form, please answer the questions in this Section IV.*

Do you find that SRAM, LLC is entitled to recover damages for lost profits on all or a portion of the sales of bicycle wheels made by Princeton Carbon Works, Inc.?[21]   Write "Yes" or "No:" _____

If your answer is "Yes," write the amount of SRAM, LLC's lost profits: $_____

If your answer is "No," or if your answer is "Yes" but you found that SRAM, LLC is entitled to recover lost profits on only a portion of the sales of bicycle wheels made by Princeton

---

[21] **PCW's position:** PCW does not believe this jury verdict question should include the phrase "or a portion." This language is irrelevant to this case and will confuse the jury.  SRAM has not alleged, much less proffered, any evidence of market share in this case and cannot supply the jury with sufficient data to calculate a reduced portion of sales for which SRAM is entitled to lost profits damages. Instead, SRAM took the all-or-nothing approach of arguing that it would have made every single sale made by PCW's accused wheels, with no alternative below 100% of PCW's sales.

**SRAM's position:** Inclusion of the language "or a portion" is proper and allows the jury to award SRAM lost profits on less than all of Princeton's infringing wheels sales, if the jury so finds. An award of lost profits on less than all of Princeton's infringing wheels sales would not be based on  "speculation or guesswork," as Princeton improper contends, nor does it require SRAM to present evidence of market share. Although SRAM seeks to recover lost profits on all of the sales of Princeton's infringing carbon undulating wheels, the factfinder may award SRAM lost profits on less than all of Princeton's sales, even if SRAM does not pursue a market-share theory. The jury can use evidence of the number of wheels sold by Princeton each month within the relevant time period and SRAM's adjusted gross profit per wheel—all of which will be supported by evidence at trial—to calculate the total amount of SRAM's lost profits based on the number of sales the jury finds SRAM lost due to Princeton's infringement, including if the jury finds that SRAM is entitled to lost profits on less than all of Princeton's sales. *See* note 8, *supra*.

Carbon Works, Inc., write below the amount you find would be a reasonable royalty for Princeton

Carbon Works Inc.'s infringement as to the sales for which you find SRAM, LLC is not entitled

to cover damages for lost profits: [22] $ _____.

     *This ends your deliberations, and your foreperson should sign and date the last page of*

*this verdict form.*


SO SAY WE ALL.

Date: _____         Foreperson's Signature: _____



**Authorities:** Verdict Form B—Special Verdict Form, Appendices—Model Verdict Forms, The

National Jury Instruction Project's Model Patent Jury Instructions (June 17, 2009).

---

[22] **PCW's position:** PCW believes this jury instruction should read "If your answer is "No," write below the amount you find would be a reasonable royalty for Princeton Carbon Works Inc.'s infringement." This language is aligned with the facts and issues of this case.  SRAM has not alleged, much less proffered, any evidence of market share in this case and cannot supply the jury with sufficient data to calculate a reduced portion of sales for which SRAM is entitled to lost profits damages. Instead, SRAM took the all-or-nothing approach of arguing that it would have made every single sale made by PCW's accused wheels, with no alternative below 100% of PCW's sales.

    **SRAM's position:** This question properly allows the jury to award SRAM reasonable royalty damages on any of Princeton's infringing wheel sales for which the jury finds SRAM is not entitled to recover lost profits. An award of lost profits on less than all of Princeton's wheels sales would not be based on  "speculation or guesswork," as Princeton improper contends, nor does it require SRAM to present evidence of market share. Although SRAM seeks to recover lost profits on all of the sales of Princeton's infringing carbon undulating wheels, the factfinder may award SRAM lost profits on less than all of Princeton's sales, even if SRAM does not pursue a market-share theory. The jury can use evidence of the number of wheels sold by Princeton each month within the relevant time period and SRAM's adjusted gross profit per wheel—all of which will be supported by evidence at trial—to calculate the total amount of SRAM's lost profits based on the number of sales the jury finds SRAM lost due to Princeton's infringement, including if the jury finds that SRAM is entitled to lost profits on less than all of Princeton's sales. *See* note 8, *supra*.

Glossary

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Application**: The initial papers filed by the applicant in the United States Patent and Trademark Office.

**Assignment**: A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and

refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Design Patent**: The invention of any new, original, and ornamental design for an article of manufacture may obtain a design patent. In general terms, a "utility patent" protects the way an article is used and works, while a "design patent" protects the way an article looks. The ornamental appearance for an article includes its shape/configuration or surface ornamentation applied to the article, or both. The ornamental design protected by a design patent does not have functional characteristics.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product or method that contains the claimed invention.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**License**: Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Office Action**: A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Ordinary skill in the art**:  The level of experience, education, or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed. Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent. One type of patent is a "utility" patent, which protects the way an article is used and works. When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior art**: Knowledge that is available to the interested public either prior to the invention by the applicant or more than one year prior to the filing date of the application.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**References**: Any item of prior art used to determine patentability.

**Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Specification**: The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. In the specification, the inventor describes the invention, how it works, and how to make and use it.

Authorities:  Instruction No. B.5.10, Date of Commencement of Damages—Products, The Federal Circuit Bar Association, Model Patent Jury Instructions (May 2020); Instruction No. 10.3, Doubts Resolved Against Infringer, AIPLA's Model Patent Jury Instructions (2019).