UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80581-CIV-ALTMAN/Reinhart

SRAM, LLC,

    *Plaintiff*,

v.

PRINCETON CARBON WORKS, INC.,

    *Defendant*.

_____/

## ORDER

Our parties sell expensive bicycle wheels. In this lawsuit, SRAM (our Plaintiff) alleges that Princeton (our Defendant) has infringed on the designs of its '188 and '800 patents.[1] After some protracted litigation, the parties filed cross-motions for summary judgment, which we now resolve. *See* SRAM's Motion for Partial Summary Judgment ("SRAM's MSJ") [ECF No. 101]; Princeton's Motion for Summary Judgement ("Princeton's MSJ") [ECF No. 106].[2]

In its MSJ, SRAM advances along two fronts. *First*, it asks for summary judgment on Princeton's invalidity defenses[3] under 35 U.S.C. §§ 102–03, because (SRAM says) "the USPTO has already found that Princeton's prior art submissions were insufficient to satisfy the [Patent Trial and Appeal Board's ("PTAB's")] much lower standard of proof[.]" SRAM's MSJ at 5. Princeton (SRAM

---

[1] (officially referred to as U.S. Patent Nos. 10,611,188 and 9,610,800, respectively).

[2] The MSJs are fully briefed and ripe for adjudication. *See* Princeton's Response in Opposition to SRAM's Motion for Partial Summary Judgment ("Princeton's Response") [ECF No. 120]; SRAM's Reply in Support of its Motion for Partial Summary Judgment ("SRAM's Reply") [ECF No. 132]; SRAM's Response in Opposition to Princeton's Motion for Summary Judgment ("SRAM's Response") [ECF No. 117]; Princeton's Reply in Support of its Motion for Summary Judgment ("Princeton's Reply") [ECF No. 134].

[3] Actually, they're one affirmative defense and two counterclaims.

contends) thus "cannot sustain its heavy burden of proof on the same or similar references here." *Ibid.* As we'll explain in a moment, though, we disagree with SRAM's view of the relevance of the PTAB proceedings. *Second*, SRAM argues that "Princeton has effectively conceded on its invalidity defense under 35 U.S.C. § 112 with respect to indefiniteness, written description, and enablement," *id.* at 3, such that "there is no genuine dispute of material fact that the claims of the '800 and '188 Patents have sufficient written description, are enabled, and are definite per the requirements of the Patent Act," *id.* at 20. Princeton doesn't contest this second argument—likely because it long ago abandoned its § 112 defenses.

Princeton, meanwhile, seeks "summary judgment of non-infringement for all asserted claims" because (in its view) the "established facts do not allow SRAM to prove that [Princeton's] products infringe the asserted patent, either literally or under the doctrine of equivalents." Princeton's MSJ at 1. This is so, Princeton insists, for at least three reasons. *First*, Princeton maintains that its wheels don't "literally" infringe upon *either* the "convex exterior profile" or "convex profile" limitations of SRAM's '800 and '188 patents *or* the "continuously varies" limitation of SRAM's '800 patent, because "none of [Princeton's] accused products have 'convex' profiles," *id.* at 9, and because "none of [Princeton's] accused products have a 'radial distance' that 'continuously varies,'" *ibid. Second*, pointing to the doctrine of equivalents, Princeton says that its products don't infringe the '800 or '188 patents because, as Princeton sees things, "SRAM's 'close enough' infringement theory is precluded as a matter of settled Supreme Court and Federal Circuit precedent." *Id.* at 12. *Third*, as to the '188 patent specifically, Princeton insists that SRAM is precluded from relying on the only definition of "convex exterior profile" that (in Princeton's view) *might* have supported a claim of infringement by equivalence. *Id.* at 17, 19.

After careful review, and for the reasons set out below, we **GRANT in part** and **DENY in part** SRAM's MSJ, **DENY** Princeton's MSJ, and (for reasons we'll get into later) **DENY as moot**

2

Princeton's Motion to Strike [ECF No. 133].

## THE LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether to grant summary judgment, the Court must consider "particular parts of materials in the records, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "By its very terms, [the summary judgment] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine [dispute] of material fact." *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1560 (Fed. Cir. 1995) (cleaned up) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant succeeds at this first step, the burden then shifts to the nonmovant to "point to some evidence in the record sufficient to suggest that his view of the issue might be adopted by a reasonable factfinder." *Id.* at 1560–61; *see also* FED. R. CIV. P. 56(e).

When ruling on a motion for summary judgment, the Court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "In considering whether summary judgment should [be] granted, we view the evidence in a light most favorable to the non-movant and draw all reasonable inferences in its favor." *McKay v. United States*, 199 F.3d 1376, 1380 (Fed. Cir. 1999). And, "[w]hen both parties move for summary judgment, each party's motion must be evaluated on its own merits and all reasonable inferences must be resolved against the party whose motion is under consideration." *Ibid.* (citing *Mingus Constrs., Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Of course, "assessments of credibility—no less than the weighing of evidence—are fact questions not susceptible of disposition at summary judgment." *Obremski v. Armor Corr. Health Servs., Inc.*, 467 F. Supp. 3d 1265, 1275 (S.D. Fla. Apr. 7, 2020) (Altman, J.).

"[I]f there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial." *Torres v. Wal-Mart Stores E., LP*, 555 F. Supp. 3d 1276, 1282 (S.D. Fla. Aug. 17, 2021) (Altman, J.). The Court, on the other hand, must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of [its] case." *Celotex*, 477 U.S. at 323; *see also McKay*, 199 F.3d at 1380 ("A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.").

"In rendering a decision on a motion for summary judgment, a court must 'view the evidence presented through the prism of the substantive evidentiary burden' that would inhere at trial." *Monarch Knitting Mach. Corp. v. Sulzer Morat Gmbh,* 139 F.3d 877, 880 (Fed. Cir. 1998) (quoting *Anderson,* 477 U.S. at 254). "Summary judgment of invalidity, therefore, must be predicated on facts established by clear and convincing evidence." *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000) (citing *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998)).

**ANALYSIS**

**I.     SRAM's MSJ on Princeton's § 112 Defenses and Counterclaims**

We'll start with the easy one: Princeton has abandoned its position that SRAM's patents are invalid under § 112. In its Third Affirmative Defense (and again in Counterclaims III & IV), Princeton alleged that SRAM's '800 and '188 patents are invalid under § 112 "because the full scope of those claims is not adequately supported by a written description, is not enabled, and is indefinite." Princeton's Answer, Affirmative Defenses, and Counterclaim ("Princeton's Answer") [ECF No. 16] at 9, 17–19. SRAM has now moved for summary judgment on the first two of these "based on [an] utter lack of evidence[.]" SRAM's MSJ at 18. In SRAM's view, "Princeton cannot, as a matter of law, assert lack of written description or enablement as grounds for invalidity of the '800 and '188 Patent claims." *Ibid.* And, as to the third of these, SRAM argues that Princeton has abandoned its claim that SRAM's patents are indefinite. *See id.* at 18–19. As SRAM rightly points out, in the weeks after our first *Markman* hearing, Princeton conceded that the word "convex" *can* be construed. *Id.* at 19; *see also* Joint Stipulation Regarding Claim Construction [ECF No. 93] at 1 (outlining Princeton's proposed constructions for the terms "convex interior profile," "convex profile," and "convex region").[4]

Either way, Princeton never contested SRAM's § 112 arguments in its Response. *See generally* Princeton's Response (failing to address SRAM's § 112 contentions). It's thus waived any arguments it might've made to save this affirmative defense (and these counterclaims). *See, e.g.*, *In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020) ("Ordinarily, an appellant waives issues or arguments not

---

[4] It's true, of course, that Princeton's proposed constructions for these terms differed to some degree from SRAM's. But that's neither here nor there. A claim is indefinite, after all, *only* when it "fail[s] to inform, with *reasonable* certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) (emphasis added). "The definiteness requirement thus 'mandates clarity, while recognizing that absolute precision is unattainable.'" *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347 (Fed. Cir. 2022) (quoting *Nautilus*, 572 U.S. at 910). By agreeing, in other words, that these terms *can* be construed, Princeton has conceded that they're not indefinite.

properly raised in its opening brief."); *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[A] party waives arguments based on what [does not] appear[ ] in its brief.").

We therefore **GRANT** SRAM's MSJ as to Princeton's § 112 defenses as they appear in Princeton's Third Affirmative Defense and in its Third and Fourth Counterclaims.

### II. SRAM's MSJ on Princeton's invalidity defense and counterclaims under 34 U.S.C. §§ 102–03

On the other hand, when we view the evidence (as we must) in the light most favorable to Princeton,[5] we think a reasonable jury *could* side with Princeton on a separate part of its Third Affirmative Defense (and its Third and Fourth Counterclaims)—namely, where Princeton asserted that SRAM's patents are invalid because they were anticipated or rendered obvious by some prior art. *See* Princeton's Answer at 9, 17–19. In these defenses (and counterclaims), Princeton pointed to eleven prior patents for its view that the '188 and '800 patents should *never* have been issued. *See* Princeton's Response at 17 ("Eight of [Princeton's] eleven anticipation invalidity theories have never been previously considered by the PTO, the PTAB, or by a jury."). In its MSJ, SRAM asks us to ignore all these prior-art references for two reasons. *One*, SRAM says that the PTAB already rejected a similar argument Princeton advanced in its petitions for *inter partes* review—which (SRAM acknowledges) were based on *just three* of the eleven prior-art references at issue here.[6] *See* SRAM's MSJ at 7. Since the standard on *inter partes* review is somewhat lower than it is here, SRAM asks us to follow the PTAB and disregard this prior art. *Id.* at 9. *Two*, SRAM claims that Princeton has adduced no evidence for its view that any of the prior-art references *either* "anticipated" *or* "rendered obvious" the '188 and '800 patents. *Id.* at 12. In saying so, SRAM maintains that each of these prior-art references is cumulative

---

[5] *Cf. Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) ("Furthermore, all evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party.").

[6] For those scoring at home, the three prior arts were Carlson, Herting, and Zibkoff. *See* SRAM's MSJ at 7.

of the three the PTAB has already rejected. *Ibid.* We disagree.

To begin with, SRAM's reliance on the PTAB's refusal to initiate *inter partes* review is misplaced. Princeton (it's true) went to the PTAB "contending that both patents-in-suit were invalid." SRAM's MSJ at 2. And (SRAM's right) the PTAB "found Princeton's prior art references were insufficient under the PTAB's significantly lower standard of proof." *Ibid.* But, for three reasons, SRAM's just wrong to suggest that, "[b]ecause Princeton could not succeed with its purportedly best references before the PTAB, Princeton *cannot* sustain its heavy burden of proof on the same or similar references here." *Id.* at 5 (emphasis added).[7]

*First*, as Princeton points out, "the fact remains that denial of an IPR petition is simply not an adjudication of an invalidity contention." *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1028 (E.D. Wis. 2017); *see also Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2017 WL 3278915, at *4 (N.D. Ill. Aug. 2, 2017) ("A denial of a petition for IPR is not a final decision rejecting an invalidity contention."). SRAM does nothing to rebut this well-settled legal principle.

*Second*, the PTAB's refusal to initiate *inter partes* review isn't binding because it doesn't result in the issuance of a written decision. As Congress has explained, "[t]he petitioner in an inter partes review of a claim in a patent under this chapter *that results in a final written decision* under section 318(a) . . . may not assert [ ] in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2) (emphasis added). In our case (both sides agree), the PTAB neither reviewed nor issued a "final written decision" on Princeton's claim. *See* Joint Statement of Undisputed Facts (the "JSOF") [ECF No. 103] ¶ 9 ("On

---

[7] In its Reply, SRAM softens this language and concedes that the results of the PTAB process are merely "persuasive," not binding. *See* SRAM's Reply at 2 ("In fact, SRAM expressly stated that it was *not* claiming statutory estoppel, but instead identifying, as courts have noted, the instructive, persuasive reasoning of the PTAB's confirmation of the validity of all asserted claims of the '800 and '188 patents."). But its opening brief sang something of a different tune, as the emphasized "*cannot*" in the quoted sentence above implies.

April 20, 2022, the PTAB issued a Decision Denying Institution of *Inter Partes* Review in IPR2022-00078[.]"); *id.* ¶ 31 ("On April 20, 2022, the PTAB issued a Decision Denying Institution of *Inter Partes* Review in IPR2022-00082[.]").

And the Federal Circuit has repeatedly said that "[t]he validity of claims for which the Board did not institute inter partes review can still be litigated in district court." *Symopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1316 (Fed. Cir. 2016), *overruled on other grounds by Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017); *see also Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 990 (Fed. Cir. 2022) ("Congress could not have intended to bar later litigation of the issues that the PTAB declined to consider."); *Shaw Indus. Grp., Inc. v. Auto. Creek Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016) ("We agree with the PTO that § 315(e) would not estop Shaw from bringing its Payne-based arguments in either the PTO or the district courts. . . . The PTO denied the [IPR] petition as to that ground, thus no IPR was instituted on that ground. The IPR does not begin until it is instituted . . . . The plain language of the statute prohibits the application of estoppel under these circumstances."); *cf. Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1052 (Fed. Cir. 2017) ("Because a final written decision does not determine the patentability of non-instituted claims, it follows that estoppel does not apply to those non-instituted claims[.]").

*Third*, two of the three cases SRAM relies on for its view that the PTAB's decision should "instruct[ ]" us here are totally different from our case—and the third actually undermines SRAM's position. *See* SRAM's MSJ at 7–8 (citing *Precision Fabrics Grp., Inc. v Tietex Int'l, Ltd.*, 2016 WL 6839394 (M.D.N.C. Nov. 21, 2016); then *Procter & Gamble Co. v. Team Techs., Inc.*, 2014 WL 12656554 (S.D. Ohio July 3, 2014); and then *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2015 WL 5330284 (W.D. Wis. Sept. 11, 2015)).

The first case, *Precision Fabrics*, is completely unhelpful to SRAM. The plaintiff there moved for summary judgment on (among other things) the defendant's invalidity counterclaims. *See Precision*

8

*Fabrics*, 2016 WL 6839394, at *1. In its counterclaims, the defendant (TieTex) had sought "a declaration that [the plaintiff's] '639 and '162 patents are invalid pursuant to one or more of the provisions of 35 U.S.C. §§ 102, 103, and/or 112." *Id.* at *9 (cleaned up). Unlike our case, though, the PTAB in *Precision Fabrics* had instituted an *inter partes* review of TieTex's petition (as it related to the '639 patent), and it *had* issued a final decision on TieTex's validity challenge. *See ibid.* ("By the time TieTex filed its response brief, the PTAB had rendered its final decision, rejecting every challenge by [Precision Fabrics] to the '639 patent."). Noting that the PTAB had issued a final decision, the court found that "35 U.S.C. § 315(e)(2) estop[ped] TieTex from asserting that the '639 patent is invalid not only on grounds raised during the inter partes review, but also on grounds that reasonably could have been raised during the inter partes review." *Ibid.* (quoting 35 U.S.C. § 315(e)(2) (cleaned up)). Given this clear statutory mandate, the court precluded TieTex from relying on *both* the prior-art references it *had* invoked before the PTAB (which the PTAB had rejected) *and* "three other references . . . [that] the PTAB did not address . . . in its final decision," because TieTex "reasonably could have raised" those challenges during *inter partes* review. *Ibid.*

As we've suggested, *Precision Fabrics* is inapposite here. The PTAB in our case *never* granted *inter partes* review of Princeton's invalidity claim and *never* issued a final written decision. *See* JSOF ¶ 9 ("On April 20, 2022, the PTAB issued a Decision Denying Institution of *Inter Partes* Review in IPR2022-00078[.]"); *id.* ¶ 31 ("On April 20, 2022, the PTAB issued a Decision Denying Institution of *Inter Partes* Review in IPR2022-00082[.]"). In fact, in a part of *Precision Fabrics* SRAM conveniently ignores, the district court held that TieTex *could* challenge the plaintiff's '162 patent—which the PTAB had not reviewed—because "the estoppel provisions of 35 U.S.C. § 315(e)(2) do not apply to a denial of an inter partes review." *Precision Fabrics*, 2016 WL 6839394, at *9. And that makes sense. As Judge St. Eve (now on the Seventh Circuit) once explained, "[i]f a mere denial of an IPR petition gave rise to estoppel, it would deprive the petitioner of a full opportunity to be heard on the estopped ground to

9

no fault of the petitioner, who properly raised the invalidity contention with the PTAB." *Oil-Dri Corp.*, 2017 WL 3278915, at *4.[8]

SRAM's reliance on *Procter & Gamble* fares no better. The defense expert in that case "condede[d] that none of the references cited in his expert report explicitly disclose the [disputed limitations]; rather [he alleged] that each of [the prior-art references] inherently discloses the [disputed limitations]." *Procter & Gamble*, 2014 WL 12656554, at *6. But, to bolster that inherent-disclosure opinion, the expert had "provided no evidence supporting his conclusion[.]" *Id.* at 7. His report—and, by extension, the defendant's claim of invalidity—thus "f[e]ll well short of clear and convincing evidence." *Ibid.* Again, our case is completely different: Princeton has appended the lengthy analysis of its expert, Dr. Hanson, who's explained, in painstaking detail, his opinion that Princeton's prior-art references fully anticipated (or else rendered obvious) SRAM's patents. *See generally* Hanson Invalidity Report. And, while *Procter & Gamble* did "[take] judicial notice of the fact of the PTAB's decision rejecting Clio's petition for IPR of the claims containing HOM Limitations," *Procter & Gamble*, 2014 WL 12656554, at 10 n.4, the court never said (and its 38-page order never suggested) that it relied on the PTAB's decision *in any way*.

---

[8] *Precision Fabrics* is inapposite for yet another reason. Even as to the non-precluded claim (on the supposed invalidity of patent '162), the defendant failed to disclose an expert who could testify to the central issues in dispute—namely, the obviousness of certain fire-retardant treatments. *Precision Fabrics*, 2016 WL 6839394, at *10. In a last-ditch effort to save its invalidity case at summary judgment, the defendant asked the court to rely on its PTAB submission, which *had* attached an expert affidavit—an underhanded move the court rightly refused to countenance. *Ibid.* ("If the court were to construe Horrocks' affidavit as an expert disclosure, its lateness after discovery has closed would constitute surprise to PFG that will be very difficult to cure without retaining a further expert to rebut it. This would require reopening discovery and delay the proceedings."). Since the defendant thus had no expert who could opine on the salient issues surrounding the (alleged) invalidity of the '162 patent, the court had little choice but to find that "[the defendant ha[d] not made a showing from which the court could find liability [as to the '162 patent] by clear and convincing evidence." *Ibid.* That's just not our case. Princeton *has* submitted the expert report of Dr. Hanson, in which he opines, in dozens of detailed paragraphs, that Princeton's prior-art references *did* anticipate and *did* render obvious SRAM's patents. *See generally* Hanson Invalidity Report [ECF No. 104-14].

The third case, *Ultratec*, actually undermines SRAM's position. The defendant there had petitioned the PTAB to open an *inter partes* review based on certain prior-art references that (the defendant claimed) rendered the plaintiff's invention obvious. *See Ultratec*, 2015 WL 5330284, at *14. As here, the PTAB refused to initiate that review. *See ibid.* ("CaptionCall presented its obviousness case based on the first three of these references (plus one other) to the Patent Trial and Appeal Board (PTAB), which declined to initiate an *inter partes* review[.]"). Despite referring to that declination as "persuasive" on the question of obviousness, the district court denied the plaintiff's summary-judgment motion, finding (based largely on the competing experts' views) "that the facts relating to whether the '398 patent is obvious are sharply disputed." *Ibid.*

We come out as *Ultratec* did—holding that, even if the PTAB's decision *not* to grant Princeton's request for *inter partes* review were relevant to our analysis, "the facts relating to whether" the '188 and '800 patents were obvious—like the facts on the extent to which the prior art anticipated those patents—are, as they were in *Ultratec*, "sharply disputed." Indeed, the Federal Circuit has repeatedly said that "[a]nticipation is a question of fact, and the question whether a claim limitation is inherent in a prior art reference is a factual issue on which evidence may be introduced." *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997); *see also Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999) ("Anticipation is a question of fact, including whether or not an element is inherent in the prior art."). Similarly, "[t]he presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact." *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1289 (Fed. Cir. 2006) (quoting *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000)); *see also PAR Pharm., Inc. v. TWI Pharm., Inc.*, 773 F.3d 1186, 1196–97 (Fed. Cir. 2014) ("What a reference teaches and whether it teaches toward or away from the claimed invention [*i.e.*, whether it meets the legal definition of obviousness] are questions of fact." (quoting *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 (Fed. Cir. 2000))).

Princeton—through its expert, Dr. Hanson—has created a genuine dispute of material fact on the questions of obviousness and anticipation. So, for instance, Dr. Hanson says that, "as of 2011, there was a well-established body of art regarding use of aerodynamic protrusions and channels along the rim of a bicycle wheel." Hanson Invalidity Report at 18. And, he adds, "[t]he Asserted Claims are anticipated and/or obvious in view of at least the following prior art, alone or in combination." *Ibid.* Dr. Hanson then analyzes each of the prior-art references (Chen, Alex, Mizuno, Mercat, Herting, Okajima, Carlson, Urbani, and Zibkoff) that, to his mind, anticipated SRAM's patents. We won't belabor these here because the arguments on either side surrounding each reference proceed along similar lines *and* because it's sufficient for our purposes today to find a genuine dispute about the extent to which just *one* such reference anticipated SRAM's patents. After all, if one prior reference anticipated (or rendered obvious) the '800 and '188 patents, then those patents are invalid and the case is over. We'll therefore focus our attention on Herting as a kind of emblematic example of the debates surrounding each of the alleged prior-art references.

"Herting," Dr. Hanson contends, "discloses a number of different related bicycle wheel embodiments," each of which "has a wheel rim and wheel with flanges that 'extend radially inwardly toward the center of the rim and wheel.'" *Id.* at 19. SRAM's expert, Dr. Howle, disagrees and insists that "the Asserted Claims of the '800 and '188 patents are valid and neither anticipated nor rendered obvious in view of U.S. Patent No. 6,425,641 to Herting ('*Herting*'), either alone or in combination with U.S. Patent Pub. No. 2009/0236902 to Zibkoff ('*Zibkoff*')." Howle Validity Rebuttal Report [ECF No. 104-37] at 3. Of the Herting configuration, Dr. Howle says: "The scalloped configuration results in spoke attachment regions on the inside surface of the hub that are purely concave. Stated differently, a person of ordinary skill in the art would clearly understand that there is no convex region for the attachment of spokes." *Id.* at 36–37. Drs. Hanson and Howle thus disagree about a central question in this case—*viz.*, whether the inner regions of the wheel rim "extend radially inwardly" or "are purely

12

concave."[9] As we've said, the remaining prior-art references triggered similar debates. *Compare* Hanson Invalidity Report ¶¶ 127–290, 293–315 (articulating Hanson's view that each of the eleven prior-art references, either alone or in combination with the Zibkoff wheel, anticipated or rendered obvious the '800 and '188 patents), *with* Howle Validity Rebuttal Report ¶¶ 87–125, 134–72, 180–217, 224–62, 267–307, 314–52, 357–95, 401–39, 443–81, 484–522, 526–64 (explaining Howle's opinion that *none* of Princeton's prior-art references anticipated or rendered obvious SRAM's '800 and '188 patents, either alone or in combination with Zibkoff).

Recognizing the well-established rule that obviousness and anticipation raise quintessential "question[s] of fact," *Apple Computer*, 234 F.3d at 20 (anticipation); *Alza Corp.*, 464 F.3d at 1289 ("The presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact.")—and given the sharply disputed factual record in this case, which includes the detailed opinions of opposing (and qualified) experts—we **DENY** SRAM's MSJ as to this aspect of (1) Princeton's Third Affirmative Defense and (2) Princeton's Third and Fourth Counterclaims.

### III.     Princeton's MSJ

For similar reasons, we deny Princeton's MSJ. Princeton asks us to find that its products don't infringe the "convex exterior profile," "convex profile," and "continuously varies" limitations of SRAM's patents—either literally *or* under the doctrine of equivalents. *See* Princeton's MSJ at 8–19. But SRAM disputes each of these assertions with competent evidence—much of it from its expert, Dr.

---

[9] In its Reply, SRAM dismisses "42 of the 46 cited paragraphs from Dr. Hanson's expert report" as "identical or virtually identical in all substance to corresponding paragraphs of his IPR declarations." SRAM's Reply at 7. And, SRAM adds, "[o]f the only four cited paragraphs from Dr. Hanson's expert report not appearing verbatim in his IPR declarations, two paragraphs are short, conclusory statements about alleged prior art advantages, while the other two paragraphs are repeats." *Id.* at 8. But that's only relevant if we accept SRAM's invitation to strike Princeton's defenses solely because the PTAB declined to initiate *inter partes* review. As we've explained, however, we can't do that. Since we won't disregard Dr. Hanson's report *because of* the PTAB's refusal to review his contentions, we have an obligation to review those contentions and decide (for ourselves) whether they raise a genuine dispute of material fact on the questions of obviousness and anticipation. And, for all the reasons we've given, they do.

Howle, whose expertise in the field of mechanical engineering is hard to quibble with. *See* Lars Howle Resumé [ECF No. 104-37] at 258. So, for example, Princeton claims (relying on its *own* expert's diagrams) that its Wake 6560, Grit 4540, and Peak 4550 wheels *don't* present "convex profiles" because there's a "*concave* profile at every one of its alleged 'peaks.'" Princeton's MSJ at 9 (emphasis in original); Princeton's Statement of Material Facts ("Princeton's SOF") [ECF No. 109] ¶ 17; Dr. Hanson's Supplemental Expert Report Regarding Non-Infringement [ECF No. 107-15] ¶¶ 46, 65. But, as SRAM notes, this expert opinion appears to contradict Princeton's own marketing materials, which boast of "symmetric, sinusoidal oscillations" and "*convex* point[s.]" SRAM's Response at 6 (emphasis in original); SRAM's Response Statement of Material Facts ("SRAM's Response SOF") [ECF No. 118] ¶¶ 49–51; Bradley Werntz Deposition [ECF No. 119-12] at 193:10–15 ("So generally speaking, if you measure from one point of 60-millimeter depth to another point of 60-millimeter depth, there is an overall convex shape between those two points, which we previously referred to as a hump."); Princeton Webpage [ECF No. 119-7] at PWC_0002334 ("A 'sinusoid' is a mathematical curve that describes a smooth and repetitive oscillation. The WAKE 6560 has 24 such waves molded into its carbon fiber. . . . Mechanically, the dynamic cross-section variability—WAKE—puts spoke tension at a point symmetrically convex section of carbon, vs concave (typical when), carbon is pulled in tension bs pushed into compression." (errors in original)); Princeton Sale Sheet [ECF No. 119-6] at PCW_0000832 ("Each nipple is at an [sic] convex point (apex) in the oscillation."). When we draw (as we must) all reasonable inferences in SRAM's favor, we don't think this one's all that close: The conflict between Dr. Hanson's Supplemental Report (on the one hand) and Princeton's webpage and sale sheet (on the other) creates a genuine dispute of material fact that precludes summary judgment.

We come out the same way on Princeton's claim that the radial distance of its wheels does not "continuously var[y.]" *See* Princeton's MSJ at 10 ("[E]ach Accused Product includes regions of constant radial distance at each alleged 'trough.'"); Princeton's SOF ¶¶ 24–25 (describing how its

14

expert "demonstrate[s] the presence of constant radial distance regions"); Rebuttal Expert Report of Dr. Hanson Regarding Non-Infringement [ECF No. 107-20] ¶ 101 ("My analysis shows that Dr. Howle's conclusion that the video demonstrates a constantly varying radial distance is incorrect. Rather, the analysis shows there is a region of unchanging radial distance."); *id.* ¶¶ 102–10, 164–73. Although Princeton mostly ignores him, SRAM's expert (Dr. Howle) "opined that [his own video data] and his further infringement analysis confirm the continuously varying radial distance for the WAKE 6560 bicycle wheels[.]" SRAM's Response SOF ¶ 24; Dr. Howle's Expert Report Regarding Infringement [ECF No. 119-2] ¶ 46 ("As the video in Exhibit J clearly shows, the radial distance between the hub and the radially inner edge continuously varies between adjacent peaks and continuously varies between adjacent troughs."); *id.* ¶¶ 38–40, 44–45. We won't weigh in on which of these two experts is right—or on which is telling the truth—because that's what juries are for.

Finally, we're unpersuaded by Princeton's claim that SRAM is "impermissibly vitiat[ing] the meaning of the 'convex' and 'continuously varying' claim terms." Princeton's MSJ at 2–3. As SRAM points out, "placing a flagpole at the top of a hill does not change the convex profile of the hill simply because there is a whole on the hilltop in which the flagpole is inserted." SRAM's Response at 10 n.5. Dr. Hanson (it's true) disagrees. In his view, "the profile of all the alleged 'peaks' of [Princeton's] wheels include portions of concavity that bulge away from the center of the wheel." Dr. Hanson's Supplemental Report ¶ 45. As a result, he says, "they [Princeton's wheels] cannot infringe under the doctrine of equivalents." *Ibid.* But, according to Dr. Howle, "Dr. Hanson relies entirely upon the fact that a very slight spoke hold support is created in the middle of the peak of a size that he does not even purport to measure but attempts to describe as concave." Dr. Howle's Supplemental Report [ECF No. 107-13] ¶ 32. In Dr. Howle's expert opinion, "[s]uch a small region of purported concavity is not significant from an equivalents standpoint[.]" *Ibid.* We'll allow Princeton to re-raise this argument once all the evidence is in. Perhaps Princeton's right that, with a bit more context—and

15

with the evidence properly weighed—SRAM has this all wrong.[10] But, for now, we think this is a dispute of fact we'll need a jury to handle.

Whether Princeton's wheels reveal a concave profile or a continuously varying radial distance—either literally or "closely enough" to be equivalent—are material facts at the heart of SRAM's infringement claim. Since "there are . . . genuine issues of material fact," we "must deny summary judgment and proceed to trial." *Torres*, 555 F. Supp. 3d at 1282.

### IV.     Princeton's Motion to Strike

We also deny as moot Princeton's Motion to Strike the Declaration of Dr. Howle and the Declaration of Mr. Wesling [ECF No. 133]—both of which SRAM submitted as exhibits in support of its Response to Princeton's MSJ. We share Princeton's concern that SRAM may have used these declarations to introduce some (extremely) untimely expert opinions. But we found no occasion to consider these declarations in resolving Princeton's MSJ—which wasn't a close call in any case—so we deny the Motion to Strike as moot.

\*          \*          \*

This case presents us with a proverbial battle of experts. And, as we've said in a slightly different context, "we think it beyond cavil that the task of resolving [factual] disputes rests squarely with a jury of laymen, not a panel of (unelected) judges." *Torres*, 555 F. Supp. 3d at 1288 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 343–44 (1979) (Rehnquist, J., dissenting) ("Trial by a jury of laymen rather than by the sovereign's judges was important to the founders because juries represent the layman's common sense, the 'passional elements in our nature,' and thus keep the administration of law in accord with the wishes and feelings of the community[.]")).

After careful review, therefore, we **ORDER AND ADJUDGE** as follows:

---

[10] As we've said, "assessments of credibility—no less than the weighing of evidence—are fact questions not susceptible of disposition at summary judgment." *Obremski*, 467 F. Supp. 3d at 1275 (citing *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012)).

1. SRAM's Partial MSJ [ECF No. 101] is **GRANTED in part** and **DENIED in part**. SRAM's MSJ is **GRANTED** as to Princeton's § 112 defenses and counterclaims and **DENIED** in all other respects.

2. Princeton's MSJ [ECF No. 106] is **DENIED**.

3. Princeton's Motion to Strike [ECF No. 133] is **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on January 13, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record