**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| SRAM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 9:21-cv-80581 RKA |
| | ) | |
| PRINCETON CARBON WORKS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF SRAM, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT
PRINCETON CARBON WORKS, INC.'S OMNIBUS MOTION *IN LIMINE***

## <u>**TABLE OF CONTENTS**</u>

I.     LEGAL STANDARDS ..................................................................................... 1

II.    ARGUMENT .................................................................................................... 1

    A.    No. 1: The Court Should Deny Princeton's Request to Exclude Evidence of *Inter Partes* Review Proceedings and Decisions, Because Princeton Intends to Introduce Its IPR Petitions at Trial and the PTAB's Decisions Are Highly Relevant and Will Prevent the Mischaracterization or Misapprehension That the USPTO Did Not Consider Certain Prior Art References. ........................ 1

    B.    No. 2: The Court Should Deny Princeton's Request to Exclude Expert Testimony Beyond the Disclosures Because SRAM Does Not Intend to Offer Such Testimony, and Princeton's Request Is Based on Mischaracterizations of the Reports and Opinions of SRAM's Experts. ............... 4

        i.    Dr. Howle applied the claim terms as construed by the Court, he provided equivalents opinions permissible in light of prior art, and his summary judgment declaration is not untimely expert opinion............ 5

        ii.    Mr. Perdue provided opinions on apportionment and consideration of purported non-infringing alternatives, as the Court already found. ...................................................................................... 8

    C.    No. 3: The Court Should Deny Princeton's Lost-Profits Request Because the Evidence at Trial Will Allow the Jury to Calculate SRAM's Lost Profits on All, or a Portion of, Princeton's Sales of Carbon Undulating Wheels. ............. 9

    D.    No. 4.a: The Court Should Deny Princeton's Request to Bar Comparisons with the Embodiments Depicted in The Patents-In-Suit, Because Those Embodiments Are Within the Claim's Scope, Are Relevant, and References to Them Will Help the Jury. .............................................................. 11

    E.    No. 4.b: The Court Should Deny Princeton's Request to Exclude Evidence of Princeton's Patent Application, Because the Application Describes the Accused Wheels, as Princeton Admits, and Thus Is Relevant to Infringement, Validity, and Willfulness. .............................................. 14

    F.    No. 5: The Court Should Deny Princeton's Request to Exclude Mr. Wesling's Testimony Because Testimony About His Observations of Princeton's Wheels Is Not Impermissible Expert Opinion................................. 16

    G.    No. 6: The Court Should Deny Princeton's Request to Exclude its Unsuccessful Repeated Attempts to License the Patents-in-Suit from Inventor Dimitris Katsanis Because Those Attempts Are Directly Relevant to Issues of Infringement, Validity, and Willfulness. .......................................... 18

H.     No. 7: The Court Should Deny as Moot Princeton's Request to Exclude References to It as "Princeton," Because Princeton Has Withdrawn That Request..................................................................................................................... 20

III.    CONCLUSION....................................................................................................................... 20

# **TABLE OF AUTHORITIES**

## Cases

*523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014) ............................................ 18

*Acorn Semi, LLC v. Samsung Electronics Co., Ltd. et al.*, Civ. No. 2-19-cv-00347, Dkt. No. 331 (E.D.Tex. April 29, 2021) ................................................................................. 14

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283 (Fed. Cir. 2010) .............. 12

*Am. K-9 Detection Servs., Inc. v. Rutherford Int'l, Inc.*, No. 6:14-CV-1988-ORL-37TBS, 2016 WL 7183365 (M.D. Fla. May 16, 2016) ................................................. 1

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017) ............ 19

*Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990 (N.D. Cal. 2019) ....... 19

*Barkan Wireless IP Holdings, LP v. T-Mobile US, Inc. et al.*, Civ. No. 2-21-cv-00034, Dkt. No. 227 (E.D.Tex. Dec. 16, 2021) ................................................................................. 14

*Catalina Lighting, Inc. v. Lamps Plus, Inc.,* 295 F.3d 1277 (Fed. Cir. 2002) ............................. 14

*Composite Res. Inc. v. Recon Med. LLC*, No. 217-CV-01755-MMD-VCF, 2021 WL 5501104 (D. Nev. Nov. 22, 2021) ................................................................................. 17

*Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570 (Fed. Cir. 1994) ......................................................... 7

*Corning Glass Works v. Anchor Hocking Glass Corp.*, 300 F. Supp. 1299 (D. Del. 1969) ......... 19

*Dentsply Sirona Inc. v. Edge Endo, LLC*, No. 1:17CV1041-JFB-SCY, 2020 WL 6392764 (D.N.M. Nov. 2, 2020) ..................................................................................... 3

*Dexcowin Glob., Inc. v. Aribex, Inc.*, No. CV 16-143-GW(AGRX), 2017 WL 3478492 (C.D. Cal. June 29, 2017) .............................................................................. 3, 4

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, No. 8:10CV187, 2015 WL 5177759 (D. Neb. Sept. 4, 2015), *aff'd in part, vacated in part on other grounds*, 879 F.3d 1332 (Fed. Cir. 2018) ......................................................... 13

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.,* LLC, 879 F.3d 1332 (Fed. Cir. 2018) ................................................................................................................ 8

*Forest Lab'ys, Inc. v. Abbott Lab'ys*, 239 F.3d 1305 (Fed. Cir. 2001) ........................................ 16

*Glaxo Group Ltd. v. TorPharm, Inc.*, 153 F.3d 1366 (Fed. Cir. 1998) ....................................... 13

*HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685 (Fed. Cir. 2020) ........................................ 17

*Jang v. Boston Sci. Corp.*, 872 F.3d 1275 (Fed. Cir. 2017) ............................................................ 7

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, No. 2:17-CV-07639 SJO-KS, 2020 WL 2844410 (C.D. Cal. Apr. 2, 2020) ...................................................................................... 19

*King Instruments Corp. v. Perego*, 65 F.3d 941 (Fed. Cir. 1995) ................................................. 10

*Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2021 WL 3021253 (E.D. Tex. Feb. 26, 2021) ........................................................................................................................ 17

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017) ................................. 10

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012) ...................................................... 12, 13

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119 (Fed. Cir. 2003) ............................................ 10

*Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318 (Fed. Cir. 1990) ......................................... 9

*OptoLum, Inc. v. Cree, Inc.*, 490 F. Supp. 3d 916 (M.D.N.C. 2020) ............................................. 7

*Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293 (Fed. Cir. 2007) ............................................. 8

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, No. 79-C-499, 1980 WL 30340 (E.D. Wis. Aug. 26, 1980) .................................................................................................. 16

*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) ..................................................... 10

*Sherwin-Williams Co. v. PPG Indus., Inc.*, No. CV 17-1023, 2020 WL 5077547 (W.D. Pa. Aug. 27, 2020) ........................................................................................................ 16

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269 (Fed. Cir. 2011) .................................................................................................... 10

*Sioux Steel Co. v. Prairie Land Mill Wright Servs.*, No. 16-CV-2212, 2022 WL 17082541 (N.D. Ill. Nov. 18, 2022) ................................................................................. 13

*Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752843 (M.D. Fla. June 18, 2007) .................................................................................................... 1

*Steyr Arms, Inc. v. Beretta USA Corp.*, No. 2:15-CV-01718-MHH, 2020 WL 2767359 (N.D. Ala. May 28, 2020) ................................................................................. 17

*StoneEagle Servs., Inc. v. Pay–Plus Sols., Inc.*, No. 8:13-CV-2240-T-33MAP, 2015 WL 3824208 (M.D. Fla. June 19, 2015) .............................................................................. 3, 4

*Summer Infant (USA), Inc. v. TOMY Int'l, Inc.*, No. CV 17-549MSM, 2022 WL 3909285 (D.R.I. Aug. 31, 2022) .......................................................................................... 13

*TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777 (Fed. Cir. 2019) ........................ 13, 14

*United States v. Gonzalez*, 718 F. Supp. 2d 1341 (S.D. Fla. 2010) ................................................ 1

*United States v. Grant*, 256 F.3d 1146 (11th Cir. 2001) ............................................................ 1

*VLSI Tech., LLC v. Intel Corp.*, 6:21-CV-057-ADA, 2022 WL 1477724 (W.D. Tex. May 10, 2022) ........................................................................................................................ 7

*Yarway Corp v. Eur-Control USA, Inc.*, 775 F.2d 268 (Fed. Cir. 1985) .................................... 10

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. CIV. 10-0541-LAB(WVG), 2011 WL 5525990 (S.D. Cal. Nov. 14, 2011) ......................................................................... 15

**Rules**

Fed. R. Civ. P. 26(a)(2)(C) ......................................................................................................... 19

Fed. R. Evid. 403 .................................................................................................................. 1, 21

Defendant Princeton Carbon Works Inc.'s ("Princeton") Omnibus Motion *In Limine* seeks to exclude highly probative evidence and testimony from trial, without a requisite showing of inadmissibility or unfair prejudice substantially outweighing any probative value. Plaintiff SRAM, LLC ("SRAM") opposes these unfounded requests and asks the Court to deny each of them.

## I.    LEGAL STANDARDS

"A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." *Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007). "[T]he movant has the burden of demonstrating" that to be so. *Am. K-9 Detection Servs., Inc. v. Rutherford Int'l, Inc.*, No. 6:14-CV-1988-ORL-37TBS, 2016 WL 7183365, at *3 (M.D. Fla. May 16, 2016).  If the evidence sought to be excluded is not clearly inadmissible, "evidentiary rulings should be deferred until trial[.]" *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). Although Princeton frequently invokes unspecified claims of "unfair prejudice," Fed. R. Evid. 403 requires that any such prejudice must "***substantially outweigh***" the probative value of evidence to permit exclusion, and "[u]nfair prejudice cannot be simplistically defined as evidence having adverse effects on a party's case; rather it is an undue tendency to suggest [a] decision on an improper basis[.]" *Id.* at 1347. "Rule 403 is 'an extraordinary remedy'" excluding "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001).

## II.    ARGUMENT

### A.    No. 1: The Court Should Deny Princeton's Request to Exclude Evidence of *Inter Partes* Review Proceedings and Decisions, Because Princeton Intends to Introduce Its IPR Petitions at Trial and the PTAB's Decisions Are Highly Relevant and Will Prevent the Mischaracterization or Misapprehension That the USPTO Did Not Consider Certain Prior Art References.

Princeton previously touted the importance of its petitions for *inter partes* review ("IPR")

of the Patents-in-Suit in seeking a stay, arguing that its "IPR petitions persuasively demonstrate that the asserted patents are not patentable, and will likely result in a finding by the PTAB that the patents at issue in this case are invalid." (*See* ECF No. 38 at 1.)[1] Princeton also admits the admissibility of the IPR proceedings, listing its two IPR petitions as exhibits it "expects to use" at trial. (*See* Princeton's Exhibit List, SRAM Ex. 1, at D-541, 544.)[2] Princeton also admits that the file histories of the Patents-in-Suit are relevant, listing them eight times as exhibits it "expects" or "may" use. (*See id.* at D-2, D-4, D-535-36, D-537-38, D-542-43.) The two decisions of the United States Patent and Trademark Office ("USPTO") Patent Trial and Appeal Board ("PTAB") concluding that Princeton's primary prior art references do not anticipate or render obvious the Patents-in-Suit are clearly relevant to validity and will help the jury, especially given Princeton's intended use of the IPR petitions at trial.

The Court is well familiar with the IPR proceedings. (*See generally* Order (ECF No. 174).) The PTAB considered the same three main prior art references Princeton asserts here (*Carlson*, *Herting*, and *Zibkoff*), together with declarations from Ronald Hanson that are substantially identical to his expert report. (*See* Joint Statement of Undisputed Facts (ECF No. 103) at ¶¶ 1-8.) The PTAB issued detailed, 24-page written decisions concluding that there is no reasonable likelihood Princeton's three main prior art references anticipate or render obvious the asserted claims, with detailed reasons. (*See id.* at ¶¶ 9-49; IPR Decisions (ECF Nos. 104-10, 104-11).) The fact that a panel of three administrative patent judges, experts in the area of patents and patentability, evaluated Princeton's same primary prior art references and concluded that they do

---

[1] The "Patents-in-Suit" are U.S. Patent Nos. 9,610,800 B2 ("the '800 Patent") and 10,611,188 B2 ("the '188 Patent").

[2] SRAM's exhibits cited herein are attached to the Declaration of Michael J. Hickey filed concurrently herewith.

not invalidate the Patents-in-Suit is unquestionably relevant, as many courts have found. *See, e.g., Dentsply Sirona Inc. v. Edge Endo, LLC*, No. 1:17CV1041-JFB-SCY, 2020 WL 6392764, at *4-5 (D.N.M. Nov. 2, 2020) (denying motion *in limine* to exclude evidence concerning PTAB's decisions to not institute IPR, because they are "relevant to [the issue of] of validity" and courts "frequently allow evidence of this kind.").[3] The IPR decisions are also relevant to willfulness, including the reasonableness of Princeton's invalidity positions.   *See, e.g., StoneEagle*, 2015 WL 3824208, at *8-9.

Princeton's contention that its invalidity grounds "are not identical" to those raised in the IPR proceedings ignores critical facts that make the IPR decisions highly probative:  (i) the PTAB considered Princeton's three main prior art references asserted here; (ii) the PTAB considered a declaration from Princeton's expert Ronald Hanson that is virtually identical to his expert report;[4] and (iii) and the PTAB considered this evidence as to the very claims at issue. (*See* Joint Statement of Undisputed Facts (ECF No. 103) at ¶¶ 9-49; IPR Decisions (ECF Nos. 104-10, 104-11).) Princeton acknowledges the substantial overlap between the IPR proceedings and this case.[5] The assertion of several additional prior art references does not diminish that substantial overlap.

The Court should reject Princeton's conclusory assertion that IPR proceedings will cause confusion or undue prejudice. (*Cf.* Def.'s Memo. at 3.) Princeton itself intends to introduce the

---

[3] *See also, e.g., Dexcowin Glob., Inc. v. Aribex, Inc.*, No. CV 16-143-GW(AGRX), 2017 WL 3478492, at *3 (C.D. Cal. June 29, 2017) (same); *StoneEagle Servs., Inc. v. Pay–Plus Sols., Inc.*, No. 8:13-CV-2240-T-33MAP, 2015 WL 3824208, at *8-9 (M.D. Fla. June 19, 2015) (same).

[4] 42 of the 46 cited paragraphs from Hanson's report are identical, or virtually identical in all substance, to corresponding paragraphs of his IPR declarations.  (*See* (ECF No. 131-1).)

[5] *See, e.g.,* Def.'s Memo. of Law. in Supp. of Exped. Mot. to Stay (ECF No. 38) at 3 ("Resolution of those petitions at the PTAB will very likely streamline the issues to be adjudicated in this litigation"); *id.* at 4 (identifying a "risk" of "completely overlapping adjudication" of issues by the PTAB and the Court).

IPR petitions, thus opening the door. Further, the IPR decisions would help the jury evaluate validity, not confuse them. An explanatory instruction can obviate any purported concern about the burden of proof—which was **lower** before the PTAB.[6] The jury will be instructed on the patent examination process, including the USPTO's consideration of prior art. (*See, e.g.,* Joint Prop. Jury Instructions (ECF No. 168) at No. 2.) The IPR proceedings are an extension of that process. Princeton's argument that a different "standard of proof" applied at the IPR proceedings actually weighs against exclusion, because Princeton could not even meet that much lower standard, let alone the clear-and-convincing standard it must meet here. Furthermore, excluding the IPR denials would improperly permit Princeton to falsely suggest to the jury, or the jury to falsely assume, that the USPTO did not review the prior art Princeton claims invalidates, when, in fact, the USPTO found that Princeton's prior art reference did not even meet the lowest standard of "reasonable likelihood." To exclude them would be to exclude the truth and permit a jury misapprehension that the USPTO did not consider that prior art.

> **B.    No. 2: The Court Should Deny Princeton's Request to Exclude Expert Testimony Beyond the Disclosures Because SRAM Does Not Intend to Offer Such Testimony, and Princeton's Request Is Based on Mischaracterizations of the Reports and Opinions of SRAM's Experts.**

SRAM does not intend to introduce expert testimony beyond the scope of their respective reports and depositions, including supplemental reports, and the Court should deny this request on that basis.[7] Princeton's request goes far beyond its title, and is really a backdoor *Daubert* motion based on misstatements of law and mischaracterizations of expert opinions.

---

[6] *See, e.g., Dexcowin Glob.,* 2017 WL 3478492, at *3 ("[A]ny potential confusion can be addressed by appropriate jury instructions on the standard of proof applicable to patent invalidity defenses and counterclaims."); *StoneEagle*, 2015 WL 3824208 at *9 (same).

[7] SRAM does not intend, for example, to elicit testimony from Dr. Howle offering claim constructions different from the Court's, discussing any specific quantitative measurements of the radial

   i.  **Dr. Howle applied the claim terms as construed by the Court, he provided equivalents opinions permissible in light of prior art, and his summary judgment declaration is not untimely expert opinion.**

Dr. Howle applied the claim terms as construed by the Court, and thus did not need to file a supplemental report. (*Cf.* Def.'s Memo. at 6.) In concluding that Princeton's wheels infringe, Dr. Howle applied the plain, ordinary meaning of the claim terms to one skilled in the art, which he identifies in his report. (*See* Dr. Howle's Report (ECF No. 119-2) at ¶¶ 33, 36-37.) The Court adopted (directly or by stipulation) verbatim almost all of those meanings. At the May 12, 2022 status hearing, the Court recognized that the plain and ordinary meanings Dr. Howle identified "conform" to the Court's constructions:  "*I found the Howle declaration to conform time and time again with my own understanding of how these terms should be construed.*"  (May 12, 2022 Status Hearing Trans., SRAM Ex. 2, at 16:5-15 (emphasis added).) The Court continued: "Time and again, *Mr. Howle came up with his own view of how these terms should be construed, and the parties' later agreements . . . conformed to a significant degree with his own predictions of what those constructions should be*[.]" (*Id.* (emphasis added).) The chart below lists the meanings Dr. Howle identified and the Court's corresponding constructions.

---

distance of Princeton's wheels not already disclosed in his reports or deposition, or discussing any physical analysis of Princeton's PEAK 4550, other than to confirm that his deposition testimony that he reviewed a physical PEAK 4550, which confirmed his previously disclosed opinions about the PEAK 4550's infringement.

  SRAM's disclosures are in keeping with the Court's standards and in contrast to Princeton's latest, ill-timed assertion that, nearly two years into this case, Princeton apparently intends to challenge SRAM's standing to bring this lawsuit, which is a legal issue not previously identified in the parties' Joint Pretrial Stipulation (ECF No. 169), as something that the Court needed to resolve.

| Dr. Howle's Report[8] | The Court's Constructions[9] |
|---|---|
| "undulating configuration" = "*wavelike configuration*" | "undulating configuration" means "*wavelike configuration*" |
| "undulating curve configuration" = "*rounded wavelike configuration*" | "undulating curve configuration" means "*rounded wavelike configuration*" |
| "a radius" = "*a straight line drawn between a circle's center and any point on its circumference*" | "a radius" means "*a straight line drawn between a circle's center and any point on its circumference*" |
| continuously varies" = "*changes without interruption*" | "'continuously varies' means "*continuously changes*'" |
| "convex exterior profile" = "*outer side view having a rounded or curved form bulging toward the wheel's center*" | "'convex exterior profile' . . . would mean '*profile view having a rounded or curved form bulging towards the wheel center*'" |
| "convex profile" = "*side view having a rounded or curved form bulging toward the wheel's center*" | "'convex profile' would mean '*profile view having a rounded or curved form bulging towards the wheel center*'" |
| "convex regions" = "*areas having a rounded or curved form bulging toward the wheel's center*" | "convex region" will mean "*areas having a rounded or curved form bulging towards the wheel's center.*" |
| "peaks" = "*elevations*" and "troughs" = "*recesses*" | "'Peaks' and 'troughs' will be defined as '*peaks*' and '*valleys*'" |

The plain meanings Dr. Howle applied are identical or substantially similar to the Court's constructions. For "peaks" and "troughs," while Dr. Howle chose different synonyms than the Court,[10] he applied the same plain meaning of those terms, consistent with the Court's

---

[8] *See* Dr. Howle's Report (ECF No. 119-2) at 12.

[9] *See* Joint Stip. (ECF No. 85) at 1; Joint Stip. (ECF No. 93) at 1; May 12, 2022 Status Hearing Trans., SRAM Ex. 2, at 5:2-5, 13:12-13; *id.* at 15:11-12 ("SRAM's construction is consistent with ordinary language"); *id.* at 15:21-23 ("SRAM's definition—which is 'rounded or curved form bulging toward the wheel center'—aligns with this common meaning."); *id.* at 19:12-17; April 20, 2022 *Markman* Hearing Trans., SRAM Ex. 3, at 28:3-5, 8-9 ("Why couldn't we use something like 'continuously changes'? 'Changes' being a synonym of 'varies.' ... I think 'varies' is generally a plain word, although, 'changes' might just be more commonly used."); *id.* at 42:22 ("'valley' is the obvious synonym for 'trough.'"); *id.* at 43:7-13 ("you can come back and say you prefer 'peaks' and 'troughs,' but . . . I just think 'peaks' and 'valleys' is something they'll understand.").

[10] *See* April 20, 2022 *Markman* Hearing Transcript, SRAM Ex. 3, at 37:5-7 (". . . I think 'elevations' and 'recessions' is harder to understand than 'peaks' and 'troughs.' I think 'peaks' and 'troughs' is harder to understand than . . . 'peaks' and 'valleys.").

constructions.[11] Dr. Howle's report also shows that he used the actual terms "peaks" and "troughs" in reaching his infringement conclusions, not technical constructions that differ from the Court's.[12]

Dr. Howle also opined that the equivalents in his "doctrine of equivalents" ("DOE") analysis are within the permissible range of equivalency. Dr. Howle was not required to identify a hypothetical claim, as Princeton incorrectly contends, because the hypothetical-claim approach is optional, not mandatory. *See Jang v. Boston Sci. Corp.*, 872 F.3d 1275, 1285 n.4 (Fed. Cir. 2017) ("The hypothetical claim analysis is not the only method in which a district court can assess whether a doctrine of equivalents theory ensnares the prior art.").[13] Even if hypothetical claims were required (they're not), Dr. Howle implicitly identifies them through application of the "function-way-result" test for equivalency in his supplemental report. *See* Dr. Howle's Supp. Report (ECF No. 107-13) at ¶¶ 10-37; *VLSI Tech.,* 2022 WL 1477724, at *2, 10, 12 (plaintiff's technical expert "identified a hypothetical claim in support of his doctrine of equivalents theory" through application of the "function-way-result test"). Finally, Dr. Howle provided opinions that the asserted equivalents are within the permissible range of equivalency compared to prior art. In

---

[11] *Compare* Dr. Howle's Report (ECF No. 119-2) at ¶¶ 35-36 ("to the extent any construction is necessary, the plain and ordinary meaning of these claim terms should control"), *with* April 20, 2022 *Markman* Hearing Trans., <u>SRAM Ex. 3</u>, at 55:10-12 ("There is no necessity for construing the word 'peak' . . . because everybody knows what it means"); *id.* at 42:22 ("'valley' is the obvious synonym for 'trough'"); *id.* at 43:12-13 ("'peaks' and 'valleys' is something they'll understand.").

[12] *See* Dr. Howle's Report (ECF No. 119-2) at ¶ 45 ("adjacent ***peaks*** and adjacent ***troughs*** periodically occluded the horizontal beam segment."); *id.* at ¶ 46 ("the radial distance between the hub and the radially inner edge ***continuously varies*** between adjacent ***peaks*** and ***continuously varies*** between adjacent ***troughs***."); *id.* at ¶ 49 ("the WAKE 6560 bicycle wheel practices the claim element '*each **peak** of the **undulating configuration** having a **convex exterior profile** in a plane of the wheel*'.") (emphasis added).

[13] *See, e.g., Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576 (Fed. Cir. 1994) ("While the hypothetical claim analysis is a useful methodology . . . nothing in *Wilson* mandates its use"); *VLSI Tech., LLC v. Intel Corp.*, 6:21-CV-057-ADA, 2022 WL 1477724, at *18 (W.D. Tex. May 10, 2022) ("a hypothetical claim was not required for this Court to determine whether [plaintiff's] DOE theory ensnares the prior art."); *OptoLum, Inc. v. Cree, Inc.*, 490 F. Supp. 3d 916, 935 (M.D.N.C. 2020) ("the Federal Circuit has not mandated the application of a hypothetical claim analysis").

his supplemental report, Dr. Howle incorporates and reaffirms his original report regarding the asserted claims' validity in light of the prior art Princeton raised, which opinions apply with equal force to any equivalents. (*See* Dr. Howle's Supp. Report (ECF No. 107-13) at ¶ 2.) The Federal Circuit approves as "desirable" an expert's incorporation of prior testimony into DOE analysis. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1305 (Fed. Cir. 2007).

Finally, Dr. Howle's summary judgment declaration is not, as Princeton baldly reasserts, "untimely expert opinion." His declaration instead corrected Princeton's mischaracterizations of Dr. Howle's opinions (*e.g.,* that he did not measure Princeton's wheels, when, in fact, he did) and contained **factual** (not opinion) observations and descriptions. (*See* (ECF No. 142) at 3-6.)

### ii.   Mr. Perdue provided opinions on apportionment and consideration of purported non-infringing alternatives, as the Court already found.

The Court ruled in denying Princeton's *Daubert* motion that Mr. Perdue "apportioned his royalty rate" and that "apportioning the rate is sufficient."[14] As the Court recognized, Mr. Perdue apportions the rate (rather than the base) through consideration of royalty rates for comparable technology and application of the *Georgia-Pacific* factors, especially factors 9, 10, and 11, which, together, calibrate the rate to the value of the undulating configuration, and the Federal Circuit approved this methodology. *See, e.g., Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348-49 (Fed. Cir. 2018). The Court also ruled that Mr. Perdue accounted for—rather than "ignored"—the potential existence of other small suppliers of carbon undulating wheels.[15] Mr. Perdue observed that SRAM and Princeton are the only two significant (or "relevant") suppliers based on his thorough analysis of the market for high-performance bicycle

---

[14] *See* Jan. 20, 2023 Trans. of Ruling, <u>SRAM Ex. 4</u>,  at 11:15-16, 24.

[15] *See id.* at 25:8-20.

wheels and interviews with knowledgeable market participants.[16] This is consistent with Federal Circuit precedent holding that for a two-supplier market to exist, the two parties must be the only two **significant** suppliers. *See, e.g., Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1322 (Fed. Cir. 1990) (collecting cases) ("There is precedent for finding causation despite an alternative source of supply if that source . . . has insignificant sales."). The Court further ruled that "Mr. Perdue's report adequately supports his view that" there are "'no non-infringing substitutes for the claimed wheel,'" which support includes his careful consideration of substantial materials regarding the high-performance bicycle-wheel market, including both undulating and non-undulating wheels, as set forth in Exhibit 2R to his report.[17] Mr. Perdue did not "fail to consider" any such alternatives, as Princeton incorrectly argues.

**C.    No. 3: The Court Should Deny Princeton's Lost-Profits Request Because the Evidence at Trial Will Allow the Jury to Calculate SRAM's Lost Profits on All, or a Portion of, Princeton's Sales of Carbon Undulating Wheels.**

SRAM seeks lost profits on all of the carbon undulating wheels Princeton sold. However, if the jury determines that SRAM is entitled to lost profits on only a portion of those sales, the evidence at trial will allow the jury to calculate that amount. The Federal Circuit's framework for patent-infringement damages allows for recovery of lost profits based on all, or a portion of, the infringer's sales, even without evidence of market share. "To recover lost profits damages, the

---

[16] *See, e.g.,* Perdue Report (ECF No. 124-2), at pp. 12-15, 29-32.

[17] *See, e.g.,* Jan. 20, 2023 Trans. of Ruling, <u>SRAM Ex. 4</u>, at 19:4-23, 23:11-15; Perdue Report (ECF No. 124-2), at 2R, Rows 68-94, 104-112, 115, 117, 122-26, 129, 130-137, 183-218, 141-182 (identifying the following as materials Mr. Perdue considered: (i) bicycle industry articles identifying and reviewing more than 100 bicycle wheels, including wheels for road bikes, gravel bikes, and triathlons; (ii) discussions with personnel knowledgeable about the market for high performance bicycle wheels; (iii) discussion with a bike shop representative at Trail and Fitness in Nashville, Tennessee; (iv) SRAM's website for Zipp high performance bicycle wheels; (v) industry literature providing commentary on the Zipp and Princeton carbon undulating wheels; and (vi) product information for SRAM and Princeton carbon undulating wheels).

patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). When the patentee makes that showing through satisfaction of the *Panduit* or the "two-supplier" test, the burden shifts to the infringer to show "that the inference is unreasonable for ***some or all*** of the lost sales." *Id.* (emphasis added).[18] Thus, "it is quite common to see damage awards where" the patentee "proves entitlement to lost profits for ***some of its sales, but not others***." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017) (emphasis added).

Lost profits can thus be based on a portion of a plaintiff's lost sales. *See, e.g., King Instruments Corp. v. Perego*, 65 F.3d 941, 953 (Fed. Cir. 1995) (affirming award of lost profits where the district court reduced plaintiff's lost sales below the number plaintiff claimed to have lost, using evidence of the total number of lost sales in units and plaintiff's profit margin); *Yarway Corp v. Eur-Control USA, Inc.*, 775 F.2d 268, 272, 275 (Fed. Cir. 1985) (affirming award of lost profits in which the district court reduced plaintiff's lost sales from 100 percent of defendant's sales to 85 percent to "reflect sales by [defendant] to customers either unknown or inaccessible to" plaintiff).[19]

Similar evidence and reasoning would support an award of lost profits on a portion of Princeton's infringing sales. What those lost sales are is a factual question for the jury. If the jury finds that SRAM would not have sold *all* of the wheels Princeton did, they can calculate lost sales by the number of units and SRAM's gross profit per wheel. For instance, Exhibit 11R to the

---

[18] *See also Micro Chem., Inc. v. Lextron, Inc.,* 318 F.3d 1119, 1125 (Fed. Cir. 2003) ("The infringer may rebut the presumption by showing that the patentee reasonably would not have made ***some or all*** of the diverted sales") (emphasis added).

[19] *See also, e.g., Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1277, 1289 (Fed. Cir. 2011) ("district court did not abuse its discretion in reducing the jury's damages award regarding lost profits and "therefore awarded lost profits damages" in an amount less than plaintiff sought "based on the per scanner profit estimate of [plaintiff's] damages expert.").

supplemental report of SRAM's damages expert, Glenn Perdue, identifies the number of Princeton wheels sold, along with SRAM's corresponding adjusted gross profit per wheel. (*See* Perdue Jan. 30, 2023 Supp. Report, <u>SRAM Ex. 5</u>, at Ex. 11R.) The jury would have a clear evidentiary basis for awarding SRAM lost profits on a portion of Princeton's infringing sales. None of the cases Princeton cites hold otherwise, and its argument belies common sense. By Princeton's logic, if the jury found that SRAM would not have sold its carbon undulating wheels to just one of Princeton's customers, SRAM could not recover lost profits on any of the thousands of other sales.  That is not the law, and the Court should deny Princeton's request.

D. **No. 4.a: The Court Should Deny Princeton's Request to Bar Comparisons with the Embodiments Depicted in The Patents-In-Suit, Because Those Embodiments Are Within the Claim's Scope, Are Relevant, and References to Them Will Help the Jury.**

The Court should deny Princeton's request to hide key parts of the Patents-in-Suit from the jury—Figures 1, 3, and 12(c) depicting embodiments of the claimed invention:



The '800 Patent states that each of these embodies the claimed invention, with Figures 1 and 3 depicting the same embodiment from different perspectives.[20] Even Princeton's own technical

---

[20] *See* '800 Patent (ECF No. 57-3) at Col. 7, Line 13 ("FIG. **1** is a side view of a first embodiment of a wheel according to the invention"); *id.* at Lines 17-18 ("FIG. **3** is a perspective view of the wheel of

expert, Ronald Hanson, acknowledges that Figure 1 is an embodiment of the patent claims, which necessarily also includes Figure 3, and he has not contested that 12(c) is as well.[21] SRAM's technical expert, Dr. Howle, opines that Figure 1 (thus also Figure 3) and Figure 12(c) are claimed embodiments, and Dimitris Katsanis, the inventor, will testify that these figures embody the claimed invention.[22]

These embodiments will help explain the invention to the jury and provide context for the asserted claims. This may include, for example, testimony that the figures embody the claimed invention, explaining how they do so, and how they illustrate the claim limitations. Contrary to Princeton's assertion (*cf.* Def.'s Memo. at 11-12), the Federal Circuit has held that "[o]ur case law does not contain a blanket prohibition against comparing the accused product to a commercial embodiment." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1288 (Fed. Cir. 2010); *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1301 (Fed. Cir. 2012) (same). "[W]hen a commercial product meets all of the claim limitations," as the evidence will show here for the embodiments in the patent figures, "a comparison to that product may support a finding of infringement." *Adams Respiratory Therapeutics*, 616 F.3d at 1289.

---

FIGs. **1** and **2**"); *id.* at Lines 33-35 ("FIG. **12** shows side views of two conventional wheels, and two wheels according to the invention, which underwent CFD analysis").

[21] *See* Hanson Report on Non-Infringement <u>SRAM Ex. 6</u>, at ¶ 54 ("The Asserted Patents disclose several different embodiments of wheels incorporating the undulating configuration.  A first embodiment is shown in Figure 1"); Ronald Hanson Report on Invalidity (ECF No. 104-14) at ¶ 48 (same).

[22] Dr. Howle Report (ECF No. 119-2) at ¶ 31 ("The '800 and '188 patents, invented by Dimitrios Katsansis, disclose novel and unique solutions to overcome or substantially mitigate some or all of these problems and disadvantages of the prior art, namely a design with an undulating or wavelike configuration for the radially inner edge of the wheel rim that provides aerodynamic advantages over the prior art, with an example of such an undulating configuration shown in Figure 1 of the '800 and '188 patents: 32."); Dr. Howle's Rebuttal Report on Validity (ECF No. 104-37) at ¶ 42 (same); L. Howle Depo., <u>SRAM Ex. 7</u>, at 27:24-28:22 (testifying that the wheel depicted in Figure 12(c) is a "wheel according to the invention"); *id.* at 34:17-35:8 (testifying that the wheel depicted in paragraph 31 of his expert report, which is Figure 1 from the Patents-In-Suit, is a "side view of an embodiment of a wheel according to the invention").

Applying this principle, the Federal Circuit and various federal district courts have rejected attempts to exclude, and challenges to, comparisons between accused products and embodiments of the asserted patents. *See, e.g., TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 788 (Fed. Cir. 2019) (no abuse of discretion in permitting comparison of defendant's accused product with commercial embodiment of asserted patent, where defendant's "own expert . . . acknowledged that he understood the [plaintiff's product] to be an 'embodying device' and to 'practice [] the [asserted patent].'"); *Merial Ltd.*, 581 F.3d at 1301 (district court did not err in comparing accused product with plaintiff's commercial embodiment of asserted patent where "[i]t is undisputed that the [commercial embodiment] is covered by the [asserted patent's] claims").[23] Courts also permit use of patent figures to help explain the invention to the jury, provide context for the asserted claims, and help prove willfulness.[24] *TEK Global*, 920 F.3d 777, does not preclude a comparison between Princeton's carbon undulating wheels and the patent figures, as Princeton contends. There, the Federal Circuit held that it was *not* error for patentee to compare the accused products to a commercial embodiment that practiced the asserted claims. *Id.* at 787-88. *Catalina Lighting,*

[23] *See also Glaxo Group Ltd. v. TorPharm, Inc.*, 153 F.3d 1366, 1372–73 (Fed. Cir. 1998) (rejecting argument that comparison of accused product to commercial embodiment of asserted patent did not provide evidence of infringement, because plaintiff verified that the commercial embodiment contained the asserted patent claim limitations); *Sioux Steel Co. v. Prairie Land Mill Wright Servs.*, No. 16-CV-2212, 2022 WL 17082541, at *3 (N.D. Ill. Nov. 18, 2022) (denying motion to exclude comparison of accused products with commercial embodiments); *Summer Infant (USA), Inc. v. TOMY Int'l, Inc.*, No. CV 17-549MSM, 2022 WL 3909285, at *13 (D.R.I. Aug. 31, 2022) (denying motion to exclude comparison of accused products with commercial embodiment of claimed invention because "[s]uch a comparison is not error, but is permissible to support infringement arguments when, as [defendant] claims, the commercial embodiment meets all of the limitations of at least one claim.").

[24] *See, e.g., Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, No. 8:10CV187, 2015 WL 5177759, at *7 (D. Neb. Sept. 4, 2015), *aff'd in part, vacated in part on other grounds*, 879 F.3d 1332 (Fed. Cir. 2018) (denying motion *in limine* to exclude, among other things, "comparisons between the accused products and the preferred or commercial embodiments of the [asserted] patent" because "the evidence is relevant" to, among other things, "help explain the invention and provide context to the claims and are relevant to willfulness and damages").

*Inc. v. Lamps Plus, Inc.,* 295 F.3d 1277 (Fed. Cir. 2002) does not support Princeton's position either.  It held that an ***infringer*** cannot ***disprove*** infringement by showing that the accused device differs from one of multiple embodiments depicted in patent figures. *See id.* at 1286. The unpublished federal district court decisions Princeton cites are distinguishable on the same basis.[25]

Comparisons between Princeton's infringing wheels and embodiments depicted in the Patents-in-Suit will not confuse or mislead the jury. To the contrary, the comparisons will help the jury understand the claimed invention and how it relates to Princeton's wheels.  Further, the jury will be instructed to compare Princeton's wheels to the asserted claims of the Patents-in-Suit as construed by the Court in determining infringement.  (*See* Joint Proposed Jury Instructions (ECF No. 168) at No. 21.) A cautionary instruction can address any supposed remaining potential for confusion.[26]

E.    **No. 4.b: The Court Should Deny Princeton's Request to Exclude Evidence of Princeton's Patent Application, Because the Application Describes the Accused Wheels, as Princeton Admits, and Thus Is Relevant to Infringement, Validity, and Willfulness.**

Harrison Macris, a co-founder and the CEO of Princeton, and Bradley Werntz, another co-founder and former CTO of Princeton, applied for a patent on Princeton's infringing carbon undulating wheels, including the WAKE 6560. They submitted both a provisional application and a non-provisional utility application. (*See* Provisional Patent Application, No. 62/417,053 ("Provisional Application") (ECF No. 119-9); File History of Non-Provisional Patent Application

---

[25] *Cf. Acorn Semi, LLC v. Samsung Elecs. Co., Ltd. et al.*, Civ. No. 2-19-cv-00347, Dkt. No. 331, Order on Pretrial Motions at 10 (E.D.Tex. April 29, 2021) (granting ***plaintiff's*** motion *in limine* to exclude a comparison between the accused products to the preferred embodiments of the patents) (emphasis added); *Barkan Wireless IP Holdings, LP v. T-Mobile US, Inc. et al.*, Civ. No. 2-21-cv-00034, Dkt. No. 227, Order on Motions in Limine at 7 (E.D.Tex. Dec. 16, 2021) (granting ***plaintiff's*** motion *in limine* to exclude "*non-infringement arguments* based on preferred embodiments") (emphasis added).

[26] *See, e.g., TEK Global*, 920 F.3d at 789 (cautionary instruction was "sufficient to mitigate any potential jury confusion").

No. 15/803,658 ("Non-Provisional Application"), (ECF No. 119-10).) Princeton is listed as the "Applicant" and "Assignee" of the claimed invention. (*See* Non-Provisional App. at SRAM-P02187.) Mr. Macris admitted in his deposition that the applications are for a version of Princeton's WAKE 6560 wheel.  (*See* H. Macris Depo., <u>SRAM Ex. 8</u>, at 72:17-24; *id.* at 114:5-11 (same).) The applications describe Princeton's wheels in detail, including its design, structure, and functions.[27] Such statements by Princeton's co-founders (and adopted by Princeton) regarding the very wheels accused of infringing are plainly relevant and should be subject to examination at trial.

Moreover, the applications and file history are also relevant to willfulness and rebut Princeton's claim that the patents are obvious. For instance, the Information Disclosure Statement cites, and includes a copy of, Dimitris Katsanis' PCT application for the invention claimed in the Patents-in-Suit, ***as prior art***.  (*See* Non-Provisional App.  (ECF No. 119-10), at SRAM-P02215, 2216-2257.) This shows that Princeton knew about Mr. Katsanis' patent during the application process, but chose to proceed selling its infringing wheels anyway. The patent applications are also relevant to validity. The applications and statements made therein show that Princeton's co-founders believed that the concept of undulating bicycle wheels was novel and patentable, belying Princeton's contrary assertions of obviousness here. Reinforcing the above reasoning, several federal courts have recognized that a defendant's patent application related to the accused product, including an abandoned application, is "obviously" relevant.[28]

---

[27] *See, e.g.,* Non-Provisional App. (ECF No. 119-10), at SRAM-P02194 (describing "[a]n improved wheel" that "includes a variable cross-sectional profile rim" that "optionally varies in depth (radial direction)," including "in a systematic, radially-symmetric, and/or patterned way"); *id.* at SRAM-P02195 (explaining that "[t]he radially extended portions form an undulating shape" with "peaks" and "troughs," and describing the "undulating shape" as one that may be a "a constant amplitude sinusoid superimposed on a circle").

[28] *See, e.g., Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. CIV. 10-0541-LAB(WVG), 2011 WL 5525990, at *1 (S.D. Cal. Nov. 14, 2011) ("relevance of the patent applications is obvious to the

The jury will not confuse Princeton's patent applications with the Patents-in-Suit because SRAM will not be comparing them. (*Cf.* Def.'s Memo. at 14.) Rather, SRAM will offer the applications to show how Princeton described its own wheels. Based on the applications, witness testimony, and the jury instructions describing and mandating application of the Patents-in-Suit, the jury will readily understand the difference between the Patents-in-Suit and Princeton's abandoned applications. (*See, e.g.,* Joint Proposed Jury Instructions (ECF No. 168) at Nos. 3, 4, and 19.) The cases Princeton cites do not support their argument for exclusion. In *Forest Lab'ys, Inc. v. Abbott Lab'ys*, 239 F.3d 1305 (Fed. Cir. 2001), the court's discussion of the relative weight of defendant's patent application as evidence of infringement at trial confirms that the application was admitted into evidence, even though, in that case (unlike here), there was a dispute about whether the application described the infringing product. *See id.* at 1312-13. Similarly, in *Sherwin-Williams Co. v. PPG Indus., Inc.*, No. CV 17-1023, 2020 WL 5077547 (W.D. Pa. Aug. 27, 2020), the court ruled on a different issue: that defendant's "entirely different patent application" did not "relate to secondary considerations of nonobviousness about the Asserted Patent." *See id.* at *4.

**F.     No. 5: The Court Should Deny Princeton's Request to Exclude Mr. Wesling's Testimony Because Testimony About His Observations of Princeton's Wheels Is Not Impermissible Expert Opinion.**

In his summary judgment declaration, Mr. Wesling describes Princeton's carbon undulating wheels based on his own review of them, and states whether those wheels have certain features described in the Patents-in-Suit (including, for example, a radial distance that continuously varies and convex exterior profiles). This is permissible lay-witness testimony, not

---

Court" because, *inter alia*, "[r]elevant evidence regarding willful infringement, prior art, and equivalency may be present within Defendants' two patent applications."); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, No. 79-C-499, 1980 WL 30340, at *1-2 (E.D. Wis. Aug. 26, 1980) ("defendant's patent application" covering accused product had "direct relevance to the matters at issue in this suit," including that "it contains a full description of the allegedly infringing machine and a statement of the prior art.").

expert opinion. *See, e.g., Composite Res. Inc. v. Recon Med. LLC*, No. 217-CV-01755-MMD-VCF, 2021 WL 5501104, at *4 (D. Nev. Nov. 22, 2021) (denying motion *in limine* and agreeing with plaintiff that witness "is not an expert witness, and the Court should not exclude him as a lay witness because he has inspected [defendant's] [accused products] . . . and therefore has personal knowledge of whether they must have been made using the process described in the [asserted patent]").[29]  The case Princeton cites does not hold otherwise.  *Cf. HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 689 (Fed. Cir. 2020) (testimony "directed to the conclusion of obviousness and its underlying technical questions, is the province of qualified experts, not lay witnesses.").

Even if Mr. Wesling's testimony is somehow characterized as expert opinion, it was timely disclosed.[30]  SRAM identified Mr. Wesling in its Rule 26 disclosures as one of its primary witnesses having knowledge about the Patents-in-Suit as well as Princeton's wheels and their operation. (*See* ECF No. 45-1 at 2.)  Mr. Wesling was produced for deposition in his role as SRAM's corporate representative for multiple topics, including identity of products practicing the asserted claims and Princeton's infringement.  (*See* Princeton's Rule 30(b)(6) Notice (ECF No. 143-4) at 6-8, 11; Kevin Wesling Depo. (ECF No. 143-5) at 17:11, 21:21, 23:12-18, 26:13-22.)  Princeton asked Mr. Wesling whether he reviewed Princeton's wheels, analyzed them, and

---

[29] *See also, e.g., Steyr Arms, Inc. v. Beretta USA Corp.*, No. 2:15-CV-01718-MHH, 2020 WL 2767359, at *5-6 (N.D. Ala. May 28, 2020) (declaration of defendant's employee describing "the relevant component parts of the [accused product]" and identifying "structures in the Court's Claim Construction Order that are not present in the [accused product]" was "admissible lay witness testimony."); *Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2021 WL 3021253, at *3 (E.D. Tex. Feb. 26, 2021) (denying, in part, motion *in limine*, and concluding that "lay witnesses may provide facts within their personal knowledge about the structure, function or operation of the accused products.").

[30] Mr. Wesling is not a retained expert whose duties regularly involve giving expert testimony, and thus was not required to submit a report under Rule 26(a)(2).  If he is deemed to have provided expert opinions, SRAM need only have disclosed the subject matter on which he is expected to testify and the facts and opinions associated therewith, which it did. *See* Fed. R. Civ. P. 26(a)(2)(C).

determined that they included certain features. (*See id.* at 57:16,  58:20, 152:22, 159:14, 160:13, 161:10, 195:10-13.)  Mr. Wesling's testimony was timely disclosed.[31]

G.     **No. 6: The Court Should Deny Princeton's Request to Exclude its Unsuccessful Repeated Attempts to License the Patents-in-Suit from Inventor Dimitris Katsanis Because Those Attempts Are Directly Relevant to Issues of Infringement, Validity, and Willfulness.**

In March 2017, Princeton's co-founder and CEO, Harrison Macris, exchanged written communications via LinkedIn and email with the inventor of the Patents-in-Suit, Dimitris Katsanis. (*See* Mar. 29, 2017 LinkedIn Message (Pl.'s Ex. 80), SRAM Ex. 9; March 29, 2017 Email Exchange (Pl.'s Ex. 47) SRAM Ex. 10.) Mr. Macris made statements about Princeton's carbon undulating wheels and Mr. Katsanis's '800 Patent, including that he believed Princeton's wheel design to be "incredibly new, novel, and unheard of," that Princeton's purported design "would be very difficult to re-patent" in light of the '800 Patent, and that Princeton "would like to examine the possibility of a limited use license or otherwise" under that patent. (*See* SRAM Ex. 10, at 000985.) In response, Mr. Katsanis stated that SRAM's 454 carbon undulating wheel "is the first product that is using this patent," that SRAM has "exclusive rights to the patent," and that he did not believe SRAM would be interested in sharing the technology. (*See id.* at DKATSANIS_000984.) Princeton contacted Mr. Katsanis again in March 2018, exploring "any avenues that could exist in working together in the future." (*See* March 23, 2018 Email (Pl.'s Ex. 22) SRAM Ex. 11, at 0006719.)

---

[31] *See, e.g., 523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 636 (S.D.N.Y. 2014) (rejecting argument that declarations of two lay witnesses should be excluded as "previously undisclosed expert testimony," in part because the declarants "were disclosed as individuals likely to have discoverable information in [the proffering party's] Rule 26 disclosures" thus the movant "had ample time and opportunity to depose either or both [witnesses], and did in fact depose [one of the witnesses]").

The communications are highly relevant to infringement because they show that Princeton knew the design for its undulating wheels would be difficult to patent in light of the '800 Patent, and expressed a desire to obtain a license, thus acknowledging that the '800 Patent covers Princeton's wheels. These communications are also relevant to validity, as Princeton's statement that its carbon undulating wheels "seemed incredibly new, novel, and unheard of" belies its contrary contention here that the design is obvious. Finally, these communications are also relevant to the willfulness of Princeton's infringement. They show not only that Princeton knew about the '800 Patent, but also that Princeton: (i) believed the patent covered its carbon undulating wheels; (ii) unsuccessfully attempted to obtain a license under the patent; (iii) learned that SRAM was the exclusive licensee; and (iv) nevertheless proceeded to market and sell their own carbon undulating wheels anyway.  This is highly relevant and persuasive evidence of willfulness, as numerous courts have found. *See, e.g., Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (evidence supported willfulness where defendant "unsuccessfully tried to buy asserted patents through a third party."); *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1022 (N.D. Cal. 2019) ("evidence that" the defendant "'unsuccessfully tried to [license] the asserted patents' further supports a finding of willfulness.") (brackets original).[32] Further, although not a request to Mr. Katsanis for a license, the internal email communication between Princeton personnel in October 2017 forwarding a hyperlink to Mr. Katsanis's published

---

[32] *See also, e.g., Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, No. 2:17-CV-07639 SJO-KS, 2020 WL 2844410, at *7 (C.D. Cal. Apr. 2, 2020) (defendant's "behavior rises to the level of . . . willful infringement" where defendant "attempted aggressively to license the [asserted patent], affirmatively attempted to invalidate the [the asserted patent] by filing an IPR, then when neither of those steps was successful, chose to accelerate [the accused product] to market"); *Corning Glass Works v. Anchor Hocking Glass Corp.*, 300 F. Supp. 1299, 1304–05 (D. Del. 1969) (defendant's infringement "has been deliberate and intentional" where "Defendant's executives . . . requested a license under the patent in suit" and after it was refused "made a firm decision to go right ahead with the development and marketing of a competing product").

international PCT Application and requesting a discussion about it is likewise relevant to infringement and willfulness, as it confirms and further demonstrates that Princeton knew of, and were talking about, Mr. Katsanis's patent, and yet proceeded to sell their wheels anyway. (*See* Oct. 17, 2017 Email Exchange (Pl.'s Ex. 31), <u>SRAM Ex. 12</u>.)

Princeton's conclusory assertion that this evidence is "confusing or misleading" is simply not accurate and does not discharge Princeton's burden of showing that any supposed danger of unfair prejudice "substantially outweighs" the evidence's considerable probative value. *Cf.* Fed. R. Evid. 403. Princeton's purported challenges to this evidence (*i.e.,* that it does not suggest Princeton knowingly infringed and that the communications were in the context of Princeton's abandoned patent application) are characterizations and factual arguments they may raise to the jury at trial, not grounds for exclusion.

**H.     No. 7: The Court Should Deny as Moot Princeton's Request to Exclude References to It as "Princeton," Because Princeton Has Withdrawn That Request.**

Princeton has agreed to withdraw this request after counsel for the parties met and conferred regarding certain of their requests for exclusion of evidence *in limine*. (*See* M. Hickey Decl., filed herewith, at ¶ 15.) The Court should therefore deny this request as moot.

**III.     <u>CONCLUSION</u>**

SRAM requests that the Court deny Princeton's Omnibus Motion *In Limine* in its entirety.

Dated: January 31, 2023                    Respectfully submitted,

**LEWIS RICE LLC**

By:     /s/ Richard B. Walsh, Jr.
        Richard B. Walsh, Jr., admitted *pro hac vice*
        Michael J. Hickey, admitted pro hac vice
        Edward T. Pivin, admitted pro hac vice
       600 Washington Ave., Suite 2500

St. Louis, Missouri  63101
Telephone:  (314) 444-7600
Facsimile:  (314) 241-6056

**SHUTTS & BOWEN LLP**

By:____ /s/ Eric Christu_____
      Eric Christu
      525 Okeechobee Boulevard, Suite 1100
      West Palm Beach, FL  33401
      Telephone:  (561) 650-8556
      Facsimile:  (561) 671-5900

      *Attorneys for Plaintiff SRAM, LLC*

21

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 31, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record and parties identified on the Service List via transmission of a notice of electronic filing generated by CM/ECF or through other approved means.

By:           /s/ Eric C. Christu             
                       COUNSEL

David S. Brafman, Esq.
AKERMAN LLP
777 South Flagler Drive, Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Email: david.brafman@akerman.com
*Attorneys for Defendant Princeton Carbon Works Inc.*

James M. Wodarski,Esq.*
Andre H. DeVoogd, Esq.*
Matthew S. Galica, Esq.*
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
One Financial Center, Boston, MA 02111
Telephone: (617) 542-6000
Facsimile:  (617) 542-2241
Email: JWodarski@mintz.com
Email: AHDeVoogd@mintz.com
Email: MSGalica@mintz.com
*\* admitted Pro Hac Vice*
*Attorneys for Defendant Princeton Carbon Works Inc.*

22