# EXHIBIT 4 to HICKEY DECLARATION

*UNITED STATES DISTRICT COURT*

*SOUTHERN DISTRICT OF FLORIDA*

*MIAMI DIVISION*

*CASE NO. 21-80581-CIV-RKA*

*SRAM, LLC,*                              . *Miami, Florida*
                                         . *February 16, 2023*
           *Plaintiff,*                  . *10:09 A.M.*
                                         .
              *v.*                       .
                                         .
*PRINCETON CARBON WORKS, INC.,* .
                                         .
           *Defendant.*                  .
. . . . . . . . . . . . . ..

_ _ _ _ _

*Transcript of Trial Proceedings had*

*before the Honorable Roy K. Altman,*

*United States District Judge, and a Jury.*

_ _ _ _ _

*VOLUME 4*

_ _ _ _ _

*Proceedings recorded by mechanical stenography, transcript
produced by computer.*

HOWLE - DIRECT/HICKEY

1  ideal case.

2  Q.  And so when you're talking about that steering moment, what

3  are you referring to from a standpoint of what the rider has to

4  do?

5  A.  So steering moment needs to be corrected by the rider.  So

6  zero steering moment means no correction for that force is

7  required.

8  Q.  So the -- would it be fair to say that the rider doesn't --

9  in that situation doesn't have to use any energy or any force

10  in order to correct, is that right?

11  A.  Yes, sir.

12  Q.  So looking at claim 1 of the '800 patent, what can you tell

13  the jury about claim 1?

14  A.  So this claim discusses the various elements that is in one

15  realization or one embodiment of his invention.

16       And would you like me to go through those?

17  Q.  Sure.

18  A.  All right.  So let's just read this from the top.

19       So this claim 1 is claiming:

20       "A wheel for use with a bicycle, the wheel

21       comprising:  A hub for mounting the wheel to a

22       bicycle; a rim about which a tire is mountable; and a

23       plurality of spokes extending between the hub and the

24       rim, wherein the rim has a radially inner edge, and

25       wherein at least part of the radially inner edge has

972
HOWLE – DIRECT/HICKEY

1          an undulating configuration and a radial distance that

2          continuously varies between adjacent peaks and troughs

3          of the undulating configuration, each peak of the

4          undulating configuration having a convex exterior

5          profile in a plane of the wheel."

6     Q.   And have you compared claim 1 of the '800 patent with the

7     embodiment that's shown in Figure 1 of the '800 patent?

8     A.   Yes, sir, claim term by claim term I have.

9     Q.   And what are your conclusions and opinions with respect to

10    the embodiment depicted in Figure 1 of the '800 patent compared

11    to claim 1 of the '800 patent?

12    A.   All right.  So in this case, I'll just break this down

13    element by element.

14          So the first one shows "a wheel for use with a

15    bicycle, the wheel comprising" -- and obviously that's a wheel

16    for use with a bicycle.

17          "A hub for mounting the wheel to a bicycle."  The hub

18    is indicated by the arrow here (indicating).

19          "A rim about which a tire is mountable."  So my

20    annotation to there shows the rim.

21          "A plurality of spokes" -- so more than one spoke, so

22    here are two (indicating).

23          Then "the rim has a radially inner edge," which is

24    depicted by the annotated arrow, the red arrow, that's the

25    radially inner edge of the rim.

HOWLE - DIRECT/HICKEY

1   Q.  What do you mean by the "radially inner edge"?

2   A.  It's the one that faces the hub.  So the radius we can

3   define as a line between the center of the hub and a point to

4   the inside surface of the rim.  So the radially inner is the

5   portion that would really face the hub *(indicating)*.

6          So here, "wherein at least a part of the radially

7   inner edge has an undulating configuration" --

8   Q.  What's depicted here by the pink?

9   A.  So the pink, first, is a conventional circular

10  configuration.  So a standard bicycle wheel would not have --

11  that does not have these undulations as shown by that pink

12  curve, so it's more like a circle.

13         And then the undulating or wavelike configuration is

14  the object of Mr. Katsanis' invention, and that's shown with

15  the red outline in this figure.

16  Q.  And what is shown next, Dr. Howle?

17  A.  So the next element is "a radial distance that continuously

18  varies between adjacent peaks and troughs."  So here is one

19  radius going to a different point -- or going to a point on the

20  inside surface of the rim.  And so for the pink, that would be

21  a depiction of a bicycle wheel without an undulating rim.

22         Then here you can see the same radial distance.  No

23  matter where around the 360 degrees you place that, we have the

24  same radial distance.  And to contrast that, in the red, that's

25  the undulating or wavelike configuration.  So this continuously

HOWLE - DIRECT/HICKEY

1  varies, so it has a changing radial distance as you sweep that

2  same 360 degrees.  And also shown on here are the adjacent

3  peaks and troughs.

4  Q.  And moving to the last limitation of claim 1 of the '800

5  patent, what's your opinion on this?

6  A.  So the final claim element here is "each peak of the

7  undulating configuration having a convex exterior profile in a

8  plane of the wheel."  So a "plane of a wheel" would just be a

9  cross-section, so you can look at the profile that is the

10  intersection of that surface on that cross-section.  And here

11  I'm just showing the peaks, and these peaks have a convex

12  exterior profile.  In other words, they bulge out or bulge

13  toward the hub.

14  Q.  So what is your conclusion with respect to whether

15  Figure 1 -- the Figure 1 embodiment of the '800 patent is --

16  meets all of the limitations of claim 1 of the '800 patent?

17  A.  So Figure 1 is certainly an embodiment that practices all

18  of these claim elements that are listed here in claim 1.

19  Q.  And if we turn to claim 1 of the '188 patent, could you

20  explain any differences with respect to -- sorry -- the '800

21  patent, the claim that we just reviewed?

22  A.  Certainly.

23       So the '188 patent does not generally have the

24  restriction that it's continually varying.  And also, there's

25  another change, uhm, here at the end -- "wherein the radially

HOWLE – DIRECT/HICKEY

1    inner edge has convex profiles in convex regions of the rim,

2    the convex regions including the peaks."

3    Q.  So if we do the same thing here, walking through claim 1 of

4    the '188 patent, with respect to the first four elements, what

5    is your opinion with respect to whether Figure 1 of the '188

6    patent meets the first four elements?

7    A.  So the first four elements are the same as with the other

8    claim, the claim of the '800 patent.  So those are still

9    present under this claim.

10   Q.  And then with respect to the undulating curve

11   configuration, does Figure 1 of the '188 patent meet that

12   limitation?

13   A.  Yes.  So this one is:  "Wherein at least part of the

14   radially inner edge of the rim has an undulating curve

15   configuration, the undulating curve configuration having peaks

16   and troughs."  And so that is outlined in red.  That is the

17   undulating curve or a rounded wavelike configuration, so that

18   is present.

19          And this last claim element:  "Wherein the radially

20   inner edge has convex profiles in convex regions of the rim,

21   the convex regions including the peaks."  And those are

22   annotated here.  The radially inner edge, the convex profile,

23   so if we take a section through this, the inner section of that

24   shape on the section would be the profile, and a convex region,

25   that's the three-dimensional shape, and that includes the

HOWLE - DIRECT/HICKEY

1    peaks, which is clearly shown here, and these peaks are convex

2    in this case.

3    Q.  So before we move to your analysis with respect to

4    infringement, I just want to walk through -- you said that some

5    of the documents that you referred to were either industry

6    publications or product materials relating to the accused

7    products.

8    A.  Yes, sir.

9    Q.  Is that correct?

10   A.  Yes, sir.

11        MR. HICKEY:  So can we pull up P -- Exhibit P33.

12   BY MR. HICKEY:

13   Q.  Dr. Howle, have you reviewed this document as part of your

14   infringement analysis?

15   A.  Yes, sir, I have.

16   Q.  And what is the title of this document?

17   A.  The title is:  "A Revolutionary Sinusoidal Design, A

18   Trifecta of Benefits," by Princeton CarbonWorks.

19   Q.  Okay.  And what's the name and date that's listed there?

20   A.  So Marty Crotty is listed as I assume the author of this,

21   and the date is April 10 of 2017.

22   Q.  Okay.  And could you read the first paragraph of

23   Exhibit P33?

24   A.  Certainly.

25        "A sinusoid is a mathematical curve that

HOWLE - DIRECT/HICKEY

1  so that it attaches at the peak of one of these sinusoids.

2  Q.  Okay.  And if we move down to the third paragraph, could

3  you read that?

4  A.  Yes, sir.

5       So "aerodynamically Wake creates less drag and

6       goes faster with less watts.  Bold claims backed by

7       testing at the A2 Wind Tunnel in Moorestown,

8       North Carolina.  We verified quantitatively lower drag

9       at all yaw angles via dynamic cross-section

10       variability.  Results in reduced effects of vortex

11       shedding by use of a constantly varying trailing edge.

12       While confident in the extensive CFD modeling before

13       prototype production, the real world validation of

14       Wake 6560 at an independent facility was worth every

15       dime" *(sic)*.

16  Q.  And looking at the sentence in the middle of that

17  paragraph, what do you understand "results in reduced effects

18  of vortex shedding by use of a constantly varying trailing

19  edge" to refer to?

20  A.  Yeah, so let me try to explain that using an example.

21       So if you have a body, a bluff body, let's say a

22  cylinder --

23  Q.  And when you say "bluff body," could you clarify that,

24  Dr. Howle?

25  A.  I'm sorry, I just go into these terms.  That's what I do

HOWLE – DIRECT/HICKEY

1    for a living.

2           So a "bluff body" is a body that's not streamlined.

3    So something like a sphere or a cylinder is fairly

4    unstreamlined.  So a faired body would be something like an

5    airplane wing.  That's fairly air aerodynamic.  So a bluff body

6    might have vortex shedding, and in the field, it's known as a

7    von Kármán vortex street.  So you have --

8           THE COURT REPORTER:  I'm sorry.

9           THE WITNESS:  Sorry.

10   A.  In the field it's known as von Kármán vortex street, named

11   after a German scientist who studied this around the early

12   1900s.

13          So this results in flow that alternately switches from

14   one side to the other while it sheds from the back of that

15   cylinder.  And this flow injects -- this vortex shedding

16   injects energy into the flow.  And that energy has to come from

17   somewhere.  It comes from drag.

18          So this is going to place more drag on that body.  So

19   one way to mitigate that is if you can reduce that buffeting

20   flow, the vortex shedding, then you can have a situation where

21   you're reducing less -- producing less drag, you inject less

22   energy, kinetic energy into the flow behind an object.  And

23   that's what this is getting to.

24   Q.  And so what you understand this to refer to is that by the

25   use of a constantly varying trailing edge in the Wake 6560,

HOWLE – DIRECT/HICKEY

1  that has resulted in reduced effects of vortex shedding, which

2  is a good thing.

3  A.  That's my understanding, yes, sir.

4  Q.  Okay.

5          MR. HICKEY:  Can we go to Exhibit P45?

6          THE COURT:  Why don't we take a five-minute break, and

7  we'll be back, and then we'll go till lunch.  Okay?

8          COURTROOM SECURITY OFFICER:  All rise for the jury.

9          *(The jury exited the courtroom)*

10         THE COURT:  Sir, if you'll just wait outside for us

11  for five or ten minutes.

12         THE WITNESS:  Yes, sir.

13         THE COURT:  Thank you, sir.

14         *(The witness exited the courtroom)*

15         THE COURT:  Are you going to lay any additional

16  foundation for the comparison between the Princeton wheel and

17  the figure?

18         MR. HICKEY:  Between the claim and the figure?  Or --

19  oh, yes, you mean -- yes, with respect to infringement of the

20  Princeton wheels and the claims, we'll be going through that.

21         We can have -- our view --

22         THE COURT:  I guess my question is, remember we had

23  that discussion yesterday?

24         MR. HICKEY:  Yes, yes, yes.

25         THE COURT:  I think based on what he's done, your

HOWLE – DIRECT/HICKEY

1  documents, 121 and 125, come from?

2          MR. HICKEY:  If we could pull out from the document

3  and just look on the bottom of the page.

4  A.  Yes, sir.  So that comes from Princeton's own website.

5  Q.  Okay.

6          MR. HICKEY:  And if we could go back to P121.

7  BY MR. HICKEY:

8  Q.  And where is this document from?

9  A.  Again, that's a page from Princeton's website.

10  Q.  Okay.

11          MR. HICKEY:  P33.

12          P33.

13  BY MR. HICKEY:

14  Q.  And where does P33 come from?

15  A.  This is also from the Princeton website.

16  Q.  Okay.

17          MR. HICKEY:  If we could go to P129.

18  BY MR. HICKEY:

19  Q.  What is this document?

20  A.  It's another one from Princeton's website, and this

21  discusses the Peak 4550 wheel.

22  Q.  Okay.

23          MR. HICKEY:  May I approach, Your Honor?

24          THE COURT:  You may.

25

HOWLE – DIRECT/HICKEY

1   BY MR. HICKEY:

2   Q.  Dr. Howle, I've handed you P129.  Do you recognize this

3   wheel?

4   A.  I do.  I recognize it as the Peak 4550 wheel.

5           MR. HICKEY:  May I approach, Your Honor?

6           THE COURT:  You may.

7   BY MR. HICKEY:

8   Q.  And if we turn to page 2 of P129, can you read the

9   paragraph that starts with "development priorities"?

10  A.  Yes, sir.

11          "Development priorities were to create an

12      all-around race ready wheel with exceptional

13      aerodynamic characteristics and the strength and

14      stiffness to transfer high wattages to the ground.

15      The performance characteristics of grand tour riding

16      are perhaps the most difficult to synthesize in a

17      single wheelset.  Riders need a wheelset that is light

18      and responsive for the climbs.  On the descents, they

19      need predictable and sharp handling.  On *(sic)* the

20      valleys, the wheelsets need to be aerodynamic and

21      impervious to crosswinds.  And above all of that, the

22      wheels need to hold up to thousands of kilometers of

23      full gas racing."

24  Q.  And this reference to the wheelset needing to be

25  "aerodynamic and impervious to crosswinds," what is your

HOWLE – DIRECT/HICKEY

1       THE COURT:  Please be seated.

2       How was your lunch?

3       JUROR NO. 9:  Good.

4       THE COURT:  Good?  All right.

5       Is there anyone who did not heed my admonition not to

6  discuss the case with anyone or to allow it to be discussed

7  with you; not to conduct any research on the case, the lawyers,

8  or the parties; or to communicate via social media or otherwise

9  about the case?

10       I see no hands.

11       You'll remember that we're in the direct examination

12  of Dr. Howle, and I think we've got about one hour left of

13  that, give or take.  We'll see how it goes.  All right?

14       Go ahead, sir.

15       MR. HICKEY:  Thank you, Your Honor.

16       THE COURT:  Dr. Howle, I'll just remind you that

17  you're still under oath.

18       THE WITNESS:  Yes, sir.

19            *DIRECT EXAMINATION (CONTINUED)*

20  BY MR. HICKEY:

21  Q.  So, Dr. Howle, if we can move to your infringement

22  position, specifically with respect to Princeton's literal

23  infringement of the '800 patent.

24       You previously talked about claim 1 of the '800

25  patent.  And could you tell us what your opinion is with

HOWLE – DIRECT/HICKEY

1  respect to claim 1 of the '800 patent compared to the Wake 6560

2  wheel, which is the wheel here on the left in the courtroom?

3  A.  Yes, sir.  So I'll begin just by reading the various claim

4  elements that we discussed earlier with Figure 1 on to the

5  Wake 6560 wheel.

6       So to begin with, this is a wheel for use on a

7  bicycle, the wheel comprising -- so it practices that element.

8       It has a hub for mounting the wheel to a bicycle,

9  indicated by the arrow there.

10      A rim about which a tire is mounted.  Again,

11 annotated.

12      A plurality of spokes, again more than one spoke,

13 extending between the hub and the rim.  There are two shown.

14      Wherein the rim has a radially inner edge, and the

15 arrow indicates the radially inner edge.

16      At least a part of the radially inner edge has an

17 undulating configuration.  And, again, I show for contrast the

18 conventional circular configuration compared to this undulating

19 or wavelike configuration on the Wake 6560.

20 Q.  And could you explain what these photographs refer to,

21 Dr. Howle?

22 A.  Certainly.

23      So this is just another way where we can look at that

24 wavelike or undulating configuration.  So this is a common

25 carpenter's contour gauge.  It has a number of these pins that

HOWLE - DIRECT/HICKEY

1  slide, and what you can do is place it on a surface, and it

2  will conform to that surface.  So here with the Wake 6560, I

3  placed it on the surface, tilted inward somewhat, and so it has

4  conformed to that interior surface of the rim, and here you're

5  showing -- it's just showing another way to look at that

6  wavelike configuration.  So that is practiced by this

7  Wake 6560.

8       Then the next element is a radial distance that

9  continually varies between adjacent peaks and troughs of the

10  undulating configuration.  And we previously discussed what is

11  a radial distance, that's just indicated there.

12       Then that's a conventional wheel that has the same

13  radial distance at any of the 360 degrees around that circle.

14       And then that's contrasted to the continuously varying

15  or changing radial distance.  So you'll see that radius, the

16  straight red line, change as it sweeps around a portion of the

17  circumference.  And also annotated are the peaks and troughs,

18  the adjacent peaks and troughs on that device.

19  Q.  And, Dr. Howle, what is this picture on screen?

20  A.  This is yet another way that I chose to display this

21  wavelike or undulating configuration.  And the way I set this

22  up was I used a common carpenter's laser level.  So it has a

23  cross hair that floats, and so you can set this up, and it will

24  give you a straight line either horizontally or vertically,

25  useful for carpenters, and useful for hanging pictures, I

HOWLE – DIRECT/HICKEY

1    found, also.  And so what I did was project this on to this

2    radially inner edge, and then what I'm going to do in this

3    video is rotate this at a constant speed throughout the 360

4    degrees.

5            And the important part to look at is, on the

6    background, there's a short laser line, about this long or so,

7    right? -- that's right, right there -- and what you want to do

8    is observe the top portion of that.  And that is the light --

9    the portion of this light wavelength is 632 nanometers, by the

10   way -- that projects past that radially inner edge.  And what

11   you're going to see is the top portion is going to move up and

12   down as the wheel passes by just to the show you the wavelike

13   characteristic of this undulating configuration.

14           Also, I've set this up so that the horizontal

15   component will just hit the radially inner edge at the trough.

16   So each time a trough goes by, you'll see this little

17   horizontal portion pass by.

18           MR. HICKEY:  And could we play the video for the

19   Wake 6560.

20           (Video played)

21   A.  It will take just a minute for this cue up.

22           So you'll see that top portion of the vertical line

23   moving up and down as it passes by.  That's the wavelike shape

24   or characteristic.  And then at each of the troughs, you'll see

25   that horizontal section pass by.  And this goes through the

HOWLE - DIRECT/HICKEY

1   entire -- one entire revolution.  I did this at constant speed

2   using a drill, a common battery-operated power drill.

3           And so, again, this just is another way to view that

4   wavelike configuration on the radially inner edge.

5   Q.  And then with respect to the last element of claim 1 of the

6   '800 patent, what is being depicted here, Dr. Howle, and how

7   does that support your opinions with respect to infringement of

8   the Wake 6560 for claim 1 of the '800 patent?

9   A.  So the final element here is each peak of the undulating

10  configuration having a convex exterior profile in a plane of

11  the wheel.  So convex in this instance means it's bulging

12  toward the rim.  So you can see two of these peaks, they do,

13  indeed, bulge toward the rim.  And in a plane of the wheel is

14  important to understand that that's going to be the

15  intersection of this 3D shape with a plane.  So if you just

16  made a cut midway between the front and the back, or the top

17  and bottom, as it's shown here, that intersection would have

18  the peaks that have this convex exterior profile.

19  Q.  Okay.

20  A.  So if we put all these together, each of these elements is

21  practiced by the Wake 6560 wheel.  So it is my opinion that

22  this wheel infringes claim 1 of the '800 patent.

23  Q.  And if we turn to Princeton's Grit 4540, what is your

24  opinion with respect to infringement by the Grit 4540 of

25  claim 1 of the '800 patent?

1015

HOWLE - DIRECT/HICKEY

1   A.  So with this wheel, I went through all of the same analysis

2   that I previously showed.  And what you're seeing here is that

3   I found that each one of these claim limitations that we've

4   discussed is practiced by the Grit 4540 wheel.  So my

5   conclusion is that this Grit wheel also infringes claim 1 of

6   the '800 patent.

7          Same contour gauge experiment that I used here, just

8   to show you that wavelike undulating configuration.

9   Q.  And what is this?

10  A.  And this is an identical experiment to the previous, only

11  I'm doing this on the Grit wheel rather than the Wake.

12         MR. HICKEY:  And can we play this video?

13         *(Video playing)*

14  A.  And it just takes a minute to cue up, because I had to turn

15  on the camera and then run over here and turn this on, get it

16  going.

17         So, again, the important point to look at is the

18  vertical line in the background that's moving up and down as

19  the peaks and the valleys -- or the peaks and the toughs pass.

20  And, again, I aligned the horizontal component just at a trough

21  so you can see that passage as it goes by.  So it's another way

22  to depict this wavelike undulating configuration.

23         MR. HICKEY:  And I note for the record the P148

24  exhibit referred to at the bottom refers to the video of the

25  Grit 4540 that's displayed here.

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(954)769-5686

HOWLE – DIRECT/HICKEY

1       And if we go back to the video that was utilized for

2  the Wake 6560, P147 refers to the video submitted into evidence

3  with respect to the Wake 6560.

4  BY MR. HICKEY:

5  Q.  Dr. Howle, with respect to claim 1 of the '800 patent and

6  your comparison to the Peak 4550, what is your opinion with

7  respect to infringement?

8       And I note that we were just talking about the Grit,

9  which is the middle wheel.  The Peak 4550 is the wheel that is

10  displayed on the right.

11  A.  So my conclusion with the Peak 4550 is that it also

12  practices all of the elements of claim 1.  So it also infringes

13  claim 1 of the '800 patent.

14  Q.  This slide depicts claims 2 and 3 of the '800 patent.  What

15  are claims 2 and 3 of the '800 patent?

16  A.  So claim 2 reads:

17       "A wheel as claimed in claim 1 -- we've already

18      been through that -- wherein the undulating

19      configuration is arranged along a circumference of the

20      radially inner edge, such that the radially inner edge

21      is either intermittently undulating or continually

22      undulating."

23       Claim 3 here is:

24       "A wheel as claimed in claim 1, wherein the

25      radially inner edge is continually undulating."

1017

HOWLE - DIRECT/HICKEY

1  Q.  And if we look at the Wake 6560, what is your opinion with

2  respect to infringement of the Wake 6560 for claim 2 and 3 of

3  the '800 patent?

4  A.  So for the Wake 6560, the first wheel there, I find that it

5  has a continually undulating configuration, and it's arranged

6  along that circumference, around the circle, of the radially

7  inner edge, such that that radially inner edge is either

8  intermittently or continually undulating.  And the additional

9  restriction of claim 3 is that it's continually undulating.  So

10  I find that in each of these claims, 2 and 3, that the Wake

11  practices that, so it infringes both of these dependent claims.

12  Q.  If we look at claims 2 and 3 of the '800 patent and compare

13  that to the Grit 4540 wheel, what is your opinion with respect

14  to infringement of that wheel?

15  A.  So going through that same analysis, and you can show where

16  I've called out the continually undulating surface along that

17  circumference, then my conclusion is that that Grit 4540 also

18  infringes claims 2 and 3 of the '800 patent.

19  Q.  And with respect to the Peak 4550, what is your opinion

20  with respect to infringement of claims 2 and 3 of the '800

21  patent?

22  A.  So with my analysis, I also find that the Peak 4550

23  infringes claims 2 and 3 of the '800 patent.

24  Q.  We move to claim 4 of the '800 patent.  Can you explain or

25  recite what claim 4 is to the jury?

HOWLE - DIRECT/HICKEY

1  A.  So claim 4 reads:

2        "A wheel that is *(sic)* claimed in claim 3,

3     wherein the radially inner edge comprises a series of

4     alternating concave and convex regions positioned

5     immediately adjacent to one another."

6  Q.  And I think there's a mistake here.  It should say "a wheel

7  as claimed in claim 3," is that correct?

8  A.  I believe that is the case, yes, sir.

9  Q.  And so what is your opinion with respect to claim 4 of the

10  '800 patent?

11  A.  So if we look at the figure there, you'll see what I've

12  labeled as "concave regions."  So these are ones that kind of

13  bulge away from the hub.  And the convex regions we've

14  discussed already.  Those are on the peak.  They bulge toward

15  the peak.  And they are placed so that they're immediately

16  adjacent to one another.  So my conclusion for this is that the

17  Wake 6560 infringes this claim 4 of the '800 patent.

18  Q.  And moving to the Grit 4540 -- again, I note the same thing

19  that it should read "a wheel as claimed in claim 3" -- what is

20  your opinion with respect to infringement of claim 4 for the

21  Grit 4540?

22  A.  So there you'll see the same concave regions adjacent to

23  the convex regions.  So like with the Wake product, the

24  Grit 4540 also infringes this claim 4.

25  Q.  For the Peak 4550 -- again, noting that it's "a wheel as

HOWLE – DIRECT/HICKEY

1    claimed in claim 3" –– what is your opinion with respect to

2    infringement of claim 4 of the '800 patent by the Peak 4550?

3    A.  So the Peak 4550, again, the analysis has these concave

4    regions adjacent to the convex regions.  So I conclude that

5    this wheel as well infringes claim 4 of the '800 patent.

6    Q.  Dr. Howle, what is claim 5 of the '800 patent?

7    A.  Claim 5 reads:

8        "A wheel as claimed in claim 1, wherein the rim

9        comprises side surfaces which are configured such that

10       the radially inner edge is defined by rounded inner

11       portions of the side surfaces."

12   Q.  And when you compared claim 5 of the '800 patent to the

13   Wake 6560 wheel, what was your conclusion?

14   A.  All right.  Let me quickly just explain what I'm showing in

15   the figure here.

16       So the front face of this figure that has the printing

17   on it is one side surface.  The opposite on the other side

18   would be the other side surface.  Those are the side surfaces

19   recited in the claim, and they meet at the radially inner edge,

20   defined by rounded inner portions of the side surface.  So the

21   side surface is round as they go in toward the inner edge.  And

22   that's depicted in the figure.

23       So my conclusion from analyzing this product is that

24   the Wake 6560 infringes claim 5 of the '800 patent.

25   Q.  And when you compared claim 5 of the '800 patent to the

HOWLE - DIRECT/HICKEY

1  Grit 4540, what was your conclusion?

2  A.  So I also concluded with the Grit 4540 that this infringes

3  claim 5 of the '800 patent.

4  Q.  And why is that?

5  A.  This has the side surfaces, and they're configured such

6  that they are rounded toward the inner portions, and they meet

7  at the radially inner edge.

8  Q.  With respect to claim 5 of the '800 patent and Princeton's

9  Peak 4550 wheel, what was your conclusion when you compared

10 that claim to that wheel?

11 A.  So this has the radially inner edge defined by the rounded

12 inner portions of the side surfaces.  So I also conclude that

13 the Peak 4550 infringes claim 5 of this patent.

14         MR. HICKEY:  Now, I'll just tell the jury, we're going

15 to hopefully be moving through it.  It's tedious.  There are a

16 lot of claims, but we will end up having repeats, and so it

17 will move along a little bit quicker as we get towards the end.

18 BY MR. HICKEY:

19 Q.  For claim 6 of the '800 patent, what is claim 6?

20 A.  Claim 6 reads:

21         "A wheel as claimed in claim 1, wherein the

22     radially inner edge has an arrangement of undulations

23     arranged along the full extent of the radially inner

24     edge."

25 Q.  And when you compared claim 6 of the '800 patent to the

1021

HOWLE – DIRECT/HICKEY

1    Wake 6560, what was your conclusion?

2    A.  The undulations are arranged along the full extent of the

3    radially inner edge, so this product, the Wake 6560, infringes

4    claim 6.

5    Q.  And that's clear from the product itself, is that not

6    correct?

7    A.  Yes, sir, that is true.

8    Q.  And that, in fact, is also something that is talked about

9    within Princeton's own materials posted on its website, is that

10   correct?

11   A.  That is true also, yes, sir.

12   Q.  Claim 6 of the '800 patent compared to the Grit 4540, what

13   was your opinion with respect to that comparison?

14   A.  Again, the undulations are around the full extent of the

15   radially inner edge, so the 4540 –– the Grit 4540 infringes

16   claim 6 of the '800 patent.

17   Q.  For the Peak 4550, what is your opinion with respect to

18   claim 6 of the '800 patent?

19   A.  Same conclusion, those undulations are around the entire

20   inner edge, so the Peak 4550 infringes claim 6 of the '800

21   patent.

22   Q.  If we turn to claim 9 of the '800 patent, what is that?

23   A.  This reads:

24          "A wheel as claimed in claim 1, wherein at least

25       24 pairs of peaks and troughs are provided along the

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(954)769-5686

HOWLE - DIRECT/HICKEY

1          radially inner edge of the rim."

2    Q.   And when you reviewed claim 9 of the '800 patent and

3    compared it to the Wake 6560, what was your conclusion?

4    A.   I counted 24 peaks and 24 troughs.  So I found that this --

5    the Wake product infringes claim 9 of the '800 patent.

6    Q.   And if we look at the Grit 4540 and compare it to claim 9

7    of the '800 patent, what was your conclusion?

8    A.   Same number of peaks and valleys -- or peaks and troughs,

9    so this also infringes claim 9 of the patent.

10         And same thing with the Peak 4550 product, 24 pairs

11   peaks and troughs, so in my analysis, this infringes claim 9 of

12   the '800 patent.

13   Q.   Okay.  Claim 12 of the '800 patent, what does it require?

14   A.   It requires a composite material.  So "a wheel as claimed

15   in claim 1, wherein the rim is made of a composite material."

16   Q.   And what is a composite material?

17   A.   In this case, it's carbon fiber, which is a weave of a

18   certain type of fabric.  Other types of composites are

19   fiberglass.  So these products are constructed out of carbon

20   fiber composite Jmaterial.  They're bonded together with a

21   resin, polyester or epoxy, and they form these strong

22   lightweight shapes.

23   Q.   And so when you compared claim 12 of the '800 patent to

24   Princeton's Wake 6560 wheel, what was your conclusion?

25   A.   That is made of a composite material, so I conclude that

HOWLE - DIRECT/HICKEY

1   this -- the Wake product infringes claim 12.

2   Q.   Okay.  With respect to the Grit 4540, what is your

3   conclusion when comparing the Grit 4540 to claim 12 of the '800

4   patent?

5   A.   The Grit is made of a composite material, so it infringes

6   claim 12.

7   Q.   When you compare the Peak 4550 to claim 12 of the '800

8   patent, what is your view on that comparison?

9   A.   This also infringes claim 12, because it is made of a

10  composite material.

11  Q.   Okay.  Now we have some claims that are a little bit

12  different.  Let's look at claims 14 and 15 of the '800 patent.

13  Could you read those to the jury?

14  A.   Yes, sir.  So let's start with Claim 14:

15       "A wheel as claimed in claim 1, wherein the rim

16       has side surfaces that meet at the radially inner edge

17       of the rim, the (sic) exterior cross-sectional profile

18       of the side surfaces at the radial inner edge of the

19       rim having a radius of at least 5 millimeters."

20       And 15 is:

21       "A wheel as claimed in claim 1, wherein the

22       exterior cross-sectional profile of the side surfaces

23       at the radially (sic) inner edge of the rim has a

24       radius of at least 10 millimeters."

25  Q.   So looking at claim 14 of the '800 patent compared to the

HOWLE – DIRECT/HICKEY

1  Wake 6560, what was your conclusion?  And also, second question
2  is, what is depicted in these photographs?
3  A.  So let me start by explaining what I have in the
4  photographs, and that's some of the analysis, just one of the
5  methods I used to demonstrate this.
6       So if you look at the -- of the three photographs, the
7  upper left, that shows the same contour gauge that I used to
8  show the wavelike undulating configuration, only I placed it
9  crossways to this wheel.  So in pushing it down, it shows an
10  indentation on the top, that's the negative image of that
11  surface.
12       On the bottom of that photograph is the positive image
13  of that surface.  So that has the shape of this radially inner
14  edge as they meet.
15       So then the next part of this analysis is, I can get
16  an object with the stated diameter -- here the diameter is
17  10 millimeters, which gives a radius of 5 millimeters.  And if
18  that fits within the shape with only one point of contact, then
19  in that case, it has a radius of at least 5 millimeters.
20  Q.  And what is the object that you are measuring there?
21  A.  That's a precision dowel pin, so those are ground with
22  10 -- fine tolerances.  And these are often used by machinists
23  if they need to have a reference when they're fixturing an
24  object or they're making something.
25  Q.  Okay.  And so because it shows a 10-millimeter diameter,

HOWLE - DIRECT/HICKEY

1    what is your conclusion with respect to the radius?

2    A.   So with the 10-millimeter diameter, it has a 5-millimeter

3    radius, and with the Wake 6560, that is certainly true.  So my

4    opinion is that claim 14 of the '800 patent is infringed by the

5    Wake product.

6    Q.   With respect to claims 14 and 15 of the '800 patent, what

7    was your conclusion with respect to the Grit 4540?

8    A.   So my analysis here, I used the same method that I did

9    previously.  We can take an image with this contour gauge of

10   that radially inner edge, and then we can use a dowel pin.  In

11   this case, I have one that's 20 millimeters in diameter, so

12   it's 5 millimeters in radius.  And for the Grit product, it

13   infringes both of those claims, the 14 and 15.

14   Q.   Okay.  And just to take a step back, did you have an

15   opinion with respect to claim 15 of the '800 patent for the

16   Wake 6560?

17   A.   Yes, sir.  And just to be completely clear, I found that

18   the Wake product does not infringe claim 15, because its radius

19   at the inner edge is less than 10 millimeters.

20   Q.   And if we turn to the Peak 4550 product and claims 14 and

21   15 of the '800 patent, what was your conclusion there?

22   A.   So when I did this analysis, this was before I had the

23   physical product to inspect, so I used the best available

24   information, which was some engineering information from

25   Princeton's website, and in that case, my conclusion was that

1026

HOWLE - DIRECT/HICKEY

1   the Peak infringes both 14 and 15 of the '800 patent.  I later

2   confirmed that with the object -- with the Peak wheel.

3   Q.  If we look at claim 16 of the '800 patent, what does that

4   require?

5   A.  So "a wheel as claimed in claim 1, wherein the radially

6   inner edge of the rim is rounded."

7   Q.  And if we look at claim 16 of the '800 patent compared to

8   the Wake 6560, what was your conclusion?

9   A.  That radially inner edge is rounded, so this Wake product,

10  it infringes claim 16 of the '800 patent.

11  Q.  And for claim 16 of '800 patent and the Grit 4540, what was

12  your conclusion?

13  A.  Same analysis, so the Grit infringes claim 16 as well.

14  Q.  And for the Peak 4550, claim 16, what was your analysis and

15  conclusion?

16  A.  That also infringes claim 16 of the '800 patent.

17  Q.  Okay.  Now we're turning to claim 17.  That's another

18  claim.  What kind of claim is this?

19  A.  This is an independent claim, meaning it does not rely on

20  any other claim to lay out its elements.

21  Q.  And if we look at claim 17 compared to the '800 patent, can

22  we walk through what the elements are of claim 17?

23  A.  So this one varies somewhat from claim 1.  So we've got "a

24  wheel for use with a bicycle, the wheel comprising" -- all

25  right.  We've got "a hub for mounting the wheel to a bicycle; a

HOWLE – DIRECT/HICKEY

1  rim about which a tire is mountable, the rim having a radially

2  inner edge and side surfaces meeting at the radially inner

3  edge; and a plurality of spokes extending between the hub and

4  the rim; and wherein at least a part of the radially inner edge

5  has an undulating configuration and a radial distance that

6  continuously varies between adjacent peaks and troughs of the

7  undulating configuration, and wherein an exterior

8  cross-sectional profile of the side surfaces at the radially

9  inner edge of the rim has a radius of at least 5 millimeters."

10  Q.  So if we look at the requirements of those claims, is the

11  first element met by the Wake 6560?

12  A.  Yes, it is.

13  Q.  And the second element of the hub?

14  A.  Yes, sir.

15  Q.  And the third element of a rim?

16  A.  That also, yes.

17  Q.  And what about the rim having a radially inner edge and

18  side surfaces meeting at the radially inner edge?

19  A.  So the previous analysis that I did also applies to this.

20  So that is practiced also.

21  Q.  And the Wake 6560, does that have a plurality of spokes

22  extending between the hub and the rim?

23  A.  Yes, it does.

24  Q.  And does it have an undulating configuration?

25  A.  Yes.

1028

HOWLE - DIRECT/HICKEY

1   Q.  And a radial distance that continuously varies between

2   adjacent peaks and troughs of the undulating configuration?

3   A.  It has that as well, yes.

4   Q.  And then these photographs are depicting what, Dr. Howle?

5   A.  Again, that's my contour gauge experiment, so it shows the

6   radius at that radially inner edge, and it is at least

7   5 millimeters.  So my conclusion is Wake 6560 infringes this

8   independent claim 17 of the '800 patent.

9   Q.  And what was your conclusion with respect to the Grit 4540

10  with respect to claim 17?

11  A.  So I went through the same analysis with that product, and

12  my conclusion is that the Grit 4540 infringes claim 17 of the

13  '800 patent.

14  Q.  And, again, what are these photographs depicting?

15  A.  Those were my contour gauge inner radius experiments for

16  the 10-millimeter radius limitation.

17  Q.  And how does that relate to claim 17?

18  A.  So if it's, uhm -- actually, I think we should have the

19  five -- this is for the Grit, we should have those -- the

20  previous set of photographs on this one.

21  Q.  Okay.  But is this a radius of at least 5 millimeters?

22  A.  Yes, it is at least 5 millimeters.

23  Q.  And so do these photographs confirm -- how do these

24  photographs relate to your opinion of infringement of claim 17

25  for the Grit 4540?

HOWLE – DIRECT/HICKEY

1   A.  So if we go through element by element, I find that each

2   one of these elements is practiced.  So the Grit 4540 infringes

3   claim 17 of the '800 patent.

4   Q.  And with respect to claim 17 of the '800 patent and the

5   Peak 4550, what is your opinion after your analysis of this

6   product?

7   A.  So my opinion is the Peak 4550 also infringes claim 17 of

8   the '800 patent.

9           So for the Peak -- no, yeah.

10  Q.  Sorry, Dr. Howle.

11  A.  No, please, I think -- have we done that one?

12  Q.  Yeah.

13  A.  The Peak product also infringes claim 17 of the '800

14  patent.

15  Q.  And if we look at claim 18, what are the requirements of

16  claim 18?

17  A.  So this is:

18          "A wheel as claimed in claim 17, wherein a radial

19      distance that varies between peaks and troughs of the

20      undulating configuration and the difference in the

21      radial height between the peaks and troughs of the

22      undulations is at least 5 millimeters."

23  Q.  And when you compared claim 18 of the '800 patent to the

24  Wake 6560, what did you conclude?

25  A.  So we can measure the peaks and the valleys, the so-called

HOWLE – DIRECT/HICKEY

1  height of this wheel, and I found that it is at least

2  5 millimeters.  So I conclude that claim 18 is infringed by the

3  Wake product.

4  Q.  And what is the instrument that you are using to measure

5  that difference in radial height?

6  A.  That's a 12-inch span digital micrometer or caliper.

7  Q.  And is that a standard instrument that you would use to

8  make such a measurement in this case?

9  A.  It is, yes.

10  Q.  And when you look at claim 18 of the '800 patent and

11  compare it to the Grit 4540, what was your conclusion with

12  respect to that wheel?

13  A.  That also has a difference in peaks and troughs that is at

14  least 5 millimeters, so this product, the Grit, infringes

15  claim 18 of the '800 patent.

16  Q.  And just to take a step back, the measurements that you

17  have, 60 -- approximately 60 millimeters and 65 millimeters, do

18  you understand that to be reflected in the name of the

19  Wake 6560?

20  A.  It certainly seems so, yes, sir.

21  Q.  And what about for the Grit 4540?

22  A.  That seems to be the case as well.

23  Q.  And if we look at the Peak 4550, what was your conclusion

24  in that regard?

25  A.  That this also had a difference between peaks and

HOWLE - DIRECT/HICKEY

1   heights *(sic)* that was at least 5 millimeters, so that

2   infringes claim 18 as well.

3   Q.  And what did you base your opinion on in that regard?

4   A.  The information -- the best available information to me at

5   that time, which was some design documents, Princeton's own

6   documents, their documentation, and information that was

7   available in Dr. Hanson's report.  And then subsequently, I was

8   able to analyze one of the wheels, and that confirmed my

9   previous opinion.

10  Q.  If we look at claim 19 of the '800 patent -- I think we

11  talked about this requirement before, but could you please

12  state that requirement to the jury?

13  A.  "A wheel as claimed in claim 17, wherein the rim is made of

14  a composite material."

15  Q.  And your conclusion with respect to claim 19 for the

16  Wake 6560?

17  A.  That's infringed by the Wake 6560, because it's made from a

18  composite material.

19  Q.  And with respect to the Grit 4540, what was your opinion?

20  A.  That's a composite material, so 19 is infringed by the

21  Grit 4540.

22  Q.  And for the Peak 4550, what was your opinion?

23  A.  That also infringes claim 19 of the '800 patent.

24  Q.  If we go to claim 21 of the '800 patent, what is the

25  requirement of claim 21?

1032

HOWLE – DIRECT/HICKEY

1    A.        "A wheel as claimed in claim 17 wherein the

2         interior cross-sectional profile of the side surfaces

3         at the radial inner edge of the rim has a radius of at

4         least 10 millimeters."

5    Q.   And for claim 21, you did a comparison to the Grit 4540, is

6    that correct?

7    A.   That is correct, yes, sir.

8    Q.   And are these the same photographs that we previously saw?

9    A.   They are, yes.

10   Q.   And what is your conclusion with respect to infringement of

11   the claim -- of claim 21 by the Grit 4540?

12   A.   The Grit 4540 infringes claim 1 *(sic)* of the '800 patent.

13   Q.   And with respect to the Peak 4550, what is your opinion?

14   A.   This infringes claim 21 of the '800 patent.

15   Q.   If we look at claim 22 of the '800 patent, I believe we've

16   seen this requirement before, but could you please state it to

17   the jury?

18   A.        "A wheel as claimed in claim 17, wherein at least

19        24 pairs of peaks and troughs are provided along the

20        radially inner edge of the rim."

21   Q.   And what is your opinion with respect to the Wake 6560?

22   A.   This has 24 pairs of peaks and troughs, so it infringes

23   claim 22 of the '800 patent.

24   Q.   And with respect to the Grit 4540?

25   A.   This infringes claim 22 of the '800 patent.

HOWLE - DIRECT/HICKEY

1   Q.   And with respect to the Peak 4550?

2   A.   The Peak also infringes claim 22 of the '800 patent.

3   Q.   Okay.  So moving on to literal infringement of the '188

4   patent, could you please tell the jury, Dr. Howle, what claim 1

5   of the '188 patent requires?

6   A.   So it differs somewhat from claim 1 of the '800 patent.

7   And this one claims:

8          "A wheel for use with a bicycle, the wheel

9       comprising:  A hub for mounting the wheel to a

10      bicycle; a rim about which a tire is mountable; and

11      the plurality of spokes extending between the hub and

12      the rim, wherein at least a portion (sic) of the

13      radially inner edge of the rim has an undulating curve

14      configuration, the undulating curve configuration

15      having peaks and troughs; and wherein the radially

16      inner edge has convex profiles in convex regions of

17      the rim, the convex regions including the peaks."

18  Q.   And if you compare claim 1 of the '188 patent to the

19  Wake 6560 wheel, could you please go down the elements of

20  claim 1 in your analysis of the Wake 6560?

21  A.   Certainly.

22         So the first one is a wheel for use with a bicycle.

23  Q.   Oop, sorry.

24  A.   Yeah.

25  Q.   Go ahead.  I'm sorry, Dr. Howle.

HOWLE - DIRECT/HICKEY

1  A.  Okay.  "A wheel for use with a bicycle, the wheel

2  comprising" -- we've been over that before; "a hub for mounting

3  the wheel to a bicycle; a rim about which a tire is mountable;

4  and a plurality of spokes extending between the hub and the

5  rim."

6        So now we get to the new portions.  "Wherein at least

7  part of the radially inner edge of the rim has an undulating

8  curve configuration, the undulating curve configuration having

9  peaks and troughs" -- so there I'm showing the undulating curve

10  configuration with the --

11        THE COURT REPORTER:  I'm sorry, the last part?

12  A.  With -- if we can go back one, please -- with the rounded

13  wavelike configuration.

14        THE WITNESS:  Thank you.

15  A.  All right.  So back to this one.  "Wherein the radially

16  inner edge has convex profiles in convex regions of the rim,

17  the convex regions including the peaks."  And here I'm showing

18  the peaks in the convex profile with the convex region.  So I

19  find that this element is practiced by the Wake 6560.  So I

20  conclude that that product infringes claim 1 of the '188

21  patent.

22  Q.  And with respect to your analysis of claim 1 of the '188

23  patent and the Grit 4540, what is your conclusion?

24  A.  So if we follow the same logic flow element by element, I

25  conclude that the Grit 4540 infringes claim 1 of the '188

HOWLE - DIRECT/HICKEY

1    profiles has the *(sic)* same size and shape."

2  Q.  And what was your conclusion here?

3  A.  These have the same size and shape, so the Wake infringes

4  claim 13.

5  Q.  And for the Grit 4550 *(sic)*?

6  A.  The Grit infringes claim 13.

7  Q.  And for the Peak 4550?

8  A.  The Peak also infringes claim 13.

9  Q.  And I may have misstated.  The Grit 4540, you indicated

10  infringes.

11  A.  Yes.

12  Q.  And the Peak 4550, is that right?

13  A.  Yes, sir, that's right.

14  Q.  So, alternatively, you have an infringement analysis under

15  something called the "doctrine of equivalents"?

16  A.  Yes, sir, I do.

17  Q.  And if you could explain your understanding of what the

18  doctrine of equivalents is?

19  A.  So for this analysis -- and let me first state that all

20  three of these products, as I've opined, I believe they

21  literally infringe the claims that we've cited.  But an

22  alternate way to look at this or an alternate method for

23  infringement could be under the doctrine of equivalents.  So in

24  this case, if a particular claim requirement is not literally

25  present on an accused device, then its equivalent -- if that's

HOWLE - DIRECT/HICKEY

1  still found on the product, then it can be accused of

2  infringing under the doctrine of equivalents.

3          And one of the ways you can do that analysis is by the

4  so-called "function-way-result test," as it's been explained to

5  me.  So if a product --

6  Q.  Oop, sorry.

7  A.  Yep.  So if a product component performs substantially the

8  same function in substantially the same way to achieve

9  substantially the same result, then it would infringe under the

10  doctrine of equivalents.

11          And there is also an alternate way of doing this

12  analysis.  Another way to look at this is, if the product

13  component is insubstantially different from the claimed

14  requirement, then it can be found to infringe under the

15  doctrine of equivalents.

16  Q.  And so is it your understanding that Dr. Hanson has taken

17  the position that certain elements of the claims are not

18  literally present in the Wake 6560, the Grit 4540, and the

19  Peak 4550, despite what we've just gone through here?

20  A.  Yes, that's my understanding.

21  Q.  Okay.  And one of those elements that Dr. Hanson contends

22  is not literally infringed is a radial distance that

23  continuously varies between adjacent peaks and troughs of the

24  undulating configuration?

25  A.  That's my understanding, yes.

HOWLE – DIRECT/HICKEY

1    Q.  And what do you view as the function, way, and result of

2    that claim limitation?

3    A.  So let's, first of all, refresh ourselves of what that

4    claim limitation is.  So this is a radial distance that

5    continuously varies between adjacent peaks and troughs of the

6    undulating curve configuration.  So the function in this case

7    is to --

8    Q.  Just the undulating configuration here, correct?

9    A.  Oh, I'm sorry, undulating configuration.  Lots of reading

10   today.

11          So the "function" is to create a profile for the

12   wavelike configuration that does not have substantial

13   interruptions in its undulating profile.

14          Then the "way," according to this analysis, would be

15   to have the distance between the wheel's center and the

16   radially inner edge of the rim change without substantial

17   interruption between adjacent peaks and troughs.

18          And the "result" would be continuous variance and

19   radial distance creates wavelike configuration with the

20   aerodynamics, stability, and strength advantages that are

21   discussed in the '800 patent.

22   Q.  And what is your understanding of what Princeton's alleged

23   constant radial distance is in the troughs?

24   A.  Their alleged constant radial distance, they have three in

25   Dr. Hanson's reports.  And as I recall, they are 1.2, 1.4, and

HOWLE - DIRECT/HICKEY

1    1.79 millimeters.

2         And I'd just like to help the jury understand how very

3    small that is.  So if you take a standard ruler, one that has

4    metric and English units, on the top, those are metric units.

5    And I'm just showing here what 2 millimeters looks like.  And

6    then if we compare that to the bottom, that's going to be

7    between around 1/32nd to 1/16th of an inch.  Typically on an

8    English ruler, the smallest increment that you have is 1/16th

9    of an inch.  1/16th of an inch is .0625 inches, so it's quite

10   small.

11   Q.  .0625 did you say?

12   A.  .0625, less than a tenth of an inch.

13   Q.  Okay.  So in your view, Dr. Howle, do Princeton's wheels

14   perform substantially the same function even if this one- to

15   two-millimeter constant radial distance in the troughs were

16   true?

17   A.  Well, first let me state that I don't believe those are

18   present in the products.  I have inspected the products.  You

19   can look at these.  You can trace your finger along those.  I

20   do not agree with his analysis that these are these constant

21   radial distance sections in the troughs.

22        But if we want to give his arguments the benefit of

23   the doubt, and we say that these have these constant radial

24   distances, then I find that they still would perform

25   substantially the same function and substantially the same

HOWLE – DIRECT/HICKEY

1   result in substantially the same way to produce substantially

2   the same result.

3           Sorry, I'm talking too fast.

4   Q.  That's okay.

5   A.  So they would infringe in that case under the doctrine of

6   equivalents.

7   Q.  And how might you say that another way?

8   A.  According to that other set of specifications for

9   infringement under the doctrine of equivalents, the radial

10  distance of the troughs in Princeton's wheels is

11  insubstantially different from the claimed requirement -- or

12  the claim requirements from the patent.

13  Q.  And when you compare that to the prior art, does that

14  equivalent read on prior art features?

15  A.  It does not.  So on the left is the Mercat reference, which

16  we can get -- we'll get into later.  On the right is the

17  Herting reference.  And those are both methods for attachment

18  of spokes.  These are both silent on aerodynamics, so they have

19  nothing to do with aerodynamics or advantages in drag reduction

20  or in yaw moments mitigation.

21  Q.  And so is it your understanding that Mercat and Herting

22  were previously considered by the Patent Office?

23  A.  Yes, those are some of the prior art references that show

24  up in the applications in the patents and also were included in

25  the prior art references stacks I have right here *(indicating)*.

1051

HOWLE – DIRECT/HICKEY

1  Q.  And what about the Zibkoff, Chen, and Alex Machine

2  references?

3  A.  Those actually were not included.

4  Q.  No, I believe these were -- were these considered?

5  A.  Oh, I'm sorry.  So Zibkoff, Chen, and Alex Machine were

6  included.  And Zibkoff goes to tubercules on spokes.  It has

7  nothing to do with the radially inner edge.  All right.  Chen

8  is a spoke attachment reference.  Alex Machine is a spoke

9  attachment reference with stiffeners along the radially inner

10 edge.  So these are all, uhm, silent on aerodynamics, with the

11 exception of the Zibkoff spokes, but that's about the spoke and

12 not the rim.

13        So I find that there is insubstantial difference in

14 the radial distance for its troughs, even if it were true,

15 which it's not, it's still different from prior art considered

16 by the USPTO, the Patent and Trademark Office.

17 Q.  And what about for prior art not considered by the

18 U.S. Patent Office?

19 A.  All right.  Thank you.  Now we get into the art not

20 considered.

21        So let's look at Carlson.  That's a spoke attachment

22 reference with fair rules for fairing how the spokes attach.

23 Mizuno, that has do with die cast, low-cost, lightweight

24 wheels, and it has stiffeners but not aerodynamic

25 protuberances.  Okajima is about attachments of the spokes.

HOWLE - DIRECT/HICKEY

1  And Urbani is about stiffening the wheels.  So the equivalent

2  does not read on to these prior art references that were not

3  included during the prosecution of the '800 or '188 patents.

4  Q.  And, Dr. Howle, is it your understanding that there are

5  three product references that Princeton has not yet established

6  for prior art, but do you have any opinions about those with

7  respect to this equivalents analysis, if, in fact, they were

8  established as prior art?

9  A.  Right.  So those prior art references are a Fulcrum wheel,

10  a Shimano wheel, and then a Mavic Ksyrium wheel.

11        And I'll note that the Mavic Ksyrium wheel, that Mavic

12  is an assignee of the Mercat patent, which we showed a slide or

13  two ago, and also it seems to practice the restrictions of that

14  Mercat patent.

15        So all of those, I believe, are not equivalents under

16  the doctrine of equivalent.

17  Q.  Okay.  So if we turn to convex exterior profile in the '800

18  patent, you've gone through a function-way-result analysis for

19  that as well, is that right?

20  A.  Yes, sir.

21  Q.  And what is that?

22  A.  So for this convex exterior profile, the "function" is to

23  create a peak profile for the wavelike configuration that has a

24  rounded or curved form that bulges toward the wheel's center.

25  The "way" is have the peaks be rounded or curved in a form that

HOWLE – DIRECT/HICKEY

1   bulges toward the wheel's center.  And the "result" would be

2   the convex profile helps create wavelike configuration with the

3   aerodynamic, stability, and strength advantages set forth in

4   the '800 patents.

5   Q.  And what is your understanding of Princeton's position with

6   respect to whether or not the convex exterior profile is

7   literally met by the Princeton wheel shown here?

8   A.  The Princeton -- there's no measurements that they actually

9   make in putting this argument forward.

10  Q.  And what is their contention, as you understand it?

11  A.  Oh, their contention is that there is a spoke hole, so they

12  take the wheel rim before it has the spokes in it, so it's at

13  an intermediate portion of the manufacturing process after the

14  hole for the spoke nipple is placed in there, but before it's

15  laced with spokes, and they point to that and say there's a

16  concave region at the peak.

17  Q.  And what is your view on that?

18  A.  My view is that that's kind of an absurd argument, because

19  that's an intermediate stage of the manufacturing process.

20  It's not yet a wheel for use with a bicycle.  Once you put the

21  spoke in there, that purported concave region is absent.

22  Q.  And did you discern any concave region in that area of the

23  peak?

24  A.  I did not, no.

25  Q.  Okay.  So what's your view on the function-way-result

HOWLE - DIRECT/HICKEY

1    analysis with respect to the Wake, Grit, and Peak wheels?

2    A.  So my finding is that the Princeton's wheels still perform

3    substantially the same function even if the unmeasured spoke

4    hole concavity was readily visible, which it's not.

5    Q.  And isn't -- well, let me ask this.  What does the '800

6    patent say about putting holes in the peaks of the undulating

7    configuration?

8    A.  The '800 patent clearly anticipates that this wheel is

9    going to be built by putting spokes at the peaks of these

10   regions.

11   Q.  And does the '800 patent refer to apertures in those peaks?

12   A.  Yes, it does.

13   Q.  And your conclusions with respect to the way for the convex

14   exterior profile?  Way in result --

15   A.  Okay.  Sorry.  So the way is to have a peak -- have the

16   peak be rounded or curved in a form that bulges toward the

17   center of the wheel.  And I believe Princeton's wheels still

18   perform in substantially the same way even if the unmeasured

19   portion was there -- even if the unmeasured spoke hole

20   concavity were readily visible, and it's not visible, as I've

21   mentioned.

22   Q.  And for the result?

23   A.  Convex profile helps create wavelike configuration with the

24   aerodynamic, stability, and strength advantages set forth in

25   the '800 patent.  So I conclude that Princeton's wheels still

HOWLE – DIRECT/HICKEY

1  achieve substantially the same result even if this unmeasured

2  spoke hole concavity was readily visible, and as I mentioned,

3  it is not.

4  Q.  And when you look at that from an insubstantial difference,

5  what is your opinion?

6  A.  So this purported spoke hole concavity of Princeton's

7  wheels is insubstantially different from the claim requirement

8  even if this spoke hole concavity were there, which it's not.

9  Q.  Okay.  And so does that equivalent read on any prior art

10  features?

11  A.  It does not, no.

12  Q.  And would that include prior art considered like Mercat and

13  Herting for the Patent Office?

14  A.  Yes.  Mercat and Herting, yes, absolutely, as well as

15  there's more prior art that was considered by the Patent

16  Office, the Zibkoff, Chen, and Alex Machine.

17  Q.  And what about prior art that was not considered by the

18  U.S. Patent Office, does your equivalents analysis read on any

19  of those prior art references?

20  A.  There is no equivalents with any of those unconsidered

21  prior art references.

22  Q.  Okay.  And what about with respect to these

23  yet-to-be-proven prior art products, the Shimano, Fulcrum, and

24  Mavic Ksyrium wheels?

25  A.  No equivalents exist with those wheels.

HOWLE – DIRECT/HICKEY

1  Q.  And then under the '188 patent, there's a similar

2  requirement of convex profiles in convex regions.  I assume

3  that your analysis is the same as it just was for convex

4  exterior profile, is that right?

5  A.  It is, yes, sir.

6  Q.  Okay.  So just one last -- two last things.

7        MR. HICKEY:  One, can we just pull up Exhibit P45.

8  BY MR. HICKEY:

9  Q.  Is your analysis that you've done under literal

10 infringement and doctrine of equivalents -- what is your

11 opinion as to how that is consistent or inconsistent with

12 statements that Princeton CarbonWorks has made about its own

13 wheels?

14 A.  So I find that the statements they make is consistent with

15 literal infringement and is also consistent under the doctrine

16 of equivalents.

17 Q.  One last question.  How many hours have you spent studying

18 the over 10,000 pages of documents, the pleadings, the

19 depositions, the wheels themselves, the documents produced in

20 this litigation -- we had the full listing of everything you

21 considered.  I would imagine that it's a large number, but I

22 have to ask, how many hours have you spent, Dr. Howle?

23 A.  Yes, sir.  This has been a big case.  It's been going on

24 for two years now, and I would say probably somewhere in the

25 neighborhood of 400 hours it's taken me for this work.

1132
HOWLE - REDIRECT/HICKEY

1  Q.  Do you understand that the Court adopted -- or agreed with

2  your understanding as one of ordinary skill in the art?

3  A.  Yes, sir.

4  Q.  With respect to this reference to the small region of

5  concavity, there was a portion of your supplemental report that

6  Mr. Wodarski was reading from.  He omitted the phrasing that

7  Dr. Hanson attempts to describe that spoke hole as concave.  Do

8  you recall seeing that in your supplemental report?

9  A.  Indeed, yes, sir.

10  Q.  And when you referred to the small region of concavity,

11  were you summarizing what you -- that as Dr. Hanson's view?

12  A.  That is certainly his view, not mine.

13  Q.  Okay.  Do you need to do empirical testing, besides the

14  observation and the other work that you did, to determine

15  whether equivalents were available here with respect to whether

16  or not the peaks of the accused products are convex?

17  A.  No, I did not need to do any additional testing.

18  Q.  Okay.

19       MR. HICKEY:  And then I would like to -- can we pull

20  up P2, Exhibit P2, and go to column 5?

21       And go down to -- starting at line 54.

22  BY MR. HICKEY:

23  Q.  And could you read starting at "where the spokes are formed

24  as separate components"?

25  A.  Yes, sir.

1133

HOWLE - REDIRECT/HICKEY

1     "Where the spokes are formed as separate

2     components that are fastened to the rim, the spokes

3     are preferably attached to the associated support

4     portions by a suitable fastener.  The fastener may be

5     adapted to put the spoke under tension when assembled.

6     Conventional fasteners extend through an aperture in a

7     wall of the rim, that *(sic)* an enlarged head being

8     located to the radially outer side of the wall of the

9     rim, and a threaded connector being located to the

10    radially inner side of the wall of the rim, to which

11    the spoke is connected.  Where this type of fastener

12    is used, the apex of the support portion may include

13    an aperture in which the fastener is mounted, as

14    discussed above.  In these arrangements, it is also

15    preferred that there is a substantially smooth

16    transition between the surfaces of the support portion

17    and the adjacent surfaces of" --

18  Q.  All right.  And we can stop there.

19        When you're talking about -- when the '188 patent

20  refers to "aperture," what do you understand "aperture" to

21  mean?

22  A.  Hole.

23  Q.  And is that same language in the '800 patent?

24  A.  Yes, it would be.

25  Q.  Okay.  The claims of -- just a second.