# EXHIBIT 8 to HICKEY DECLARATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 21-80581-CIV-RKA

```
SRAM, LLC,                         . Miami, Florida
                                   . February 23, 2023
          Plaintiff,               . 9:34 A.M.
                                   .
     v.                            .
                                   .
PRINCETON CARBON WORKS, INC.,      .
                                   .
          Defendant.               .
. . . . . . . . . . . . . . . . . ..
```

- - - - -

Transcript of Trial Proceedings had

before the Honorable Roy K. Altman,

United States District Judge, and a Jury.

- - - - -

Proceedings recorded by mechanical stenography, transcript produced by computer.

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)301-3276

1  Mr. Katsanis had a really hard time getting over what
2  Mr. Mercat had invented earlier and claimed in a patent. And
3  he kept trying to get every bicycle wheel with an inner rim,
4  with an undulating configuration. And the Patent Office kept
5  telling him no.
6         Similarly, with the '188 patent, he kept trying to get
7  too much. And they said, No, you can't have the concave peak
8  of the Mercat patent, and you can't have the pointy circus top
9  peak of Mr. Herting.
10        Okay. I don't have that. I have this thing at the
11 peak, right at the peak. No one's debating that there's, you
12 know, a curved, undulating configuration. The point is, at the
13 top, at that peak, is it convex, which is all he was allowed to
14 claim. And I'm going to get into what that means. But none of
15 those things, ladies and gentlemen, can be ascertained by
16 comparing the PCW application to these wheels. That can only
17 be done by looking at what's actually required by the claims
18 and seeing what's physically on the devices.
19        And what we're looking for there are the two small
20 things he got, those two small specific incremental inventions
21 that took him outside of Mercat. He had to keep shrinking and
22 narrowing his claim, what he thought he had invented, until he
23 got to something very small and specific. And those things,
24 ladies and gentlemen -- and as I said at the beginning, and
25 I'll say to you again today, God bless him, he got his patents.

1  And those are valid.  We're not saying that.  But you have to
2  limit him to that.  That's what my point is.
3  　　　　　And so, you know, Mr. Walsh says you didn't hear the
4  witnesses go through all of these independent/dependent claims.
5  They focused on just two things.  Of course.  Because those are
6  the two things that allowed Mr. Katsanis to get his invention
7  claimed as a patent.  And so that's what has to be present in
8  the wheel.  We have to see continuously varying elements, as
9  the Court constructs you -- Court's construction tells you, you
10 consider that.
11 　　　　　We also have to find a convex region with a convex
12 profile at its peak.  And you're not going to find that --
13 those things in these wheels.  That's what I'm telling you.
14 And that's all that matters.  Because if you don't find those
15 two things, we don't infringe.  So I'd ask you to focus on that
16 and not on marketing materials and not on abandoned
17 applications applied for by somebody other than Mr. Katsanis.
18 　　　　　And I want to get into a really critical point here.
19 Mr. Walsh also talked about -- these are minuscule features,
20 ladies and gentlemen, these are minuscule features.  And
21 that's *(sic)* actually goes to the heart of this case.  You
22 heard that -- and may I leave the podium, Your Honor?
23 　　　　　THE COURT:  You may.
24 　　　　　MR. WODARSKI:  Thank you.
25 　　　　　You heard that these are thousands of dollars.  These

1   no matter how we expand out Mr. Katsanis' claim, right -- and
2   that's what you do with the doctrine of equivalents.  You're
3   saying, Well, things don't literally infringe, but they're so
4   close that if I just expand out Mr. Katsanis' claim a little
5   bit, I can capture them, because they're really not that
6   different.  And so we have to figure out how far we can expand
7   his claim.  And the experts seem to agree that the furthest you
8   could go before you run into trouble is, you can't extend
9   beyond where someone else has already invented something and
10  shared it with the world, right?  What's the closest prior art?
11  And that closest prior art here is Mr. Mercat.  And we should
12  all know that pretty well from what happened during
13  prosecution, right?
14          And so the issue becomes the difference between what's
15  similar and could be an equivalent to Mr. Katsanis' invention
16  and what's different and cannot be is basically what Mr. Mercat
17  invented.  And we know that he invented a bicycle wheel with an
18  inner rim that had undulating portions, but with constant
19  radial distance portions as well.
20          So if the experts can agree we look to set the limit
21  at where Mr. Mercat's invention starts, they disagree on where
22  that line should be drawn, based upon their understanding of
23  Mr. Mercat.  And I think here's where we get Dr. Howle in the
24  second example of where, when he doesn't like the measurement
25  he's going to get, he simply chooses not to do the measurement,

CLOSING ARGUMENT - WODARSKI

1    Dr. Howle didn't do any calculations off of that
2    36-spoke version.  But Dr. Hanson explained what would have
3    happened if he had, because Dr. Hanson did.  And what you get
4    is, you calculate to a constant radial distance of
5    .46 millimeters.  And like Dr. Hanson told you, he didn't want
6    to get into something that was a fraction of a millimeter, he
7    rounded up to one millimeter and said, What Mr. Mercat actually
8    invented and disclosed to the world was one millimeter of
9    constant radial depth and greater.
10        So, once again, you have to pick who to believe.
11   Dr. Howle will tell you, you can go up to 16 millimeters by
12   looking at a part of Mercat.  And Dr. Hanson tells you, having
13   looked at all of Mercat, that it should be as low as
14   one millimeter.
15        And that's the difference, ladies and gentlemen,
16   between them.
17        And so I'd say to the doctrine of equivalents, looking
18   at slide 15, and you saw this from Dr. Hanson's testimony, the
19   dividing line between, you know, what's permissible under the
20   doctrine of equivalents and what is not is where Mercat starts.
21   And that's because you cannot expand a claim so much that
22   you're claiming for Mr. Katsanis what someone else invented.
23   And that's at one millimeter, if Dr. Hanson's right.  And I
24   suggest to you that he is.  And then it just becomes a simple
25   plotting exercise.

1       The Peak wheel is 1.5 millimeters of constant radial
2  distance at every peak and valley, the Wake is two millimeters
3  at every peak and valley, and the Grit is 6.36 millimeters at
4  every peak and valley.  So we are Mr. Mercat, and so we cannot
5  be Mr. Katsanis under either literal or doctrine of equivalents
6  infringement.  We are not the same.
7       Let's talk about the '188 patent, ladies and
8  gentlemen.  So go back to literal infringement of that, and
9  we'll look at slide 16.
10      All right.  This language is a lot more ornate, but I
11 think the testimony and the evidence you saw will help you work
12 through it.  But where we focused here is this convex
13 profiles -- excuse me -- profiles in convex regions, the
14 regions including the peaks.  And you see there at the bottom
15 is the Court's construction of the relevant claim terms.
16 "Profile having rounded or curved form bulging towards the
17 wheel center."
18      So as you remember, ladies and gentlemen, that issue
19 is -- bulging towards the center, curved, rounded like a dome
20 at the peak is actually what Mr. Katsanis was limited in
21 claiming so that he didn't become Mr. Mercat or Mr. Herting's
22 invention.
23      All right.  So if we can go to the next slide, Jim.
24      And so -- you saw this in Dr. Hanson's deck.  We don't
25 have it, so we don't -- we don't have this limitation, so we

1  Mr. Macris told you, was to try and do something to save the
2  company.  That's all it was.  That's all it was.
3          But what you heard from Mr. Werntz and what you heard
4  from Mr. Macris is, they always had the good-faith belief that
5  they did not infringe the patent.
6          Mr. Macris read the patent.  His original reaction
7  was, "Uh-oh," right?  I thought we were the only guys designing
8  this.  We thought we had the unicorn.  Turns out somebody else
9  is doing it.  But then he read it, and he came to the exact
10 same conclusion that I'm talking to you about today.  Oh, we
11 have constant radial distance.  I know we have constant radial
12 distance, because I made design choices in the way I used that
13 SOLIDWORKS software.  And by using the tools that I did, I know
14 that inherent in all of my designs for my wheels, there are
15 areas of constant radial distance.  So he had a good-faith,
16 confident belief.
17         Mr. Werntz said the same thing.  The question that
18 actually shows you that that's true is Mr. Hickey's cross
19 question.  He says, "Isn't this patent application of yours
20 your wheel?"  And he says, "Well" -- Mr. Werntz says, "In
21 principle."
22         And could we pull up slide 29 so we can see it?
23         All right.  And so he says "in principle."  Mr. Hickey
24 wants to follow up on that, and he goes, well, you know, I
25 basically asked him, "What do you mean by that?"  And he says,

1   could put a little bit of cinnamon in here, that wasn't in the
2   recipe before I licensed it, but I think I like that.  If
3   someone else then comes, if I then -- you ask me for a license
4   to my patent for what my apple pie was, you just get the
5   license to the same thing I gave to the other juror.  But
6   you're going to have to figure all that other stuff out by
7   yourself.  You're going to have to figure out the pan or the
8   tin, you're going to have to figure out the apple, you're going
9   to have to figure out the oven and how long you cook it and at
10  what temperature.  Right?
11          And that's exactly what's going on here.  If they got
12  access to Mr. Katsanis' seed, his concept, through the license,
13  that's all we can get access to.  And there's really no logical
14  or reasonable reason why we should pay $135 and they should pay
15  eight for that.  And I think that's why Mr. Green saying that a
16  reasonable royalty of $10 is what would be truly reasonable
17  under the circumstances.
18          I'm going to finish just briefly, ladies and
19  gentlemen, with going back to infringement, because I think
20  that's what this case really is.  And I really do thank you for
21  your patience.
22          If we could go to slide 36?
23          All right.  Again, it's really a DOE case here, ladies
24  and gentlemen.  The line is at one millimeter.  And so what I
25  think Mr. Howle did, and why I want you to understand why it's

CLOSING ARGUMENT - WODARSKI

1  an unsolvable problem for SRAM, you see the plotting exercise
2  here. We're clearly Mercat if one millimeter is the dividing
3  line. And so there is no infringement.
4         So if we can go to the next slide, Jim.
5         So Dr. Hanson properly understood the most expansive
6  scope of the claim was Mr. Katsanis could have something that
7  is a continuously varying rim or a continuously varying rim
8  that does have portions of constant radial distance but of
9  nothing more than one millimeter in length. And so still, even
10 under that expanded doctrine of equivalents, we're still over
11 in Mr. Mercat's property, right? And so let's go and see what
12 Dr. Howle did.
13        So what Dr. Howle did to try and do infringement -- go
14 to the next slide, Jim -- is he says, No, actually, the
15 doctrine of equivalents can go all the way up to at least
16 16 millimeters or greater. And he's doing that to try and
17 capture what our wheels actually have. But the minute he
18 combines Mr. Katsanis' actual claimed invention and then goes
19 and grabs and tries to take back part of Mercat, then he
20 creates something that's no longer valid. So you -- they're
21 left with that either/or problem I said.
22        If you go to the next slide, Jim?
23        They can either stick with the Katsanis actual claimed
24 invention that he can have -- and like we said, he's entitled
25 to it, and that's valid, but we don't infringe it, ladies and

CLOSING ARGUMENT - WODARSKI

1  Mr. Katsanis can actually have as his invention and combining
2  it with something that is Mercat and something that the Patent
3  Office expressly told Mr. Katsanis he could not claim as his
4  own because someone else owned it.
5        And so, ladies and gentlemen, that is the unsolvable
6  problem.  And I hope now we can all be on the same page with
7  the evidence you've heard.
8        With respect to both patents, they either have a valid
9  claim that we don't infringe or you do what Dr. Howle did and
10 you create a combined claim to try and get infringement, but
11 that combined claim is invalid.  Either of those two outcomes
12 requires you to do -- to find in our favor on noninfringement,
13 ladies and gentlemen.
14       And so before I leave you, I'll just say, on the
15 verdict form then, ladies and gentlemen, what that translates
16 to, is the first page through the sixth page is going to ask
17 you about each individual claim of each -- for each of the
18 patents.  It's going to ask you if you found infringement or
19 not.  If you don't believe that they've proven infringement,
20 the answer is "no" to all those questions, ladies and
21 gentlemen.
22       And then going to damages in the back, ladies and
23 gentlemen, on page 11, if you don't think that there's a lost
24 profits case here, you would say "no" for lost profits.  That
25 would default to reasonable royalty, and then you get to put in